**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-00115<br><br>Hon. Drew B Tipton |
| DAVE CARLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-00920 |

**NOTICE OF MOTION AND MOTION OF KUMARAN MUTHUSAMY FOR**
**(1) CONSOLIDATION OF THE ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF;**
**AND (3) APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT THEREOF**

## <u>NOTICE OF MOTION AND MOTION</u>

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Kumaran Muthusamy ("Movant") respectfully moves this Court for an order: (1) consolidating the above-captioned actions (the "Actions"), (2) appointing Movant as lead plaintiff pursuant to § 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and (3) approving Movant's selection of Levi & Korsinsky, LLP as Lead Counsel for the Class and Sponsel Miller Greenberg PLLC ("Sponsel Miller") as Liaison Counsel for the Class.

Movant seeks consolidation, appointment as lead plaintiff, and approval of his choice of counsel pursuant to the Exchange Act, the Federal Rules of Civil Procedure, and the PSLRA. This motion is based on this notice, the attached memorandum of law, the declaration of Thane Tyler Sponsel II in support thereof, and the Court's complete files and records in this action, as well as such further argument as the Court may allow at a hearing on this motion.[1]

---

[1] Local Rule 7.1(D)(1)-(2) requires a conference of counsel prior to filing motions. Pursuant to the PSLRA, however, any class member, regardless of whether that class member filed a complaint, may file a motion for appointment as lead plaintiff. Thus, there is no way for Movant to know which other entities or persons plan to move for appointment as lead plaintiff until after all the movants have filed their respective motions. Under these circumstances, Movant respectfully requests that the conferral requirement of LR7.1(D)(1)-(2) be waived.

## TABLE OF CONTENTS

SUMMARY ................................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

PROCEDURAL BACKGROUND.......................................................................... 2

FACTUAL BACKGROUND .................................................................................. 3

ARGUMENT ........................................................................................................... 7

    I.      Consolidation of the Actions Is Appropriate ................................... 7

    II.    Appointing Movant as Lead Plaintiff is Appropriate ...................... 8

        A.    Movant Filed a Timely Motion in Response to a PSLRA Notice ........................ 10

        B.    Movant Has the Largest Financial Interest ............................................. 10

        C.    Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ................................................................. 11

            1.    Movant's Claims Is Typical With the Claims of the Class............................. 11

            2.    Movant Is An Adequate Representative .......................................... 12

    III.    Approving Movant's Choice of Counsel is Appropriate ........................................... 13

CONCLUSION....................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) ....................................................... 2

*Ferrari v. Impath, Inc.*,
2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ...................................................... 8

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................................... 12

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
No. 12-cv-3772, 2012 WL 6625382 (N.D. Tex. Dec. 20, 2012) .......................................... 14

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990)............................................................................................ 8, 9

*Makhlouf v. Tailored Brands, Inc.*,
2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017)..................................................... 10

*Martingano v. Am. Int'l Grp., Inc.*,
Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855 (E.D.N.Y. July 11, 2006)............. 8

*Parker v. Hyperdynamics Corp.*,
No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767 (S.D. Tex. Feb. 19, 2013) ....................... 13

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015)..................................................... 11

*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) ............................................................................................. 12

*In re Waste Mgmt. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ................................................................................ 12

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................................ 8

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23.......................................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY

Movant respectfully submits the following argument in support of his Motion, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, for: (1) consolidation of the above-captioned related actions (the "Actions"); (2) appointment as Lead Plaintiff; and (3) approval of his selection of counsel on behalf of all persons and entities other than Defendants that purchased or otherwise acquired publicly traded Southwest Airlines Co. ("Southwest Airlines" or the "Company") securities between June 13, 2020, and December 31, 2022, inclusive (the "Class Period"). Movant seeks to recover damages under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Defendants Southwest Airlines, Gary Kelly ("Kelly"), Tammy Romo ("Romo"), and Robert E. Jordan ("Jordan") (collectively "Defendants").

Pursuant to the PSLRA, the class member who possesses the largest financial interest in the relief sought by the class and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of class members. The most adequate plaintiff shall be appointed as lead plaintiff to lead the litigation. Movant believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff based on the financial losses suffered as a result of Defendants' wrongful conduct. Moreover, Movant satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23(a), as his claims are typical of other Class members' claims, and he will fairly and adequately represent the interests of the Class. *See generally Abouzied v. Applied Optoelectronics, Inc.*, 2018 U.S. Dist. LEXIS 16801, at *5-7 (S.D.

Tex. Jan. 22, 2018). In addition, Movant's selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Sponsel Miller Greenberg PLLC ("Sponsel Miller") as Liaison Counsel should be approved, as these firms have substantial expertise and experience in securities and class action litigation.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Actions involve substantially similar issues of fact and law and should be consolidated;

2.      Whether Movant meets the requirements under the PSLRA to be appointed Lead Plaintiff; and

3.      Whether Movant's choice of Lead Counsel and Liaison Counsel should be approved.

## PROCEDURAL BACKGROUND

Plaintiff Arthur Teroganesian ("Plaintiff") commenced the first above-captioned action against Southwest Airlines in this Court on January 12, 2023, entitled *Teroganesian v. Southwest Airlines, Co., et al.*, Case No. 4:23-cv-00115 (the "*Teroganesian* Action"). On that same day, counsel for Plaintiff published a notice on *Business Wire* (the "Notice"), announcing that a securities class action had been initiated against Defendants, herein, and advising investors in Southwest Airlines that they had 60 days to seek appointment as lead plaintiff. *See* Declaration of Thane Tyler Sponsel III in Support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Counsel (the "Sponsel Decl.") at Exhibit ("Ex.") C.

On March 13, 2023, a substantially similar action was filed against Southwest Airlines in this Court, entitled *Carlson v. Southwest Airlines, Co., et al.,* Case No. 4:23-cv-00920 (the "*Carlson* Action"). Movant has requested consolidation of the *Teroganesian* and *Carlson* Actions.

**FACTUAL BACKGROUND**[2]

Defendant Southwest Airlines purports to operate a major passenger airline that provides scheduled air transportation in the United States and near-international markets. ¶ 7. The Company is incorporated in Texas and its head office is in Dallas, Texas located at 2702 Love Field Drive, Dallas, Texas, 75235. ¶ 8. Southwest Airlines securities trade on NYSE under the ticker symbol "LUV." *Id.*

The statements contained in ¶¶ 19-21, 23-55 of the *Teroganesian* Complaint were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. ¶ 56. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Southwest Airlines continuously downplayed or ignored the serious issues with the technology it used to schedule flights and crews, and how it stood to be affected worse than other airlines in the event of inclement weather; and (2) it did not discuss how it's unique point-to point service and aggressive flight schedule could leave it prone in the event of inclement weather; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.*

Winter storms disrupted holiday travel during the 2022 holiday season, leaving thousands of travelers stranded in airports around the United States. ¶ 57. However, not all domestic airlines were affected equally. *Id.* Southwest Airlines flight cancellations accounted for the vast majority

---

[2] Citations to "¶__" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws (the "*Teroganesian* Complaint") filed in the *Teroganesian* Action. Citations to "*Carlson* ¶__" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws (the "*Carlson* Complaint") filed in the *Carlson* Action. The facts set forth in the *Teroganesian* and *Carlson* Complaints are incorporated herein by reference.

of domestic flight cancellations, leaving travelers unable to visit loved ones over the holidays, and attracting the ire of the federal government. *Id.*

As flights were getting cancelled around the country, it soon emerged that the root cause behind Southwest Airlines' cancellations was outdated and ineffective technology, in particular, its crew scheduling system (called "Sky Solver"). ¶ 58. Further compounding on this issue, Southwest Airlines used an aggressive flight schedule that left it prone to greater cancellations than its competitors in the event of unusual conditions, such as nationwide storms. *Id.*

During market hours on June 15, 2021, news outlets including CNBC reported that Southwest Airlines canceled more flights on Tuesday, June 15, 2021 due to a network connectivity issue that was unrelated to the problems on Monday with the Company's weather information system. *Carlson* ¶ 4.

In response to this disclosure, Southwest Airlines' share price dropped $0.16 per share to close on June 15, 2021 at $57.12 per share, thereby injuring investors. *Carlson* ¶ 5.

Then, during market hours on Wednesday, June 16, 2021, news outlets reported that Southwest Airlines was delaying and canceling flights for a third day in a row due to continuing technical issues. *Carlson* ¶ 6. The New York Times published an article entitled, "Southwest Airlines Delays and Cancels Flights for a Third Day," explaining that "[t]he headaches began with problems with a weather data supplier on Monday, then technical troubles on Tuesday, and the issues spilled over into Wednesday." *Id.*

On this news, Southwest Airlines' share price fell $0.45 to close on June 16, 2021 at $56.67 per share, thereby injuring investors. *Carlson* ¶ 7. The Company's share price continued to decline on June 17, 2021, falling another $1.10 per share to close on June 17, 2021 at $55.57, thereby further injuring investors. *Id.*

4

Then, on Saturday, October 9, 2021, Southwest Airlines published a tweet on Twitter.com stating that "ATC [air traffic control] issues and disruptive weather have resulted in a high volume of cancellations throughout the weekend while we work to recover our operation." *Carlson* ¶ 8. The same day, AZ Central published an article reporting that "Southwest cancels, delays hundreds of flights nationwide." *Id.*

On October 11, 2021, the first trading day following the disclosures, Southwest Airlines' share price fell 4.17%, or $2.25, to close on October 11, 2021 at $51.67 per share, thereby injuring investors. *Carlson* ¶ 9.

On December 26, 2022, Business Insider published an article about Southwest Airlines entitled "U.S. Department of Transportation says it plans to look into Southwest Airlines following the airline's unacceptable holiday flight cancellations." ¶ 60. The article highlighted that the Department of Transportation had announced that it would examine "whether cancellations were controllable," and whether Southwest Airlines was complying with its stated customer service plan, after reports of a lack of prompt customer service in the wake of cancellations." *Id.*

On the same day, CNN published an article entitled "Massive Southwest Airlines Disruption Leaves Customers Stranded and Call Centers Swamped." ¶ 61. CNN discussed how the winter conditions had affected Southwest Airlines to a much greater extent than its competitors, and then discussed how it had been provided a transcript of a message from Defendant Jordan to Southwest's employees. *Id.* In this message, Defendant Jordan stated that "[Southwest Airlines] has a lot of issues in the operation right now," and that "[p]art of what we're suffering is a lack of tools. We've talked an awful lot about modernizing the operation, and the need to do that." *Id.*

Then, on December 27, 2022, Reuters published an article entitled "Southwest cancels thousands more flights; U.S. Government Vows Scrutiny." ¶ 62. This article quoted Casey Murray,

5

president of the Southwest Airlines Pilots Association (the "SWAPA"), who said "Southwest is using outdated technology and processes, really from the '90s, that can't keep up with the network complexity today." *Id.*

On the same day, CNN published an article entitled "Why Southwest is Melting Down," which quoted Kathleen Bangs, a spokesperson for a flight tracking website called FlightAware, who stated that Southwest's schedule was aggressive in that it focused on shorter flights with tight turnaround times. ¶ 64. Bangs further stated, "[t]hose turnaround times bog things down." *Id.*

The December 27 CNN article quoted Lyn Montgomery, the president of the labor union which represents Southwest Airlines' flight attendants, as saying "[t]he phone system the company uses is just not working. ¶ 65. They're just not manned with enough manpower in order to give the scheduling changes to flight attendants, and that's created a ripple effect that is creating chaos throughout the nation." *Id.*

The December 27 CNN article revealed that it also obtained a transcript of a phone call between Southwest Airlines' COO, Andrew Watterson, and various company employees, in which Watterson stated "[t]he process of matching up [crew members] with the aircraft could not be handled by our technology." ¶ 66.

On this news, Southwest Airlines stock fell from a closing price of $36.09 on December 23, 2022, to $33.94 on the next trading day, December 27, 2022, and then to $32.19 on December 28, 2022, a drop of over 12%. ¶ 67.

More news emerged about Southwest Airlines over the following days. ¶ 68. On December 30, 2021, My Tech Decisions published an article about Southwest Airlines entitled "Southwest Airlines' Holiday Collapse Due in Part to Outdated IT Systems," which discussed how the SWAPA had warned that the Company needed to improve its technological infrastructure. *Id.*

6

SWAPA stated, "A systemic failure of Southwest Airlines leaders to modernize, support, and staff its operation leaves every frontline employee, Pilots included, tired of apologizing to our passengers. [. . .]. For more than a decade, leadership shortcomings in adapting, innovating, and safeguarding our operations have led to repeated system disruptions, countless disappointed passengers, and millions in lost profits." *Id.* Further, "[we call for investing in infrastructure in the form of] crew scheduling software that takes into account our point-to-point network, [. . .] and communication tools that would have allowed for displaced crews to remain in in constant contact with our Company." *Id.*

On December 31, 2022, The New York Times published an article entitled "The Shameful Open Secret Behind Southwest's Failure," which discussed how it was an "open secret" within Southwest Airlines that it desperately needed to modernize its scheduling systems. ¶ 69. In particular, the article discussed how software shortcomings had "contributed to previous, smaller-scale meltdowns," and that Southwest Airlines worker unions had warned the Company about the software at various times before the Company's meltdown over the 2022 holiday season. *Id.*

In response to this news, Southwest Airlines stock declined from a closing price of $33.67 on December 30, 2022 to $32.60 on the next trading day, January 3, 2023, a drop of over 3%. ¶ 70.

## **ARGUMENT**

### I. **Consolidation of the Actions Is Appropriate**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the

most adequate plaintiff for the consolidated actions." *Id*.

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Martingano v. Am. Int'l Grp., Inc.,* Nos. 06-cv-1625-JG-JMA, 2006 U.S. Dist. LEXIS 47855, at *3-5 (E.D.N.Y. July 11, 2006) (citing *Ferrari v. Impath, Inc.,* 2004 U.S. Dist. LEXIS 13898, at *2 (S.D.N.Y. July 15, 2004)) ("In securities class action cases…courts have deemed consolidation particularly appropriate where the actions are based on the same public statements and reports, if there are common questions of law and fact and [if] the defendant will not be prejudiced…" (citation and quotations omitted)); Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

## II.    Appointing Movant as Lead Plaintiff is Appropriate

The PSLRA provides the procedure for appointing a lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff

filed by class members in response to a published notice of class action (i) by not later than 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—i.e., the plaintiff most capable of adequately representing the interests of the Class—is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof by a "purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

As set forth below, Movant satisfies all of the foregoing criteria. Movant has filed a Motion to be appointed as Lead Plaintiff and has, to the best of his knowledge, the largest financial interest sought by any class member in this litigation. In addition, Movant meets the relevant requirements of Federal Rule of Civil Procedure 23(a) and is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed lead plaintiff. *See Makhlouf v. Tailored Brands,*

*Inc.,* 2017 U.S. Dist. LEXIS 41872, at *29 (S.D. Tex. Mar. 23, 2017).

### A. Movant Filed a Timely Motion in Response to a PSLRA Notice

On January 12, 2023, pursuant to 15 U.S.C. § 78u-4(a)(3)(A), the Notice of the pendency of the *Teroganesian* Action was published on *Business Wire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against Defendants, herein, and advising purchasers of Southwest Airlines securities that they had until March 13, 2023 to file a motion to be appointed as lead plaintiff.

Movant filed this motion pursuant to the Notice and within the 60-day period following publication. Movant has also submitted a sworn certification attesting to his purchases of Southwest Airlines securities and stating that he is willing to serve as Class representative and to provide testimony at deposition and trial, if necessary. *See* Sponsel Decl., Ex. A. By making a timely motion in response to a published PSLRA notice, Movant satisfies the first PSLRA requirement to be lead plaintiff.

### B. Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Movant believes he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

During the Class Period, Movant purchased a total of 2,900 shares, retained 2,500 shares, expended $118,980 in net funds, and suffered approximately $31,426.88 under both a last-in-first-out ("LIFO") analysis, and a *Dura* LIFO analysis when excluding intra-Class Period losses on sales occurring before a corrective disclosure. *See* Sponsel Decl., Ex. B. To the best of his

knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23. Movant, thus, satisfies the second PSLRA requirement—the largest financial interest in the relief sought by the Class.

**C.      Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Plains All Am. Pipeline, L.P. Sec. Litig.,* 2015 U.S. Dist. LEXIS 163811, at *10-12 (S.D. Tex. Dec. 7, 2015). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *See Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).

**1.   Movant's Claims Is Typical With the Claims of the Class**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of

11

Rule 23 because he suffered the same injuries as the absent Class members, he suffered as a result of the same course of conduct by Defendants, and his claims are based on the same legal issues. *See In re Waste Mgmt. Sec. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Importantly, the typicality requirement of Rule 23 does not require the lead plaintiff to be identically situated with all class members in order to satisfy typicality. *See Stirman v. Apache Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Movant's claims are typical with the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants violated the federal securities laws by disseminating materially misleading statements concerning the operations and financial performance of Camber. Movant, like all of the members of the Class, purchased Southwest Airlines shares at prices artificially inflated by Defendants' alleged misstatements and omissions and was damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the claims of the Class, satisfies the typicality requirement of Rule 23(a)(3).

### 2. Movant Is An Adequate Representative

Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but

Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that he will vigorously pursue the interests of the Class. *See Parker v. Hyperdynamics Corp.*, No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767, at \*9 (S.D. Tex. Feb. 19, 2013) (losses suffered ensure lead plaintiff will adequately represent absentee class members). Finally, Movant retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See id.* (selection of "law firms that are competent at and experienced in prosecuting securities class actions" evidence of adequacy). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Moreover, Movant is an adequate representative for the Class. Movant considers himself to be a sophisticated investor, having been investing in the stock market for over three years. He resides in Bixby, Oklahoma, and possesses a bachelor's degree in Geo-Informatics. Movant is employed as a Senior Software Developer with ONEOK Inc. *See* Sponsel Decl., Ex. D, Movant's Declaration in support of his motion.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because Movant has sustained the largest amount of losses from the Defendants' alleged wrongdoing, he is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I) and should be appointed as such to lead the Actions.

### III.    Approving Movant's Choice of Counsel is Appropriate

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the

court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should interfere with the lead plaintiff's selection "only when necessary 'to protect the interests of the class.'" *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 12-cv-3772, 2012 WL 6625382, at *3 (N.D. Tex. Dec. 20, 2012).

Here, Movant has retained Levi & Korsinsky to serve as Lead Counsel and Sponsel Miller to serve as Liaison Counsel on behalf of the Class in the event he is appointed as lead plaintiff. As reflected in the accompanying firm résumés, Levi & Korsinsky and Sponsel Miller possess extensive experience and expertise in securities litigation, have the necessary resources to efficiently and effectively prosecute the Actions, and have successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Sponsel Decl., Ex. E. Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his motion and enter an Order: (1) consolidating the Actions; (2) appointing Movant as Lead Plaintiff; (3) approving Movant's selection of Levi & Korsinsky as Lead Counsel and Sponsel Miller as Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

*[Signatures on Following Page]*

14

Dated: March 13, 2023

Respectfully submitted,

**SPONSEL MILLER GREENBERG PLLC**

*/s/ Thane Tyler Sponsel III*
Thane Tyler Sponsel III
Texas Bar No. 24056361/Federal ID No. 690068
Roger B. Greenberg
Texas Bar No. 08390000/Federal ID No. 3932
50 Briar Hollow Lane, Suite 370 W
Houston, Texas 77027
Telephone: (713) 892-5400
Facsimile: (713) 892-5401
sponsel@smglawgroup.com
roger@smglawgroup.com

*Liaison Counsel for Movant and Proposed Liaison Counsel the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Movant and Proposed Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this day, March 13, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Thane Tyler Sponsel III*
Thane Tyler Sponsel III

16