**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Civil Action No. 4:23-cv-00115-DBT<br><br>**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DAVE CARLSON FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** |
| DAVE CARLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN.<br><br>Defendants. | Civil Action No. 4:23-cv-00920-DBT |

## MOTION

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Dave Carlson ("Carlson") respectfully moves this Court for an order: (1) consolidating the above-captioned related actions; (2) appointing Carlson as Lead Plaintiff pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approving Carlson's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and Kendall Law Group, PLLC. ("Kendall Law Group") as Local Counsel for the class; and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

This Motion is supported by the following Memorandum of Law, the Declaration of Joe Kendall and the exhibits attached thereto, a Proposed Order, and all of the prior pleadings and proceedings in this matter, and such other written and/or oral argument as may be permitted by the Court.

LR7.1(D) and Judge Drew B. Tipton's Court Procedure 15(a) require a conference of counsel prior to filing motions. Due to the PSLRA's lead plaintiff procedure, however, counsel for Carlson will not know which other entities or persons plan to move for appointment as lead plaintiff until after all the movants have filed their respective motions. Under these circumstances, Carlson respectfully requests that the conferral requirement of LR7.1(D) and Court Procedure 15(a), and the certificate of conference requirement of Court Procedure 15(a), be waived.

1

## MEMORANDUM OF LAW

### I.    PRELIMINARY STATEMENT

This is a class action on behalf of persons and entities that purchased or otherwise acquired publicly traded Southwest Airlines Co. ("Southwest Airlines" or the "Company") securities between June 13, 2020, and December 31, 2022, inclusive (the "Class Period").

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court shall appoint the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of class members—as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B). Pursuant to the PSLRA, the plaintiff or movant with the largest financial interest in the relief sought by the class who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") is presumed to be the most adequate plaintiff. This motion is made on the grounds that Carlson is the "most adequate plaintiff" as defined by the PSLRA.

Carlson believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on his financial losses suffered as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Carlson satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other class members' claims and he is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Carlson respectfully submits that he is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Carlson's selection of GPM as lead counsel and Kendall Law Group as local counsel for the class should be approved because the firms have substantial expertise in securities class actions, and the experience and resources to efficiently prosecute this action.

II.    STATEMENT OF FACTS

Defendant Southwest Airlines operates a major passenger airline that provides scheduled air transportation in the United States and near-international markets.

On June 14, 2021, after the market closed, news outlets reported that Southwest Airlines flights were being delayed due to a nationwide technical difficulty with the Company's weather information system.

On June 15, 2021, during market hours, news outlets including *CNBC* reported that Southwest Airlines canceled more flights on Tuesday, June 15, 2021 due to a network connectivity issue that was unrelated to the problems on Monday with the Company's weather information system.

On this news, Southwest Airlines' share price fell $0.16 per share to close at $57.12 per share on June 15, 2021, thereby injuring investors.

Then, during market hours on Wednesday, June 16, 2021, news outlets reported that Southwest Airlines was delaying and canceling flights for a third day in a row due to continuing technical issues. The *New York Times* published an article entitled, "Southwest Airlines Delays and Cancels Flights for a Third Day." The article explained that "[t]he headaches began with problems with a weather data supplier on Monday, then technical troubles on Tuesday, and the issues spilled over into Wednesday."

On this news, Southwest Airlines' share price fell $0.45, to close at $56.67 per share on June 16, 2021, thereby injuring investors. The Company's share price continued to decline on June 17, 2021, falling another $1.10 per share to close at $55.57 on June 17, 2021, thereby further injuring investors.

Then, on Saturday, October 9, 2021, Southwest Airlines published a tweet on Twitter.com stating that "ATC [air traffic control] issues and disruptive weather have resulted in a high volume

3

of cancellations throughout the weekend while we work to recover our operation." The same day, *AZ Central* published an article reporting that "Southwest Airlines cancels, delays hundreds of flights nationwide." *AZ Central* reported that, after receiving pushback that the Federal Aviation Administration's ("FAA") delay website showed no evidence of delays, Southwest Airlines issued an updated statement stating that the delays resulted "after an FAA-imposed air traffic management program was implemented due to weather and resulted in a large number of cancellations." By Saturday afternoon, the Company had 568 cancellations and 717 delayed flights nationwide. Additional news outlets echoed and expanded on the disclosure, reporting that Southwest Airlines flights were being canceled or delayed as part of a major nationwide problem.

On October 11, 2021, the first trading day following the disclosures, Southwest Airlines' share price fell $2.25, or 4.17%, to close at $51.67 per share on October 11, 2021, thereby injuring investors.

Then, on December 27, 2022, *Reuters* published an article entitled "Southwest Airlines cancels thousands more flights; U.S. Government Vows Scrutiny." This article quoted Casey Murray, president of the Southwest Airlines Pilots Association (the "SWAPA"), who said "Southwest Airlines is using outdated technology and processes, really from the '90s, that can't keep up with the network complexity today."

The *Reuters* article also discussed Southwest Airlines' flight schedule. Rather than flying out of hubs, Southwest Airlines relies on the aforementioned point-to-point service, which leaves Company staff vulnerable to being stranded during disruptions (such as inclement weather). Murray said that this complex and aggressive business model was possible. However, executing this strategy in adverse conditions would only be possible with software that was more effective than Sky Solver, Southwest Airlines' proprietary software that is used to match flight staff

4

personnel with different flights. Murray stated that "[w]e had aircraft that were available, but the process of matching up those crew members with the aircraft could not be handled by our technology." Due to Sky Solver's failure, the Company had to manually match crew members to specific flights, a process that Murray called "extraordinarily difficult."

On the same day, *CNN* published an article entitled "Why Southwest Airlines is Melting Down," which quoted Kathleen Bangs, a spokesperson for a flight tracking website called FlightAware, who stated that Southwest Airlines' schedule was aggressive in that it focused on shorter flights with tight turnaround times. Bangs further stated, "[t]hose turnaround times bog things down."

The December 27 *CNN* article quoted Lyn Montgomery, the president of the labor union which represents Southwest Airlines' flight attendants, as saying "[t]he phone system the company uses is just not working. They're just not manned with enough manpower in order to give the scheduling changes to flight attendants, and that's created a ripple effect that is creating chaos throughout the nation." The article revealed that it also obtained a transcript of a  phone call between Southwest Airlines' COO, Andrew Watterson, and various company employees, in which Watterson stated "[t]he process of matching up [crew members] with the aircraft could not be handled by our technology."

On this news, Southwest Airlines stock fell from a closing price of $36.09 on December 23, 2022, to $33.94 on the next trading day, December 27, 2022, and then to $32.19 on December 28, 2022, a drop of more than 12%.

More news emerged about Southwest Airlines over the following days. On December 30, 2022, My Tech Decisions published an article about Southwest Airlines entitled "Southwest Airlines' Holiday Collapse Due in Part to Outdated IT Systems," which discussed how the

SWAPA had warned that the Company needed to improve its technological infrastructure. SWAPA stated, "A systemic failure of Southwest Airlines leaders to modernize, support, and staff its operation leaves every frontline employee, Pilots included, tired of apologizing to our passengers. . . . For more than a decade, leadership shortcomings in adapting, innovating, and safeguarding our operations have led to repeated system disruptions, countless disappointed passengers, and millions in lost profits." Further, "we call for investing in infrastructure . . . in the forms of crew scheduling software that takes into account our point-to-point network . . . and communication tools that would have allowed for displaced crews to remain in in constant contact with our Company."

On December 31, 2022, *The New York Times* published an article entitled "The Shameful Open Secret Behind Southwest Airlines' Failure," which discussed how it was an "open secret" within Southwest Airlines that it desperately needed to modernize its scheduling systems. In particular, the article discussed how software shortcomings had "contributed to previous, smaller-scale meltdowns," and that Southwest Airlines worker unions had warned the Company about the software at various times before the Company's meltdown over the 2022 holiday season.

On this news, Southwest Airlines stock price fell from a closing price of $33.67 on December 30, 2022 to $32.6 on the next trading day, January 3, 2023, a drop of more than 3%.

The complaint filed in this action alleges that the defendants made materially false and/or misleading statements throughout the Class Period, and failed to disclose material adverse facts about the Company's business, operations, and prospects, including: (1) Southwest Airlines continuously downplayed or ignored the serious issues with the technology it used to schedule flights and crews, and how it stood to be affected worse than other airlines in the event of inclement weather; (2) it did not discuss how its unique point-to-point service and aggressive flight schedule

6

could leave it prone to prolonged delays in the event of inclement weather; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

As a result of the defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs and members of the class have suffered significant losses and damages.

## III.   PROCEDURAL BACKGROUND

On January 12, 2023, Plaintiff Arthur Teroganesian commenced the first securities fraud class action against Southwest Airlines and certain of its officers in this District, captioned *Teroganesian v. Southwest Airlines Co., et al.*, Case No. 4:23-cv-00115-DBT (the "*Teroganesian* Action"). It is brought on behalf of persons that purchased or otherwise acquired publicly traded Southwest Airlines securities between June 13, 2020, and December 31, 2022.

On March 13, 2023, Carlson filed a substantially similar action, captioned *Carlson v. Southwest Airlines Co., et al.*, Case No. 4:23-cv-00920-DBT (the "*Carlson* Action," and together with the *Teroganesian* Action the "Related Actions"). The *Carlson* Action is brought on behalf of persons and entities that purchased or otherwise acquired publicly traded Southwest Airlines securities during the Class Period. The *Carlson* Action also alleges additional corrective disclosures.

## IV.   ARGUMENT

### A.   The Related Actions Should be Consolidated for All Purposes

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact.

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each action alleges violations of the

Securities Exchange Act of 1934, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 432-33 (S.D. Tex. 2010) (consolidating actions when there were "substantial commonalities," "overlapping [d]efendants," and "a common core of facts and legal issues").

### B.      Carlson Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Carlson satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements for appointment as lead plaintiff. Carlson has, to the best of his knowledge, the largest financial interest in this litigation and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Carlson is not aware of any unique defenses the defendants could raise against him that would render him inadequate to represent the class. Accordingly, Carlson respectfully submits that he should be appointed lead plaintiff.

### 1.   Carlson Filed a Complaint and a Timely Motion

Carlson filed the *Carlson* Action and has made a timely motion in response to a PSLRA early notice. On January 12, 2023, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, notice was published in connection with this action. *See* Declaration of Joe Kendall ("Kendall Decl.") Ex. A. Therefore, Carlson had sixty days (*i.e.*, until March 13, 2023) to file a complaint or motion to be appointed as lead plaintiff. As a purchaser of Southwest Airlines securities during the Class Period, Carlson is a member of the proposed class and has timely filed a complaint and motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, Carlson attests that he has reviewed the complaint, and is willing to serve as a representative of the class. *See* Kendall Decl., Ex. B. Accordingly, Carlson satisfies the first requirement to serve as lead plaintiff for the class.

### 2.   Carlson Has the "Largest Financial Interest"

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Carlson believes

that he has the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

Carlson purchased Southwest Airlines securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm of $181,039.64. *See* Kendall Decl., Ex. C. To the best of his knowledge, Carlson is not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Carlson believes he has the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class.

### 3. Carlson Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). At this stage of the proceedings, Rule 23(a) generally requires that the claims of representative parties be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23; *see also Hohenstein v. Behringer Harvard REIT I, Inc.*, 2012 WL 6625382, at *4 (N.D. Tex. 2012). Moreover, at the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Gluck v. CellStar Corp.*, 976 F. Supp. 542,

10

546 (N.D. Tex. 1997). As detailed below, Carlson satisfies the typicality and adequacy requirements.

### a)      Carlson's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same events or course of conduct that give rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See In re Waste Mgmt. Sec. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Carlson's claims are typical of the claims asserted by the proposed members of the class. Like all members of the class, Carlson alleges that the defendants' material misstatements and omissions concerning Southwest Airlines' business, operations, and financial prospects violated the federal securities laws. Carlson, like all members of the class, purchased Southwest Airlines securities in reliance on Defendants' alleged misstatements and omissions and were damaged thereby. Accordingly, Carlson's interests and claims are "typical" of the interests and claims of the class.

### b)      Carlson Is an Adequate Representative

The adequacy requirement of Rule 23(a)(4) entails considerations of whether a proposed representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Strong v. AthroCare Corp.*, 2008 WL 11334942, at *8 (W.D. Tex. Dec. 10, 2008) (citing *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)).

Here, Carlson easily satisfies the adequacy requirements. Carlson's financial interest demonstrates that he has a sufficient incentive to ensure vigorous advocacy, and Carlson is not aware of any conflict between his claims and those asserted on behalf of the class. Moreover, Carlson has retained competent and experienced counsel with the resources and expertise to efficiently and effectively prosecute this action. *See* Kendall Decl., Ex. D. Consequently, Carlson has demonstrated that he meets all the PSLRA's requirements for a lead plaintiff, and his request for appointment as lead plaintiff should therefore be granted.

### C.      Lead Plaintiff's Selection of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Carlson has selected GPM as lead counsel for the class Kendall Law Group as local counsel. The firms have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. As reflected by GPM's firm résumé, *see* Kendall Decl., Ex. D and Kendall Law Group's firm résumé, *see* Kendall Decl., Ex. E, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation. Accordingly, the Court should approve Carlson's selection of counsel.

### V.      CONCLUSION

For the foregoing reasons, Carlson respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Carlson as Lead Plaintiff for the class; (3) approving GPM as Lead Counsel and Kendall Law Group as Local Counsel for the class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: March 13, 2023

Respectfully submitted,

**KENDALL LAW GROUP, PLLC**

*/s/ Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
SDTX Bar No. 30973
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
Email: jkendall@kendalllawgroup.com

*Local Counsel for Lead Plaintiff Movant Dave Carlson and Proposed Local Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Dave Carlson and Proposed Lead Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiff*

13

## CERTIFICATE OF CONFERENCE

LR7.1(D) and Judge Drew B. Tipton's Court Procedure 15(a) require a conference of counsel prior to filing motions. Due to the PSLRA's lead plaintiff procedure, however, counsel for Carlson will not know which other entities or persons plan to move for appointment as lead plaintiff until after all the movants have filed their respective motions. Under these circumstances, Carlson respectfully requests that the conferral requirement of LR7.1(D) and Court Procedure 15(a), and the certificate of conference requirement of Court Procedure 15(a), be waived.

*/s/ Joe Kendall*
Joe Kendall

## CERTIFICATE OF SERVICE

I hereby certify that on this day, March 13, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joe Kendall*
Joe Kendall

14