IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-115 |
| DAVE CARLSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-920 |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MICHAEL
BERRY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS
FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

00736937;V1

**TABLE OF CONTENTS**

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

I.     THE COURT SHOULD APPOINT BERRY AS LEAD PLAINTIFF AS HE HAS THE LARGEST FINANCIAL INTEREST IN THE ACTION OF ANY QUALIFIED MOVANT AND SATISFIES RULE 23 ......................................... 3

     A.     Berry Has the Largest Financial Interest of Any Qualified Movant........... 4

     B.     Berry Readily Satisfies the *Prima Facie* Rule 23 Requirements................ 5

     C.     There is No Proof to Rebut the Strong Presumption in Favor of Berry ..... 6

II.     THE REMAINING MOVANTS EITHER HAVE A LOWER FINANCIAL INTEREST, DO NOT SATISFY RULE 23, OR BOTH....................................... 6

     A.     Hsu Is Atypical of Other Class Members and Cannot Serve as Lead Plaintiff ...................................................................................................... 7

     B.     Carlson Has Not Satisfied Rule 23's Adequacy Requirements.................. 8

CONCLUSION....................................................................................................... 10

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Andrada v. Atherogenics, Inc.*,
No. 05 Civ. 00061(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ................................... 8

*Applestein v. Medivation Inc.*,
No. C 10-00998, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .......................................... 2, 8

*Bremer v. Solarwinds Corp.*,
No. 1:21-cv-2-RP, 2021 WL 2668827 (W.D. Tex. Mar. 11, 2021) .......................................... 5

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)............................ 6

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
No. 2:20-cv-00368-JNP-DBP, 2021 WL 913934 (D. Utah Mar. 10, 2021)............................. 7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..................................................................................... 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).......................................................................................... 6

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ................................ 7

*In re Spero Therapeutics, Inc. Sec. Litig.*,
No. 22-CV-3125 (LDH) (RLM), 2022 WL 4329471 (E.D.N.Y. Sept. 19, 2022) ..................... 6

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019) ................................................................................. 8

*Kakkar v. Bellicum Pharm., Inc.*,
No. 4:18-CV-00338, 2019 WL 1367653 (S.D. Tex. Mar. 26, 2019) ........................................ 4

*Micholle v. Opthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018).................................... 7

*Patel v. Reata Pharms., Inc.*,
549 F. Supp. 3d 559 (E.D. Tex. 2021)......................................................................... 2, 7, 9

*Perez v. Hexo*,
No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ................................ 9

00736937;V1

*Plagens v. Deckard*,
   No. 1:20-CV-2744, 2021 WL 3284265 (N.D. Ohio Aug. 2, 2021). ........................................... 7

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
   566 F. Supp. 3d 712 (S.D. Tex. 2021) ................................................................................... 4

*Robison v. Digital Turbine, Inc.*,
   No. 1:22-cv-00550-DAE, 2022 WL 17881476 (W.D. Tex. Dec. 19, 2022) ......................... 3, 6

*Scheller v. Nutanix, Inc.*,
   No. 19-CV-01651-WHO, 2021 WL 2410832 (N.D. Cal. June 10, 2021) .............................. 2, 8

*Swinford v. Coil Tubing Technology, Inc.*,
   2022 WL 5430089 (S.D. Tex. July 11, 2022), ...................................................................... 2, 8

*Williams v. Block.One*,
   No. 20-cv-2809 (LAK), 2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) ...................................... 9

*Statutes*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................. 3, 6

*Rules*

Fed. R. Civ. P. 23 ............................................................................................................. passim

Michael Berry ("Berry") respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as Lead Counsel and George Brothers Kincaid & Horton LLP ("GBK&H") as Liaison Counsel for the litigation, and in opposition to all competing motions for Lead Plaintiff, except to the extent that they seek consolidation of the related cases.[1]

## PRELIMINARY STATEMENT

On March 13, 2023, four movants timely filed motions for appointment as Lead Plaintiff. A review of those motions makes it abundantly clear that Berry is the presumptive Lead Plaintiff here. Under the PSLRA, there is a "strong" presumption that the Lead Plaintiff is the movant with the largest financial interest in the action who has also made a *prima facie* showing of Rule 23 typicality and adequacy. Berry's financial interest exceeds $203,000 and is over $22,000 larger than that of Carlson, the only other qualified movant remaining. *See infra* at 4. Berry has also made the requisite *prima facie* showing of Rule 23 adequacy and typicality. *See id.* at 5-6. Once the PSLRA's strong presumption attaches, only "proof" of inadequacy can rebut the presumption. No such proof exists here. Thus, Berry should be appointed Lead Plaintiff for the proposed Class.

---

[1] Competing motions were timely filed by (i) Vincent Hsu; (ii) Dave Carlson; and (iii) Kumaran Muthusamy. Muthusamy filed a notice of non-opposition on April 3, 2023. *See* ECF No. 26. On March 13, 2023, a second complaint denominated *Carlson v. Southwest Airlines Co., et al.* was filed alleging essentially the same allegations as *Teroganesian*. Berry checked for any new filings on March 13, but the *Carlson* complaint was not yet filed and/or available at that time. Accordingly, Berry's motion inadvertently does not include a request for consolidation of the two cases. Berry does not oppose and, indeed, joins the motions of Carlson and Muthusamy to the limited extent that they seek consolidation of the related cases. *See* ECF No. 13 at 2-7 (Muthusamy Mot.); ECF No. 14 at 3-8 (Carlson Mot.). Berry opposes the competing motions on all other grounds. Otherwise undefined terms have the definitions set forth in Berry's initial motion.

One other movant, Hsu, purports to have a larger financial interest than Berry, but the Court cannot appoint Hsu as Lead Plaintiff because Hsu is a textbook atypical movant.  Hsu suffered *all* his losses *in connection with his sales of Southwest put options*, and, as is well established, he therefore cannot meet his *prima facie* Rule 23 requirements.[2]  Courts consistently reject lead plaintiff movants like Hsu who suffered *all* their losses in options.  *See, e.g., Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class");[3] *Applestein v. Medivation Inc.*, No. C 10-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead [plaintiff]").  *See also infra* at 7-8.  Accordingly, Hsu must be disqualified here. Berry, who traded in common stock, does not suffer from the same impediments as Hsu and has the largest financial interest of any qualified movant before the Court.

In addition to having the largest financial interest of any qualified movant, Berry also handily satisfies the *prima facie* Rule 23 typicality and adequacy requirements.  Berry is typical of other Class members because he bought Southwest securities during the Class Period and was significantly harmed by the same alleged misstatements and omissions as other Class members. Berry has no conflicts with other Class members.  Berry also readily meets the PSLRA's *prima*

---

[2] When an investor sells a put option to a buyer, the seller (here, Hsu) has the obligation to buy the underlying stock or asset at the strike price when the option is exercised by the buyer.  *See* https://corporatefinanceinstitute.com/resources/derivatives/put-option.  Since *all* of Hsu's trades were dependent on whether the options were exercised by buyers, his trading here presents clear issues of atypicality that would only harm the proposed Class if he was appointed.  *See, e.g., Scheller v. Nutanix, Inc.*, No. 19-CV-01651-WHO, 2021 WL 2410832, at *5-6 (N.D. Cal. June 10, 2021) (options holder was atypical because he could only show reliance in connection with the sales of put options, not the acquisition of common stock after the options were exercised).

[3] It was Hsu's counsel who successfully argued that the fact that Massar suffered all of his losses in connection with options rendered him atypical in *Reata*.

*facie* adequacy requirements.  As set forth in his opening brief, Berry lives in Dearborn Heights, Michigan; he is 35 years old; he has a Bachelor's Degree from the University of Michigan; he has been investing for 17 years; and he is an Account Manager for Berry BP Inc., a division of Armada Oil & Gas.  *See* ECF No. 18 at 1.  Berry chose Bernstein Liebhard as proposed Lead Counsel for the Class.  Bernstein Liebhard has successfully litigated securities class actions for over twenty-five years.  *See* ECF No. 18 at 7-8.  Accordingly, Berry readily satisfies Rule 23's typicality and adequacy requirements.

In light of the foregoing, Berry is entitled to the PSLRA's "strong" presumption of being appointed Lead Plaintiff.  *Robison v. Digital Turbine, Inc.*, No. 1:22-cv-00550-DAE, 2022 WL 17881476, at \*9 (W.D. Tex. Dec. 19, 2022).  Once this strong presumption attaches, the Court must focus its attention on the presumptive lead plaintiff alone and not conduct a beauty contest among the remaining movants.  To rebut the presumption in Berry's favor, competing movants must offer actual "proof", not mere speculation, that Berry somehow does not satisfy Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The competing movants can offer no such proof.

For these reasons and those discussed further below, Berry's motion for appointment as Lead Plaintiff and approval of Lead and Liaison Counsel should be granted, and all competing motions for lead plaintiff should be denied, except to the extent they seek consolidation of the related cases.

## ARGUMENT

I.      **THE COURT SHOULD APPOINT BERRY AS LEAD PLAINTIFF AS HE HAS THE LARGEST FINANCIAL INTEREST IN THE ACTION OF ANY QUALIFIED MOVANT AND SATISFIES RULE 23**

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who suffered the largest financial interest and satisfies Fed. R. Civ. P. 23.  *See* 15

00736937;V1                                          3

U.S.C. § 78u-4(a)(3)(B)(iii)(I).  *See also Kakkar v. Bellicum Pharm., Inc.*, No. 4:18-CV-00338, 2019 WL 1367653, at *2 (S.D. Tex. Mar. 26, 2019).  Here, that movant is undeniably Berry.

### A.      Berry Has the Largest Financial Interest of Any Qualified Movant

Berry has a financial interest of $203,192, which is a larger financial interest than that of Carlson, the only other qualified movant before the Court:[4]

| MOVANT | FINANCIAL INTEREST |
|---|---|
| **Michael Berry** | **($203,192.35)** |
| **Dave Carlson** | **($181,039.64)** |
| ~~Kumaran Muthusamy~~ | ~~(31,426.88)~~[5] |
| ~~Vincent Hsu~~ | ~~($221,200.00)~~ |

Only one other movant, Hsu, claims to have a larger financial interest here than Berry, but Hsu is a textbook atypical movant who cannot satisfy his *prima facie* Rule 23 requirements.  Hsu claims a $221,200 financial interest, but he suffered ***the entirety of his losses in connection with his sale of Southwest put options***.  This dooms his motion as courts repeatedly hold that a lead plaintiff movant who suffered ***all*** its losses in connection with options contracts is atypical of other

---

[4] The financial interest of the movants is the same under LIFO (last-in-first-out) and *Dura*, which are the two most common accounting methodologies used to determine financial interest at the lead plaintiff stage.  *See*, *e.g.*, *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 717–18 (S.D. Tex. 2021) ("[t]he LIFO method is often used by district courts trying to determine losses when deciding who to appoint as lead plaintiff"); *Robison*, 2022 WL 17881476, at *6 ("[p]ursuant to [*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], the Court will not consider securities that were sold prior to the first fraud-correcting disclosure").

[5] As noted above, Muthuswamy does not oppose the competing motions.  *See supra* at 1 n.1.

class members and, thus, should not serve as a lead plaintiff. *See infra* at 7-8. Accordingly, Hsu must be disqualified here.

Berry's financial interest is $22,000 larger than Carlson's, the only remaining movant. Having the largest financial interest ensures that Berry will prosecute the related actions diligently and vigorously for the benefit of the proposed Class. *See Williams v. Block.One*, No. 20-cv-2809 (LAK), 2020 WL 4505569, at *3 n.19 (S.D.N.Y. Aug. 4, 2020) ("[t]he theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff … would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price").

**B.      Berry Readily Satisfies the *Prima Facie* Rule 23 Requirements**

In addition to having the largest financial interest of any qualified movant before the Court, Berry has made the requisite *prima facie* showing of typicality and adequacy under Rule 23. Berry is typical of, and has no conflicts of interest with, other Class members because he bought Southwest securities during the Class Period and was harmed by the same alleged misstatements and omissions as other Class members. Berry's claims are also typical of the Class in that he suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named defendants, and bases his claims on the same, or substantially the same, legal theories as the Class. *See Bremer v. Solarwinds Corp.*, No. 1:21-cv-2-RP, 2021 WL 2668827, at *2 (W.D. Tex. Mar. 11, 2021). Berry also readily meets the PSLRA's *prima facie* adequacy requirements. Berry provided background information about himself in his opening brief, including that he lives in Michigan, has a bachelor's degree, is a sophisticated investor, and is an account manager for an oil and gas company. *See* ECF No. 18 at 1. Berry has also proposed qualified lead counsel. *See*

*Id.* at 1-2, 8.  Accordingly, Berry handily satisfies the *prima facie* Rule 23 requirements and, thus, is entitled to the PSLRA's "strong" presumption of being the most adequate plaintiff to represent the proposed Class.  *Robison*, 2022 WL 17881476, at *9.

C.      **There is No Proof to Rebut the Strong Presumption in Favor of Berry**

The only way for competing movants to rebut the PSLRA's "strong" presumption in favor of appointing Berry as Lead Plaintiff is to present actual "proof", not mere speculation, that Berry somehow does not satisfy Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  *Cf. In re Spero Therapeutics, Inc. Sec. Litig.*, No. 22-CV-3125 (LDH) (RLM), 2022 WL 4329471, at *8-9 (E.D.N.Y. Sept. 19, 2022) ("minor errors" do not defeat adequacy).  There is no proof of any Rule 23 impediment against Berry here.  Moreover, the lead plaintiff process is not a "beauty contest" – the qualified movant with the largest financial interest (here, Berry) is the most adequate plaintiff, period.  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  *See Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *2 (S.D.N.Y. June 21, 2018) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job"); *Cavanaugh*, 306 F.3d at 729-32 (once a court determines which plaintiff has the largest stake, the court must appoint that plaintiff as lead unless it finds that he does not satisfy the typicality or adequacy requirements); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("once the [adequacy] presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class ...").

II.     **THE REMAINING MOVANTS EITHER HAVE A LOWER FINANCIAL INTEREST, DO NOT SATISFY RULE 23, OR BOTH**

00736937;V1                                          6

As discussed above, Berry has the largest financial interest of any qualified movant before the Court, he handily satisfies his *prima facie* Rule 23 requirements, and there is no proof to rebut the strong presumption in his favor. *See supra* at 4-6.

**A.  Hsu Is Atypical of Other Class Members and Cannot Serve as Lead Plaintiff**

Hsu does not satisfy Rule 23's typicality requirements and, thus, is not qualified to serve as Lead Plaintiff here.  As noted *supra*, Hsu suffered **all** his losses in connection with sales of put options.  Courts have repeatedly found that lead plaintiff movants who suffered all their losses in connection with option contracts should not serve in a representative capacity as lead plaintiffs. *Patel* is instructive.  In *Patel*, lead plaintiff movant Massar, who facially had the largest financial interest, suffered his losses "based solely on option contracts".  549 F. Supp. 3d at 567.  The court found Massar was, thus, "atypical of the putative class" as "his losses arose exclusively from his options" and denied his motion for appointment as lead plaintiff.  *Id*.[6]

The *Patel* court, and many others, have noted that "appointing [an] options investor as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and ... could subject the class to unique defenses, causing unnecessary conflict.'"  *Id*. at 567 (citing *In re Elan Corp. Sec. Litig*., No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)).  *See also Micholle v. Opthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (same); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 2:20-cv-00368-JNP-DBP, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021) (same); *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061(RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (same).  *Cf. Stitch Fix*, 393 F.

---

[6] As noted above, it was Hsu's counsel who successfully made this argument in *Reata*.  Hsu's counsel also successfully argued that options purchasers were atypical in *Plagens v. Deckard*, No. 1:20-CV-2744, 2021 WL 3284265 (N.D. Ohio Aug. 2, 2021).

Supp. 3d at 833 (rejecting lead plaintiff movant whose losses were in connection with put option sales); *Applestein v. Medivation Inc.*, No. C 10-00998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead [plaintiff]").

On November 15, 2021, Hsu sold 200 put option contracts with a strike price of $47 and an expiration date of November 26, 2021. *See* ECF No. 16-3. Thus, if the counterparty to the put options chose to exercise the options, Hsu was obligated to buy 20,000 Southwest shares at $47 per share by November 26, 2021. In connection with his sale of put option contracts, Hsu had to buy 20,000 Southwest shares on November 24, 2021 at $47 per share. *See id*. Hsu suffered all of his losses in connection with such contracts. In addition, because Hsu was obligated to buy when the put option counterparty exercised the option, Hsu was atypical because he was not relying on the same information as other Class members when he had to buy common stock in connection with his options. *See*, *e.g.*, *Scheller*, 2021 WL 2410832, at *5 (options holder could only show reliance in connection with the sales of put options, not the acquisition of common stock after the options were exercised, and thus was atypical). Purchasing common stock in connection with an option contract – particularly after selling a put option contract where, if the counterparty exercises the option, an investor is obligated to buy common stock during a set time period at a set price under the contract – is fundamentally different than buying common stock on the open market.

Accordingly, the Court should not appoint Hsu as lead plaintiff because he is atypical of other Class members and will, thus, harm the Class more than benefit it.

## B.    Carlson Has Not Satisfied Rule 23's Adequacy Requirements

Although the Court's inquiry should end because Berry has the largest financial interest of any qualified movant, Carlson has another disqualifying factor that the Court should be aware of.

00736937;V1                                                8

Carlson provided no information about himself whatsoever, including where he lives, his investing experience, or his background.  Accordingly, he has failed to meet his basic Rule 23 requirements and this failure renders him inadequate.  *See, e.g.*, *Patel*, 549 F. Supp. 3d at 570 (recognizing that a "dearth of information provided by and about a lead-plaintiff movant [is an appropriate] basis for denying the movant's motion"); *Perez v. Hexo*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020).[7]

---

[7] Because "[a]rguments raised for the first time in a reply brief are waived," (*Swinford v. Coil Tubing Technology, Inc.*, 2022 WL 5430089, at *2 n.1 (S.D. Tex. July 11, 2022), any attempt by Carlson to belatedly submit information about himself should be rejected.

00736937;V1                                    9

**CONCLUSION**

For the foregoing reasons and those given in his opening motion, Berry respectfully requests that this Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Bernstein Liebhard as Lead Counsel and GBK&H as Liaison Counsel for the proposed Class.

Dated: April 3, 2023

Respectfully submitted,

/s/ Russell Horton

**GEORGE BROTHERS KINCAID & HORTON, L.L.P.**
1100 Norwood Tower
114 West 7th St
Austin, TX 78701
Telephone: (512) 495-1400
rhorton@gbkh.com

*Liaison Counsel for Michael Berry and Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Michael Berry and Proposed Lead Counsel for the Proposed Class*

**CERTIFICATE OF WORD COUNT**

I hereby certify, on this 3rd day of April 2023, that the above Memorandum of Law in Further Support of Michael Berry's Motion for Appointment of Lead Plaintiff and Approval of Counsel and in Opposition to Competing Motions For Appointment of Lead Plaintiff and Approval of Lead Counsel contains 2,866 words.

/s/

_____

RUSSELL HORTON

00736937;V1                                         1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of April 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/

_____

RUSSELL HORTON