IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on behalf of all others similarly situated, | Case No.: 4:23-cv-115 |
| Plaintiff, | |
| v. | |
| SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN, | |
| Defendants. | |
| DAVE CARLSON, Individually and on behalf of all others similarly situated, | Case No.: 4:23-cv-920 |
| Plaintiff, | |
| v. | |
| SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MICHAEL BERRY'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

00737684;V1

Michael Berry ("Berry") respectfully submits this reply memorandum of law in further support of his motion and in opposition to the competing motions.[1]

## PRELIMINARY STATEMENT

Berry is entitled to the PSLRA's "strong" presumption of being appointed Lead Plaintiff as he has the largest financial interest of any qualified movant and satisfies Rule 23.  The competing movants have not offered "proof" to rebut this presumption; instead, they wrongly claim Berry miscalculated his financial interest.  Because there is no argument – never mind proof – to rebut Berry's presumptive status, the Court should appoint Berry as Lead Plaintiff.

The PSLRA does not dictate financial interest calculation on lead plaintiff motions.  In this District and elsewhere, courts apply the well-accepted LIFO and/or *Dura* methodologies.  *See infra* at 3-4.  Berry's losses of $203,192 are the same under both methodologies and are the largest of any qualified movant.  As Hsu's own counsel argued recently, courts find movants like Hsu unqualified because they suffered ***all*** their losses with options contracts.  *See infra* at 7.

Hsu and Carlson wrongly claim Berry did not properly remove losses from "in-and-out" transactions under *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005), but they are wrong.  *Dura* only requires excluding – as Berry did – losses incurred before ***the first alleged corrective disclosure***.  *See infra* at 6.  Carlson also urges a *Dura* retained shares methodology that ignores purchase price and "considers only shares held at the time of [the six] corrective disclosures" (Carlson Opp. at 3) (ECF No. 25).  Courts, including one in this circuit, have repeatedly rejected this methodology.  *See infra* at 4-5.

---

[1] Competing motions were timely filed by Hsu, Carlson, as well as Muthusamy, who filed a non-opposition on April 3, 2023.  *See* ECF No. 26.

00737684;V1

Carlson does not explain how he applied his methodology. Carlson apparently took the number of shares held at each alleged corrective disclosure and multiplied that number by the alleged stock drops following each disclosure to arrive at a contrived figure of $120,203 for Berry. But Carlson did not apply his method to himself or Hsu as it slashes his loss to $33,660 and Hsu's to $99,400. *See id*. at 5-6. Thus, Berry has the largest interest under Carlson's rejected methodology.

Hsu claims Berry included "losses sold prior to any corrective disclosure" (ECF 27 at 5), but that too is wrong because Berry incurred no losses before the first alleged disclosure, so there was nothing to back out. *See infra* at 6. As Hsu's own citations show, courts only exclude losses suffered before the first – not later – alleged disclosures. *See infra* at 6-7.

Accordingly, Berry's motion for Lead Plaintiff appointment and approval of counsel should be granted and all competing motions should be denied except to the extent they seek consolidation of the related cases.

## ARGUMENT

### I. THE COURT SHOULD APPOINT BERRY AS LEAD PLAINTIFF

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who has the largest financial interest and satisfies Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The opposition memoranda confirm that this movant is Berry.

#### A. Berry Has the Largest Financial Interest of Any Qualified Movant

Berry's financial interest of $203,192 is the largest of any qualified movant:

| MOVANT | FINANCIAL INTEREST |
|---|---|
| Michael Berry | ($203,192.35) |
| Dave Carlson | ($181,039.64) |
| ~~Kumaran Muthusamy~~ | ~~(31,426.88)~~ |
| ~~Vincent Hsu~~ | ~~($221,200.00)~~ |

### B. Berry Satisfies Rule 23

Berry demonstrated his *prima facie* typicality and adequacy under Rule 23. *See* Opp. at 5-6. Indeed, no movant raised any Rule 23 argument against Berry.

### C. Hsu and Carlson Present No Proof – Because There is None – to Rebut Berry's Presumptive Status

Rather than offer "proof" that Berry does not satisfy Rule 23 (15 U.S.C. §78u-4(a)(3)(B)(iii)(II)), Hsu and Carlson wrongly claim that Berry miscalculated his financial interest. Carlson also pushes a retained shares method that courts, including one in this Circuit, have rejected. And even under Carlson's rejected methodology (if applied to all movants), Berry still has the largest financial interest.[2]

Courts applying *Dura* exclude losses incurred before the first alleged corrective disclosure, but Carlson argues the Court should exclude losses incurred before **all alleged corrective disclosures**. Countless courts have rejected this argument. *See, e.g., Robison v. Digital Turbine, Inc.*, No. 1:22-CV-00550-DAE, 2022 WL 17881476, at *6 (W.D. Tex. Dec. 19, 2022) (backing

---

[2] Although Carlson has the third largest facial interest, he strangely leaves Hsu alone and attacks Berry – suggesting a possible behind-the-scenes deal.

out losses suffered prior to first, but not second, disclosure); *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221, at *3 (N.D. Ill. July 19, 2019) (including all losses "[b]ecause [movant] sold its shares after the first of three alleged corrective disclosures"); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) (*Dura* does not require excluding "in-and-out transactions…between the various corrective disclosures").

Carlson's cases either agree or involved one corrective disclosure.  *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (excluding losses incurred prior to the first of multiple corrective disclosures); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (same); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019) (same); *Ruland v. InfoSonics Corp.*, No. 06-cv-1231, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006) (same); *Gutman v. Sillerman*, No. 15-cv-7192, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (same); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (same).  Carlson's other citations are irrelevant.  *See Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *6 (W.D. Tex. Dec. 10, 2008) (LIFO excludes "in-and-out" transactions); *Luongo v. Desktop Metal, Inc.*, No. 1:21-cv-12099, 2022 WL 2532498, at *5 (D. Mass. July 7, 2022) (losses incorrect because one alleged disclosure was alleged as a false statement).

Carlson also argues that the Court should depart from well-settled methodologies and "consider[ ] only shares held at the time of these corrective disclosures".  Carlson Opp. 3-4 (ECF 35 at 3-4).  But courts – including three cited by Carlson – reject this "retained shares" methodology.  *See Sallustro*, 93 F. Supp. 3d at 275-76 (the "retained shares method" "is inconsistent with the [PSLRA and] with *Dura* itself"); *Simco v. Aegean Marine Petroleum*

*Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (rejecting retained shares method because it "effectively precludes any consideration of purchase price"); *Gutman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) (retained shares method "inconsistent with… *Dura*").

A recent case in this Circuit, *Robison*, 2022 WL 17881476, at *6, agrees.  In *Robison*, movant Kirschner "argue[d] that [*Dura*] requir[es] the Court to disregard the purchase price of the shares when calculating losses".  The court disagreed, finding that "*Dura* does not stand for this proposition [as it] merely prohibited parties from claiming losses for [sales] prior to the first fraud-correcting disclosure." *Id.*[3]  Other courts agree.  *See Marcus v. J.C. Penney Co.,* No. 6:13-CV-736, 2014 WL 11394911, at *4 (E.D. Tex. Feb. 28, 2014) (applying LIFO and calculating loss as difference between "purchase prices" and "the 90-day mean trading price as described in the PSLRA"); *Wrap Techs., Inc. Sec. Exch. Act Litig.,* No. CV 20-8760-DMG (RAOX), 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (rejecting retained shares methodology).

Carlson did not explain how he applied his method and it is not other movants' duty to divine how he did so.  Carlson apparently took the number of shares held at the time of each alleged corrective disclosure and multiplied that number by the stock drops as alleged in the complaints to arrive at a contrived figure of $120,203 for Berry.  Importantly, Carlson did not apply his methodology to himself or Hsu as it cuts Carlson's interest to $33,660 and Hsu's to $99,400.

Berry reached these figures as follows:  Carlson bought all 8,500 of his shares on April 9, 2021 and sold them all on February 24, 2022 – before the last two corrective disclosures.  *See* Hsu

---

[3] Notably, it was Carlson's counsel who successfully argued ***against*** the retained shares method in *Robison*.  *See* Exhibit A at 4-5 (*Robison*, 1:22-cv-00550, ECF 29) ("[t]he only two cases Kirschner identifies that have employed her proposed methodology are out-of-Circuit outliers…universally rejected by other courts").

Cmplt. ¶¶57-70; Carlson Cmplt. ¶¶3-17.[4]  Multiplying Carlson's 8,500 shares by the total stock drops of the four alleged partial disclosures that preceded his purchase ($3.96) equals $33,660. Yet Carlson inexplicably lists his financial interest under his method as $181,039.  Carlson Opp. at 4. Hsu acquired 20,000 shares in connection with his option contracts on November 24, 2022 and held these shares through the last two alleged disclosures, which were followed by drops totaling $4.97.  *See* ECF No. 16 at Ex. 2; Carlson Cmplt. ¶¶83-93.  Multiplying 20,000 by $4.97 equals $99,400.  For Hsu, Carlson apparently changed the $35.012 hold price Carlson used initially to Hsu's hold price of $35.62 (*see* ECF No. 16 at Ex. 3) to reach $239,570 for Hsu.  Carlson also excluded Hsu's options proceeds of $6,400.

Hsu wrongly claims that Berry "credit[ed] losses [from] prior to any corrective disclosure." ECF 27 at 5.  The first alleged disclosure here was June 15, 2021.  *See Carlson* Cmplt. ¶¶15-16. Berry sold 1,000 of his almost 30,000 shares before such disclosure.  *See* ECF 19 at 2.  Berry's loss does not change when those sales are excluded because Berry incurred no losses from those sales. *See* ECF 19 at 3.  Hsu's case citations confirm that courts applying *Dura* only exclude losses from ***before the first alleged disclosure***.  *See*, *e.g.*, *Kops v. NVE Corp.*, No. Civ.06–574(MJD/JJG), 2006 WL 2035508, at *5 (E.D. Minn. July 19, 2006) (in-and-out purchaser lost no money "unless [like here] a partial disclosure occurred before the end of the Class Period") (cited at Hsu Opp. 6). *See also Foster v. Maxwell Techs., Inc.*, No. 13–CV–00580–BEN–RBB, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) (one disclosure); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10–CV– 03451–LHK, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) (same); *Hurst v. Enphase Energy, Inc.*, Case No. 20-cv-04036-BLF, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020) (same);

---

[4] Thus, Carlson's claim that he has "no in-and-out transactions" under his methodology (Carlson Opp. at 4) is false because he sold stock before the final two disclosures.

*Comverse*, 2007 WL 680779, at \*4 (same); *In re Bally Total Fitness Sec. Litig.*, No. 04-CV-3530, 2005 WL 627960 at \*6 (N.D. Ill. Mar. 15, 2005) (same); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (plaintiff sold prior to only remaining disclosure); *Marjanian v. Allied Nevada*, No. CV 14-0650-JCM-VCF, 2014 WL 12769810, at \*3 (D. Nev. Nov. 7, 2014) (outlier court applied retained shares methodology to **one corrective disclosure** – noting the retained shares methodology is "not appropriate…where multiple partial corrective disclosures are alleged…").

Berry correctly applied *Dura* and had no losses prior to the first partial disclosure.

## II.   THE REMAINING MOVANTS' MOTIONS SHOULD BE DENIED FOR OTHER REASONS

### A.  Hsu Is Atypical and Cannot Serve as Lead Plaintiff

Hsu has not satisfied Rule 23 and, thus, is not qualified to serve as Lead Plaintiff.  Hsu suffered **all** his losses in connection with sales of put options.  *See* Opp. at 7.  Hsu is a textbook atypical movant and should be out of the running.

### B.  Carlson's Belated Background Information Only Reinforces His Inadequacy

Beyond having the smallest interest of remaining movants, Carlson did not meet his adequacy requirements in his motion.  *See* Opp. at 9.  Carlson belatedly provided some background information in his opposition, but this itself shows his inadequacy.  *See Perez v. Hexo*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at \*2 (S.D.N.Y. Feb. 25, 2020) ("failure to provide any information regarding his experience in his preliminary motion" rendered movant inadequate).  In addition, by failing to protect the Class' interest and identify Hsu's glaring Rule 23 problems, Carlson has further shown his inadequacy – particularly when Carlson's counsel has successfully argued that put option sellers like Hsu do not satisfy Rule 23.  *See Di Scala v. ProShares Ultra*

*Bloomberg Crude Oil*, No. 20 CIV. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)

("near exclusive options trading…renders [movant] atypical").

**CONCLUSION**

For these reasons and those in his earlier submissions, Berry requests that this Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Bernstein Liebhard as Lead Counsel and GBK&H as Liaison Counsel for the proposed Class.

Dated: April 10, 2023

Respectfully submitted,

/s/ Russell Horton

**GEORGE BROTHERS KINCAID & HORTON, L.L.P.**
1100 Norwood Tower
114 West 7th St
Austin, TX 78701
Telephone: (512) 495-1400
rhorton@gbkh.com

*Liaison Counsel for Michael Berry and Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Michael Berry and Proposed Lead Counsel for the Proposed Class*

00737684;V1

8

## **CERTIFICATE OF WORD COUNT**

I hereby certify, on this 10th day of April 2023, that the above Reply Memorandum of Law in Further Support of Michael Berry's Motion for Appointment of Lead Plaintiff and Approval of Counsel contains 1,998 words.

/s/

_____

RUSSELL HORTON

00737684;V1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/

_____

RUSSELL HORTON

00737684;V1                                          2