**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| JAY ROBISON, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>        v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>                  Defendants. | Civil Action No. 1:22-cv-00550-RP<br><br>**HOWARD J. BURCH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** |
| MELISSA KIRSHNER, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>        v.<br><br>DIGITAL TURBINE, INC., WILLIAM STONE, and BARRETT GARRISON,<br><br>                  Defendants. | Civil Action No. 1:22-cv-00731-RP |

Lead Plaintiff Movant Howard J. Burch ("Burch") has the largest financial interest of any movant and is thus the presumptively most adequate plaintiff. Acknowledging this fact, the competing movants abandon their arguments regarding the proper loss calculation methodology and the appropriate class period made in their initial motions and now argue that a new methodology and class period should be used to calculate loss. Unsurprisingly, these revised positions—that were not mentioned in their opening motions at all—result in a finding that they each have the largest loss. *See* Dkt. No. 26 ("Fund Opp.") at 4; Dkt. No. 27 ("Kirshner Opp.") at 4.

However, setting aside the other movants' improper gamesmanship, each of their arguments is unsupported by the facts and the law. Burch is the movant with the largest financial loss and thus the largest financial interest in this action. Accordingly, Burch is the presumptively most adequate plaintiff. Since the presumption has not been—and cannot be—rebutted, Birch should be appointed as lead plaintiff.

## I.  BURCH IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE BURCH HAS THE LARGEST FINANCIAL INTEREST

Of the three remaining lead plaintiff movants, Burch has the largest LIFO loss under the most inclusive class period, which was the accepted calculation by all other movants in their opening papers. Thus, he has the largest financial interest in the relief sought by the class:[1]

| Movant | LIFO Loss |
|---|---|
| Howard J. Burch | $691,362 |
| Melissa Kirshner | $679,059 |
| Fund Group | $436,333 |

---

[1] The figures in this chart are updated using the 90-day average price ending August 24, 2022 to value losses on retained shares. *See* 15 U.S.C. § 78u-4(e)(1) (Limitation on Damages).

**A.** **Kirshner's Unsupported Loss Calculation Methodology, Proposed For The First Time In Her Opposition, Should Be Rejected**

For the first time in her opposition memorandum, Kirshner proposes that the Court "calculate losses under the methodology articulated in [*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)]." Kirshner Opp. at 2. The Court should reject Kirshner's proposal because it is improper gamesmanship to manipulate her loss and has not been employed by any court in the Fifth Circuit.

As an initial matter, Kirshner proposed a new methodology for calculating movants' losses only *after* she learned that Burch has a larger loss under LIFO, the generally accepted methodology used by courts at the lead plaintiff stage. Kirshner fully endorsed the LIFO methodology in her opening papers and did not purport to account for the principles of *Dura* that she now claims mandates a different methodology. *See* Dkt. No. 14 at 13 ("Kirshner . . . incurred losses of approximately $694,538," employing the LIFO methodology); Dkt. No. 15-1 (Kirshner's loss chart, calculating a loss of $694,538 using the LIFO methodology); Dkt. No. 15 (Kirshner's declaration, introducing her LIFO loss chart as a "[c]hart reflecting the financial interest of Kirshner"). Kirshner now rejects the LIFO methodology because she learned Burch has a larger LIFO loss. Courts routinely reject such gamesmanship and require that movants stick with the methodology they originally endorsed in their moving papers. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 276 (S.D.N.Y. 2015) (rejecting movant's "transparent attempt to manipulate the size of [his] losses based on information available to him at the time of his original lead plaintiff motion") (cleaned up); *Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763, at *3 n.5 (N.D. Ill. June 26, 2018) ("[C]ourts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method.").

2

Kirshner's proposed methodology also conflicts with the clear language of the PSLRA, which considers purchase price. Specifically, Kirshner proposes that "[t]o determine losses" the Court should:

> [M]ultipl[y] the number of shares retained by the movant at the time of each disclosure by the difference between (i) **the closing price on the last trading day prior to the disclosure** and (ii) the higher of the closing price following the corrective disclosure, the actual sales price for the movant's post-disclosure sales of the movant's Digital Turbine securities, and the average closing price of Digital Turbine stock for the 90 days following the corrective disclosure.

Kirshner Opp. at 3 (emphasis added). In contrast, the PSLRA allows damages up to:

> [T]he difference between the **purchase . . . price paid** . . . and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1) (emphasis added). The LIFO methodology takes purchase price into account and is consistent with the language of the PSLRA. Kirshner's proposed alternative "renders purchase price irrelevant," which is "inconsistent with the statutory scheme." *CannaVest Corp.*, 93 F. Supp. 3d at 276 & n.11 (such a model "leads to absurd results," *e.g.*, "an investor who bought the stock at $100, watched it rise to $150, then sold the stock at $125 after a corrective disclosure, could recover for the $25 price drop, even though at $125 the investor would have realized a $25 profit").

Contrary to Kirshner's representations, *Dura* did not articulate a methodology for calculating losses, nor did it endorse Kirshner's methodology. *See id.* at 277 ("*Dura* does not state that purchase price plays no role in loss analysis, nor does its logic require such an approach" as many courts have recognized) (collecting cases). Rather, *Dura* held that a movant cannot claim losses on shares she purchased during the class period but sold before any corrective disclosure— *i.e.* that "in-and-out" transactions should be excluded from the loss calculation. *See* 544 U.S. at

3

342 ("[I]f . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). This principle of *Dura* is irrelevant here because Burch did not sell any shares during the class period before the corrective disclosures—he only purchased shares.

Kirshner cites many cases that she claims support her methodology—they do not. *See Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at \*4 (S.D. Cal. Aug. 8, 2011) ("[t]he Court adopts the retained share methodology" whereby "the purchase price of the retained shares" is compared to the 90-day average); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at \*4 (N.D. Cal. Aug. 22, 2008) (similar); *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at \*3 (S.D. Cal. Oct. 24, 2013) (same) (each case cited in Kirshner Opp. at 2-3, 8). The cited authorities simply recognize that, applying *Dura*, in-and-out transactions should be excluded from calculating losses. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at \*3 (S.D.N.Y. Nov. 21, 2013) (looks to LIFO and the first-in, first-out (FIFO) methodologies but excludes "trading losses [*i.e.* losses on sales] incurred prior to the issuer's [] corrective disclosure"); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at \*5 (E.D.N.Y. Mar. 2, 2007) (holding *Dura* precluded the possibility of a "recoverable claim for the in-and-out losses"); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476-77 (S.D.N.Y. 2016) (presumptively most adequate plaintiff held shares over partial disclosures).

The only two cases Kirschner identifies that have employed her proposed methodology are out-of-Circuit outliers that have been universally rejected by other courts. *See Marjanian v. Allied Nevada Gold Corp.*, 2015 WL 128691 (D. Nev. Jan. 9, 2015) (cited in Kirshner Opp. at 2, 3, 4, 7, 9); *Espinoza v. Whiting*, 2013 WL 171850 (E.D. Mo. Jan. 16, 2013) (cited in Kirshner Opp. at 3, 7). No other court has cited *Allied Nevada* and *Espinoza* as authority to adopt their methodology

4

despite being published more than seven and nine years ago, respectively. *See also CannaVest Corp.*, 93 F. Supp. 3d at 276 (declining to follow *Espinoza* because, among other reasons, it "contains little analysis," "cites no supporting cases," and "has never been . . . relied on by another court").

In fact, the only Fifth Circuit case Kirshner cites to support her proposed methodology actually **rejects** it. *See Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at \*4 (E.D. Tex. Feb. 28, 2014) (cited in Kirshner Opp. at 2) (calculating loss as the difference between the "actual purchase prices" and "the 90-day mean trading price as described in the PSLRA," but excluding losses on shares sold before the corrective disclosure, consistent with *Dura*). While Kirshner misleadingly claims the *J.C. Penney* court "consider[d] the *Dura* method when analyzing movant's financial interest" (Kirshner Opp. at 2), the *J.C. Penney* court simply noted that the "*Dura* methodology" was one of multiple methodologies proposed by the movants. 2014 WL 11394911 at \*4. And, the court ultimately appointed a lead plaintiff based on the movants' LIFO losses, excluding shares sold before corrective disclosures. *See id.* at \*3-4.

In sum, Kirshner has failed to provide a compelling reason to depart from the universal application of LIFO for calculating financial interest in federal courts in Texas. *See Strong v. AthroCare Corp.*, 2008 WL 11334942, at \*6 (W.D. Tex. Dec. 10, 2008) ("The majority view seems to be that approximate losses should be calculated using the LIFO method."); *see also Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 717 (S.D. Tex. 2021) (using the LIFO methodology); *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 2020 WL 2475656, at \*3 n.4 (S.D. Tex. May 13, 2020) (same); *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at \*6 (S.D. Tex. Mar. 23, 2017) (same); *Hall v. Rent-A-Center, Inc.*, 2017 WL 1017716, at \*2 (E.D. Tex. Mar. 16, 2017) (same); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 2015 WL

5

8207331, at *2 n.1 (S.D. Tex. Dec. 7, 2015) (same); *J.C. Penney*, 2014 WL 11394911, at *4 (same); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) (same).

### B. Other Financial Interest Factors Do Not Trump Loss

Kirshner argues that, even if she has a smaller loss than Burch (she does), she still has the largest financial interest because she has a slight lead over Burch in the other factors some courts consider: gross shares purchased, net shares purchased, and net expenditure. *See* Kirshner Opp. at 4. This is incorrect. "[M]ost courts . . . look exclusively to which potential lead plaintiff has suffered the greatest total losses." *Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 565 n.2 (E.D. Tex. 2021) (citation and internal quotation marks omitted).

Faced with this, Kirshner attempts to downplay the fact that she has a smaller loss than Burch by claiming the difference is small. *See* Kirshner Opp at 4. However, "any financial difference is meaningful in determining a lead plaintiff." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (collecting cases). This is because the statute specifically articulates that the presumption applies to the singular movant with the largest financial interest and then the Court is to consider whether that movant alone is adequate. *See* 15 U.S.C. § 78u-4(a)(3)(B). Whether movants are close in financial interest is simply irrelevant. *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) (a difference of even "a few hundred dollars" is sufficient to establish "a greater financial stake in the controversy")

Kirshner cites three cases for her proposition to elevate the other factors over loss, but in each of them, the court ultimately appointed the movant with the largest loss. *See* Kirshner Opp. at 4-5; *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *8 (E.D. Mich. Oct. 24, 2014) ("[t]he Court finds that the fourth *Lax* factor, like the first three factors, favors New York Teachers."); *Brody v. Zix Corp.*, 2005 WL 8158375, at *2 (N.D. Tex. July 11, 2005) ("In looking at all four factors, the evidence before the Court establishes the Shinabarker Group sustained the largest loss, with

6

approximate losses of $563,185."); *TDH Partners LLP v. Ryland Grp., Inc.*, 2006 WL 8437050, at *8 (N.D. Tex. June 2, 2006) ("She also suffered a greater loss than DuBray and TDH, and possibly Pipefitters.").

Courts presented with the precise issue here—one movant has the largest loss while another movant has a larger interest under the other factors—have appointed the movant with the largest loss. *See, e.g.*, *In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) ("[T]he Court elects to follow the approach advanced by courts in the Ninth Circuit, elevating the importance of the fourth factor."); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *3 (C.D. Cal. Jan. 7, 2021) ("Because . . . O'Hern suffered the greatest loss using a LIFO calculation and the Court places greatest weight on this factor, the Court finds that O'Hern has the greatest financial interest in this litigation."); *see also Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (similar). Kirschner's other out-of-Circuit cases are inapplicable outliers.[2]

Accordingly, other financial interest factors should not be elevated over the movants' respective losses.

### C. Loss Should Be Measured Under The Most Inclusive Class Period

The Fund Group endorsed the most inclusive class period when presenting its losses in its initial papers. *See* Dkt. No. 18 at 5. This is consistent with the law of this Circuit. *See BP*, 758 F.

---

[2] *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017) (cited in Kirshner Opp. at 8) noted that "[a]ll four factors will be given equal weight," which is an approach explicitly rejected by most if not all courts in this Circuit and nationwide. *See* Dkt. No. 25 ("Burch Opp.") at 3-4. *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (cited in Kirshner Opp. at 8) did not appoint the movant with the largest loss in part because it "may have sold most of its shares before SafeNet announced corrective measures." *Id.* Burch has no sales during the class period.

Supp. 2d at 433; *Reata Pharm.*, 2022 WL 1206580, at *2 n.1; *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *2 (N.D. Tex. Apr. 25, 2016).

After competing motions were filed, the Fund Group now argues to shorten the class period to maximize its loss relative to the competing movants' losses. *See* Fund Opp. at 4-5. As with Kirshner, such clear gamesmanship should be rejected. *See Ulta Beauty*, 2018 WL 3141763, at *3.

The Fund Group contends that Kirshner expanded the class period "solely to encompass her purchases made shortly after the AdColony and Fyber mergers were announced . . . which is reason alone to deny her motion." Fund Opp. at 5. This argument does not apply to Burch since Burch did not expand the class period. Moreover, the Fund Group's speculation regarding Kirshner's motivation is insufficient to demonstrate that the expanded class period is improper.[3]

*  *  *

Burch has the largest loss according to the proper methodology under the most inclusive class period. As such, Burch has the largest financial interest, and is the presumptively most adequate plaintiff.

---

[3] The Fund Group has not fleshed out why the *Kirshner* class period is illegitimate, despite now having had two opportunities to do so. Any attempt to do so on reply should be rejected as an untimely new argument. Moreover, there is a plausible basis for the expanded class period. On February 26, 2021, Digital Turbine touted the AdColony acquisition, claiming it would "accelerate our growth" and that the transaction "will be substantially accretive to our expected profitability in the first full year following the transaction." *See Kirshner* Complaint ¶ 19. The complaints in both actions allege that Digital Turbine misled investors by failing to disclose that AdColony would be acting as an agent in certain of its product lines and that as a result "revenues for those product lines must be reported net of license fees and revenue share, rather than on a gross basis" which would (and did) suppress the amount of revenue Digital Turbine could realize from the acquisition. *See Kirshner* Complaint ¶ 3; *Robison* Complaint ¶ 5. Investors suffered losses when this limitation was later revealed, and Digital Turbine was forced to restate certain financial statements. *See Robison* Complaint ¶¶ 30-32. The expansion is not frivolous. *See BP*, 758 F. Supp. 2d at 434 ("[T]he Court will use the longest noticed class period unless the factual allegations supporting that period are 'obviously frivolous.'").

8

## II. THE PRESUMPTION THAT BURCH IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption may be rebutted only upon "proof" that Burch "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Only the Fund Group attempts to rebut the presumption, arguing that "[a]ll that is known about Mr. Burch . . . is essentially [his] name[] and claimed financial interest which does not support a *prima facie* finding of adequacy." Fund Opp. at 6. This attack is meritless.

Burch has provided more than is required to establish a preliminary showing of adequacy. Burch offered in his opening papers that he resides in Kinnelon, New Jersey, is a retired business owner, and has managed his own investments for more than 15 years. *See* Dkt. No. 20 at 10. Burch has also retained a firm with substantial experience in securities class actions, and his loss ensures that he will approach this matter with sufficient zeal. *See Giovagnoli v. GlobalSCAPE, Inc.*, 2017 WL 11220692, at *4 (W.D. Tex. Nov. 6, 2017) (finding the movant adequate where he "retained experienced counsel," "there is no antagonism between his interests and those of putative class members," and "because of his losses, he has a sufficient interest in the outcome of this action"). To remove all doubt, however, Burch submits herewith a declaration, attached as Exhibit A, attesting to his adequacy.

The Fund Group has the ability to investigate Burch's background and identify any issues that may render him inadequate—just as it did with Kirshner. *See* Fund Opp. at 7. Despite this, the Fund Group has not offered any concrete reason to doubt Burch's adequacy—presumably because they failed to identify any.

The Fund Group also claims that Burch's larger loss "is minimal" and cites out-of-Circuit authority to argue that the Fund Group's status as institutions should allow them to leapfrog over

9

Burch or be appointed as co-lead plaintiffs. *See* Fund Opp. at 9-10. The loss difference is not minimal. Burch, a single investor, lost approximately $255,029 **more** than all three members of the Fund Group, combined. *See supra* at 1.

Moreover, Congress did not enshrine a preference for institutions in the PSLRA. The statute grants presumptive lead plaintiff status to whatever movant has the largest financial interest—whether that be an individual or institution. Departing from the statutory language to favor an institution over an individual with a larger financial interest or appoint an unnecessary co-lead plaintiff is not justified. *See In re Alcatel Alsthom*, No. MDL 1263, 1999 WL 33756548, at *5 & n.10 (E.D. Tex. June 7, 1999) (doing so "would violate the plain language of the statute"; and rejecting a proposal that the individual and institutions be appointed "co-lead plaintiffs"); *see also Mohanty v. BigBand Networks, Inc.*, 2008 WL 426250, at *6 (N.D. Cal. Feb. 14, 2008) ("plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest," declining to appoint the institutional investor "as co-lead plaintiff"); *Medicis*, 2009 WL 648626, at *6 ("[T]he Ninth Circuit has made clear that the plain language of the PSLRA does not permit the Court to favor Steamfitters over another plaintiff with a greater financial stake merely because Steamfitters is an institutional investor.")

As such, the presumption that Burch is the most adequate plaintiff has not been rebutted, and Burch should be appointed as lead plaintiff.

III.    **CONCLUSION**

For the foregoing reasons, Burch requests that the Court enter an Order: (1) consolidating the related actions, (2) appointing Burch as Lead Plaintiff; and (3) approving Glancy Prongay & Murray LLP as Lead Counsel and Ahmad, Zavitsanos & Mensing P.C. as Liaison Counsel for the class.

Dated: August 26, 2022                          Respectfully submitted,


                                                **AHMAD, ZAVITSANOS & MENSING P.C.**

                                                */s/ Sammy Ford IV*
                                                Sammy Ford IV
                                                State Bar No. 24061331
                                                Jordan Warshauer
                                                State Bar No. 24086613
                                                1221 McKinney Street, Suite 2500
                                                Houston, Texas 77010
                                                Telephone: (713) 655-1101
                                                Facsimile: (713) 655-0062
                                                Email:  sford@azalaw.com
                                                        jwarshauer@azalaw.com


                                                *Liaison Counsel for Lead Plaintiff Movant Howard*
                                                *J. Burch and Proposed Liaison Counsel for the Class*

                                                **GLANCY PRONGAY & MURRAY LLP**
                                                Charles H. Linehan
                                                Pavithra Rajesh
                                                1925 Century Park East, Suite 2100
                                                Los Angeles, CA 90067
                                                Telephone: (310) 201-9150
                                                Facsimile: (310) 201-9160


                                                *Counsel for Lead Plaintiff Movant Howard J. Burch*
                                                *and Proposed Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this day, August 26, 2022, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Sammy Ford IV
Sammy Ford IV