**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN, <br><br> Defendants. | Civil Action No. 4:23-cv-00115-DBT <br><br> **DAVE CARLSON'S SUR-REPLY IN RESPONSE TO THE REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MICHAEL BERRY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |
| DAVE CARLSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN, <br><br> Defendants. | Civil Action No. 4:23-cv-00920-GCH |

Plaintiff and Lead Plaintiff Movant Dave Carlson ("Carlson") submits this sur-reply for the narrow purpose of correcting Michael Berry's ("Berry's") gross misstatement of Carlson's loss comparison analysis in Berry's reply memorandum of law in support of Berry's lead plaintiff motion (Dkt. No. 31, "Berry Reply"). Carlson used the widely accepted last in, first out ("LIFO") loss method, properly excluding losses from in-and-out transactions, to compare Carlson's loss to Berry's, not the widely rejected "retained shares method," as Berry claims.

## I.    CARLSON USED THE LIFO LOSS METHOD, EXCLUDING LOSSES ON IN-AND-OUT TRANSACTIONS, TO COMPARE HIS LOSS TO BERRY'S LOSS

Carlson used the LIFO method to calculate movants' losses, not the "*Dura* retained shares methodology" as Berry claims in his reply. *See* Berry Reply at 1. Under LIFO, each sale is matched to the most recent preceding purchase, and the loss is the difference between the purchase price and sale price.[1] *See, e.g.*, *Strong v. AthroCare Corp.*, No. 08-ca-574, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008) ("Under LIFO, or last-in-first-out, 'stocks which were acquired most recently are assumed to be sold first.'") (citation omitted); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011) ("LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale.").

Since the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), when conducting the LIFO analysis, courts also generally exclude in-and-out transactions.[2] *See* Dkt. No. 25 ("Carlson Opp.") at 2-3 (collecting cases throughout the country).

---

[1] For shares retained through the end of the class period, the PSLRA provides a calculation to set an effective "sale price" for purposes of determining losses on such shares. *See* 15 U.S.C. § 78u-4(e) (Limitation on Damages).

[2] "In-and-out transactions" refers to shares that were purchased and then sold without an intervening corrective disclosure between the purchase date and sale date. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203, 2012 WL 2025850, at *4 (S.D.N.Y. May 31, 2012) (in-and-

Losses on in-and-out transactions are excluded because such losses "represent inherent market fluctuations rather than the impact of fraudulent dealings." *Robison v. Digital Turbine, Inc.*, No. 22-cv-00550, 2022 WL 17881476, at \*6 n.6 (W.D. Tex. Dec. 19, 2022). As such, it is now widely accepted, including by courts in this Circuit, that the proper method for determining financial interest is to use the LIFO method and exclude losses on shares that were not held over any corrective disclosure (*i.e.* excluding in-and-out transactions).[3] *See Digital Turbine*, 2022 WL 17881476, at \*6 ("*Dura* . . . prohibited parties from claiming losses for in-and-out transactions."); *Saye v. NIO Inc.*, No. 22-cv-7252, 2022 WL 17666398, at \*4 (S.D.N.Y. Dec. 14, 2022) ("courts should not include 'losses resulting from in-and-out transactions . . .'") (quoting *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015)); Carlson Opp. at 2-3 (collecting cases). This is exactly the method employed by Carlson and competing movant Vincent Hsu ("Hsu").

Unlike Carlson, Berry has many in-and-out transactions, which are identifiable in his loss chart he submitted with his lead plaintiff motion (Dkt. No. 19-3), and which Carlson specifically identified in his reply memorandum. *See* Dkt. No. 30 ("Carlson Reply") at 2. Excluding losses on these in-and-out transactions, Berry's LIFO loss is only $120,203.62. This is significantly smaller than Carlson's LIFO loss of $181,039.64. *See* Carlson Opp. at 2-4.

---

out transactions are "purchases and sales that occur . . . after the stock price was fraudulently inflated and before it dropped due to a corrective disclosure").

[3] Under this methodology, for any share that was held over one or more corrective disclosures (*i.e.* not in-and-out), the loss on that share is equal to the difference between the purchase price of that share and the sale price. Or, if that share was held through the end of the class period, the loss on that share is the difference between the purchase price of that share and the mean trading price of that share during the 90-day period following the end of the class period, as mandated by the PSLRA. *See* 15 U.S.C. § 78u-4(e) (Limitation on Damages).

## II.   CARLSON PROPERLY EXCLUDED ALL LOSSES FROM IN-AND-OUT TRANSACTIONS

Berry separately argues that his in-and-out transactions that occurred after the first corrective disclosure should be included in his financial interest because exclusion of in-and-out transactions only applies to transactions that occur before the first corrective disclosure. *See* Berry Reply at 3-4. This is not correct.

The rationale for excluding losses from in-and-out transactions applies with equal force regardless of the number of corrective disclosures: the securities were not held at the time the fraud was revealed and as such the fraud did not cause the loss. For a loss to be the result of a fraud, a security must be held at the time that the fraud was disclosed (or at least partially disclosed) to the market. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (to establish loss causation "a plaintiff must . . . prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public"); *NIO*, 2022 WL 17666398, at *4 (excluding in-and-out transactions "is consistent with the Supreme Court's holding in *Dura* . . . where the Court found that securities actions only provide recoveries for 'economic losses that misrepresentations actually cause'"). In-and-out losses are excluded because they are due to "market fluctuations" rather than the disclosure of fraud. *See Digital Turbine*, 2022 WL 17881476, at *6 n.6. Regardless of whether the shares were purchased and sold before the first corrective disclosure or a subsequent corrective disclosure, they were not held at the time the fraud was disclosed (or partially disclosed), thus any loss is not caused by the fraud.

The court's analysis in *Africa v. Jianpu Technology Inc.* is instructive. *See* No. 21-cv-1419, 2021 WL 1999467, at *1 (S.D.N.Y. May 19, 2021). In *Jianpu*, a movant tried to include losses from in-and-out transactions that occurred between corrective disclosures on the basis that earlier

"[p]artial corrective disclosures are alleged throughout the Complaint." *See id.* However, the Court excluded the in-and-out losses because the earlier corrective disclosures did not fall between the date the movant purchased and sold his shares. *Id.* at *2 ("the only partial corrective disclosures contained in the Complaint occurred well before Zhou first purchased Jianpu securities"). The same result is warranted here. All in-and-out transactions should be excluded from the movants' losses.[4]

## III.    CARLSON DID NOT USE THE "RETAINED SHARES METHOD"

In his reply memorandum, Berry also incorrectly claims Carlson used the "retained shares method" to calculate losses. *See* Berry Reply at 4. Carlson did not use the retained shares method. The retained shares method Berry is referring to is also sometimes called the "*Dura* loss" method. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015) (referring to "*Dura* loss"). This method:

> [C]alculates losses as the difference between (a) the lesser of the purchase price and the last closing price immediately preceding the corrective disclosure, and (b) the greater of the first closing price immediately following the disclosure and the average closing price from the 90-day period beginning on the date of the corrective disclosure.

*Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018); *see also CannaVest*, 93 F. Supp. 3d 265, 275 (a movant using the *Dura* loss method "calculated its loss on the 100,675 shares that it held through the second curative disclosure and beyond by subtracting the share price following the curative disclosure from the

---

[4] Berry incorrectly claims that the court in *Digital Turbine* "back[ed] out losses suffered prior to [the] first, but not [the] second, disclosure." Berry Reply at 3-4. The court did not back out any losses because "Kirshner provided no evidence that Burch sold out of his positions before either the May 17, 2022, or the May 31, 2022 disclosures." *Digital Turbine, Inc.*, 2022 WL 17881476, at *6.

share price immediately prior to disclosure"). Berry correctly points out that this method has been overwhelmingly rejected by courts in part because it disregards purchase price.[5] *See* Berry Reply at 4-5. This is, in part, why Carlson did not use the retained shares (or *Dura* loss) method to compare his loss to Berry's.

Berry conflates the widely accepted LIFO loss method (excluding in-and-out transactions), with the widely rejected retained shares/*Dura* loss method. As a result, Berry claims "Carlson apparently took the number of shares held at the time of each alleged corrective disclosure and multiplied that number by the stock drops as alleged in the complaints to arrive at a contrived figure of $120,203 for Berry." Berry Reply at 5.  Carlson did not calculate Berry's loss this way. As such, any argument as to the appropriateness of the retained shares method is irrelevant because Carlson did not use it.

## IV.    CONCLUSION

Correctly calculated using the LIFO method and excluding all in-and-out transactions, Carlson's financial interest is larger than Berry's. As such, if Hsu is disqualified from consideration for appointment as lead plaintiff, Carlson should be appointed, and his selection of counsel should be approved.

Dated: April 14, 2023                      Respectfully submitted,

                                           **KENDALL LAW GROUP, PLLC**

                                           */s/ Joe Kendall*
                                           Joe Kendall
                                           Texas Bar No. 11260700
                                           SDTX Bar No. 30973

---

[5] The *Dura* loss method simply multiplies the number of shares held at the time of each corrective disclosure by the size of the drop to determine loss. As such, purchase price is not relevant to the analysis.

3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
Email: jkendall@kendalllawgroup.com

*Liaison Counsel for Lead Plaintiff Movant Dave Carlson and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Dave Carlson and Proposed Lead Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiff*

## CERTIFICATION OF WORD COUNT

I hereby certify pursuant to Your Honor's Court Procedures Rule 16.c. that this brief contains 1,584 words.

*/s/ Joe Kendall*
Joe Kendall

6

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, April 14, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joe Kendall*
Joe Kendall

7