IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-115 |
| DAVE CARLSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case No.: 4:23-cv-920 |

**MICHAEL BERRY'S SUR-SUR-REPLY
IN RESPONSE TO DAVID CARLSON'S SUR-REPLY IN
OPPOSITION TO MICHAEL BERRY'S REPLY MEMORANDUM**

00738780;V2

Michael Berry respectfully submits this (proposed) sur-sur-reply to address new arguments David Carlson improperly raised for the first time in his reply (the "Reply") and sur-reply (the "Sur-Reply") memoranda.

Carlson, without any support, *first* articulated his novel and self-serving loss calculation methodology on Reply.  By not explaining his purported methodology on Opposition, as he was required to do, Carlson improperly forced Berry to guess how he arrived at his contrived loss figures.  Then, in a Sur-Reply filed on April 14, 2023, Carlson blames Berry for guessing wrong – and now cites *for the first time* a single case in purported support of his methodology, *Africa v. Jianpu Technology Inc.*, No. 21-CV-1419 (JMF), 2021 WL 1999467, at *1 (S.D.N.Y. May 19, 2021).  *See* ECF No. 34 at 3.  Carlson, who presumably expected to have the final word here, treats *Africa* as authoritative when, in fact, it is a radical outlier.

In his Reply, Carlson for the first time divulged that he calculated financial interest using a novel variant of the *Dura* methodology that excluded losses suffered *between* the various corrective disclosures.  While Carlson previously cited a long list of cases in his Opposition, tellingly, not one of them calculated financial interest using his variation of the *Dura* methodology. *See* ECF No. 28 (Berry Reply at 4-5).  Moreover, in his Reply (ECF No. 30), despite belatedly explaining his radical methodology, Carlson again failed to cite even a single case supporting it.

In his fourth brief on these motions (his Sur-Reply), Carlson has now cited *a single case* in purported support of his self-serving methodology, *Africa*.  Notably, *Africa* is a 2021 case that Carlson could and should have cited in his Opposition or Reply if he truly believed it to be authoritative.  Berry cited numerous cases in support of how he calculated financial interest here (*see* Berry Opp. at 4-5; Berry Reply at 5-6), and the other movants (including Carlson) also cited

00738780;V2

cases that support Berry's methodology (*see* Hsu Opp. at 6; Carlson Opp. at 2; Carlson Reply at 1).

Carlson must have withheld the *Africa* case until Sur-Reply to avoid analysis of the case by other movants.[1] *Africa* flies in the face of the legion of cases – many of which Carlson himself relied on – holding that courts determining financial interest on lead plaintiff motions only exclude in-and-out losses prior to the first alleged corrective disclosure. Carlson lumps in *Africa* with cases standing for the general *Dura* proposition that courts exclude losses suffered prior to the first alleged disclosure – when the truth ***first began to leak out*** – but only *Africa* stands for Carlson's radical and self-serving methodology. *Africa* is also clearly factually different as the movant there did not purchase *any* securities until after the first alleged corrective disclosure (unlike Berry) and the movant unsuccessfully argued that a stock split not alleged in a complaint should be characterized as a corrective disclosure. *See infra* at 4.

Carlson's inexcusable failure to explain his variant of the *Dura* methodology is highlighted by his filing a second complaint in this action just hours before the lead plaintiff deadline – adding a slew of new partial disclosures custom-tailored to ***give him a Dura loss***. Without this complaint, Carlson would have had no *Dura* loss as he sold all his shares on February 5, 2022 – before the December 2022 disclosures in the *Teroganesian* complaint. *See* Carlson Loss Chart (ECF No. 15-3); *Terog.* Compl. ¶¶67, 70. While courts adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff, including utilizing the largest class period and all disclosures in the filed complaint(s) (*see infra* at 4), the timing and effect of Carlson's filing is suspect. It is also compounded by the new argument

---

[1] Indeed, counsel for Carlson represented Africa in the *Africa* case. Thus, they were undeniably aware of *Africa* prior to filing the Sur-Reply.

and support raised in his Reply and Sur-Reply. Indeed, Carlson's willingness to jettison whole swaths of Class members who suffered losses after the initial disclosure, but between later disclosures, does not bode well for adequately serving in a representative capacity for all Class members. In sum, the Court should not countenance this lawyer-driven gamesmanship.

For these reasons and those given in his earlier submissions, Berry's motion for appointment as lead plaintiff and approval of counsel should be granted.

## ARGUMENT

I. **CARLSON'S SUR-REPLY ONLY CONFIRMS THAT BERRY HAS THE LARGEST FINANCIAL INTEREST OF QUALIFIED MOVANTS**

In his Reply, Carlson first revealed that he calculated financial interest by applying a novel variant of the *Dura* methodology that excludes losses suffered ***between*** alleged corrective disclosures. In his first three briefs, Carlson failed to cite one case supporting or applying his methodology. Indeed, Carlson cited in his opposition a litany of cases calculating financial interest on lead plaintiff motions under *Dura* precisely how Berry calculated financial interest here – ***and not one did so by excluding in-and-out losses between disclosures***. *See* Berry Reply at 4-5. Carlson's cases either held that courts exclude losses only prior to the first alleged disclosure or factually concerned only one partial disclosure. *See id*. In his Reply, Carlson still cited no cases in support of his newly-disclosed argument that the Court should back out losses incurred between disclosures. *See id*. Because Carlson did not explain how he arrived at his figures until his Reply, Berry had to guess. Since none of the cases Carlson cited supported or adopted his proposed methodology, Berry unsurprisingly guessed incorrectly.

Carlson could easily have explained his novel methodology earlier (indeed, he was required to) as he was well aware of *Dura*. Carlson filed a complaint the day the lead plaintiff motions were due – ***without which he had no Dura loss*** since he sold his shares before the corrective

disclosures in the initial *Teroganesian* complaint.  Although courts regularly utilize the longest alleged class period and all disclosures in the complaint(s) underlying a lead plaintiff motion (*In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010)), the timing and effect of Carlson's filing is suspect.  It also calls into question Carlson's adequacy since a lead plaintiff movant's request to exclude from the class all investors who bought and sold between currently alleged disclosures – prior to development of a factual record – is highly irresponsible, especially where, as here, it is alleged that the truth slowly leaked out through numerous partial corrective disclosures.

The *Plaut v. Goldman Sachs Group, Inc.* case, which Berry cited on reply, dealt with the issue of losses suffered between later alleged disclosures head-on.  *Id.*, No. 18-CV-12084 (VSB), 2019 WL 4412774, at *4 (S.D.N.Y. Sept. 19, 2019).  In *Goldman*, lead plaintiff movant AP7, like Carlson, tried to "***add[] a new element to [the Dura] approach***", arguing that the court should exclude not only in-and-out transactions from before the first alleged disclosure but also those "that occurred in the periods ***between the various corrective disclosures during the Class Period***."  *Id.*  The court, noting that AP7 did not cite one case in support of its novel argument, rejected this methodology:

> Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculating losses….  AP7 has not identified a single court that has endorsed the approach it proposes, under which I would exclude in-and-out transactions that occurred subsequent to the first alleged corrective disclosure….  In light of the various factual issues related to the causation of any losses occurring after the first corrective disclosure, I will not apply the approach proposed by AP7. However, under Dura, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure, i.e., those "losses that [each movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public."

*Id.*.

Carlson argues that the Court should ignore the substantial body of well-settled law on this issue and follow the radical outlier *Africa* case. The Court should reject Carlson's argument as the law on this issue is settled for good reason. Cases involving multiple alleged partial disclosures introduce complexities far beyond a normal lead plaintiff motion. Such complexities are not present when courts simply back out losses suffered prior to a first corrective disclosure, *i.e.*, when the truth ***first began to leak out***.

Beyond being at odds with well-settled jurisprudence from around the country, *Africa* was also factually different. In *Africa*, the court rejected movant Zhou's argument that his in-and-out losses should be included "only [because the] partial corrective disclosures contained in the Complaint occurred well before Zhou first purchased Jianpu securities." 2021 WL 1999467, at *2. That is not the case here as Berry bought Southwest shares before the first disclosure and throughout the Class Period. *See* Berry Loss Chart, ECF No. 19-3. Zhou also argued that the court should accept a partial disclosure that was not plead in any complaint. That is also not the case here.

Carlson's other citations do not support his argument as none concerned movants who suffered losses between later disclosures, *i.e.*, ***after the truth began to leak out***. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 WL 680779, at *4; *Robison v. Digital Turbine*, No. 22-cv-00550-DAE, 2022 WL 17881476, at *6 (W.D. Tex. Dec. 19, 2022); *Saye v. NIO Inc.*, No. 22-CV-7252 (VSB), 2022 WL 17666398, at *4, *8 (S.D.N.Y. Dec. 14, 2022) (same); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *4 (S.D.N.Y. May 31, 2012) (same).

## CONCLUSION

For these reasons and those in his earlier submissions, Berry requests that this Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Bernstein Liebhard as Lead Counsel and GBK&H as Liaison Counsel for the proposed Class.

Dated: April 17, 2023

Respectfully submitted,

/s/ B. Russell Horton

**GEORGE BROTHERS KINCAID & HORTON, L.L.P.**
1100 Norwood Tower
114 West 7th St
Austin, TX 78701
Telephone: (512) 495-1400
rhorton@gbkh.com

*Liaison Counsel for Michael Berry and Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Michael Berry and Proposed Lead Counsel for the Proposed Class*

00738780;V2                                     6

## **CERTIFICATE OF WORD COUNT**

I hereby certify, on this 17th day of April 2023, that the above Sur-Sur-Reply Memorandum of Law in Further Support of Michael Berry's Motion for Appointment of Lead Plaintiff and Approval of Counsel contains 1,626 words.

/s/

_____

B. RUSSELL HORTON

00738780;V2