United States District Court
Southern District of Texas
**ENTERED**
July 17, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ARTHUR TEROGANESIAN,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-CV-00115 |
| **SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,** | § § § § § | |
| Defendants, | § § | |
| **KUMARAN MUTHUSAMY, DAVE CARLSON, VINCENT HSU, and MICHAEL BERRY,** | § § § § | |
| Movants. | § | |

## ORDER

Before the Court are the competing motions from four different individuals in a class action brought against Southwest Airlines Co. and members of its upper management. (Dkt. Nos. 13, 14, 16, 17). Each movant has requested that the Court appoint him as the lead plaintiff in this litigation on the basis that he is the most capable of adequately representing the interests of the class. Moreover, each movant asserts that as the lead plaintiff, he has authority to select, and the Court should approve, his choice of lead counsel. Of the four movants, two have also moved to consolidate this case with a subsequently filed action that they claim is closely related. (Dkt. Nos. 13, 14). After careful review, the Court will consolidate this case with the subsequently filed case—the

*Carlson* litigation.[1] Further, Michael Berry will serve as the lead plaintiff, and his choice of counsel is approved. (*See* Dkt. No. 17).

**I.    BACKGROUND**

On January 12, 2023, Arthur Teroganesian brought a class action lawsuit against Southwest Airlines Co. and members of its upper management (collectively, "Defendants"), alleging violations of the Securities Exchange Act of 1934. (*See* Dkt. No. 1). Defendants requested for the response date to be deferred until after appointment of the lead plaintiff and after the timetable for an amended complaint is set, (Dkt. No. 8), which Judge Lynn N. Hughes granted, (Dkt. No. 10). This case was reassigned to the undersigned shortly thereafter. (Dkt. No. 12).

Since reassignment, four different movants—Kumaran Muthusamy, Dave Carlson, Vincent Hsu, and Michael Berry—have each petitioned for appointment as the lead plaintiff in this case and for his choice of counsel to be appointed lead counsel. (Dkt. Nos. 13, 14, 16, 17). Muthusamy and Carlson have also requested consolidation of this case with the *Carlson* litigation—a later-filed case pending in this District before Judge George C. Hanks, Jr.—since the two cases purportedly concern "the same subject matter" and are "based on the same wrongful course of conduct."[2] (Dkt. No. 13 at 12).

---

[1]    *See Carlson v. Southwest Airlines Co., et al.*, Civil Action No. 4:23-CV-00920, In the Southern District of Texas—Houston Division.

[2]    Dave Carlson, one of the movants in this case, is the plaintiff in the other action that he seeks to consolidate. (*See* Dkt. No. 14 at 8).

2

## II.     LEGAL STANDARDS

### A.     CONSOLIDATION OF RELATED ACTIONS

Rule 42(a) provides that courts may consolidate multiple actions when they "involve a common question of law or fact[.]"  Fed. R. Civ. P. 42(a).  District courts enjoy broad discretion in deciding whether consolidation is appropriate.  *See Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761–62 (5th Cir. 1989).  Consolidation is "particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports."  *See Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (cleaned up).  When the multiple actions are "proceeding simultaneously" and in fact "name the same defendants and involve common questions of fact and law" so as to be "virtually identical," consolidation "is a proverbial no-brainer."  *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F.Supp.3d 712, 716 (S.D. Tex. 2021).

### B.     APPOINTMENT OF A LEAD PLAINTIFF

In private securities actions, lead plaintiffs are appointed under the provisions set forth in the Private Securities Litigation Reform Act ("PSLRA").  *See* 15 U.S.C. § 78u-4(a).  To properly notify class members of their right to move for appointment as lead plaintiff, the plaintiff(s) who filed the action must publish a notice within 20 days of filing, in accordance with 15 U.S.C. § 78u–4(a)(3)(A)(i).  A plaintiff seeking to represent the class must provide a sworn certification in accordance with 15 U.S.C. § 78u-4(a)(2)(A).

The PLSRA directs that upon review of each motion for appointment as lead plaintiff, a court should appoint the movant that it believes is "most capable of adequately representing the interests of class members[.]"  15 U.S.C. § 78u-4(a)(3)(B)(i).  The lead

3

plaintiff should be incentivized by a substantial financial interest in recovery, *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.Supp.2d 401, 411–12 (S.D. Tex. 2000), and possess sufficient knowledge to understand and control the litigation, *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–83 (5th Cir. 2001).

There is a rebuttable presumption that the most adequate plaintiff is the person that: (1) filed the complaint or timely moved in response to notice of the action; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption is rebuttable by a showing that the person (1) will not fairly and adequately protect the interest of the class, or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### C.  APPOINTMENT OF LEAD COUNSEL

Once a court has determined the appropriate lead plaintiff, that plaintiff may select and retain counsel of their choice to represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(v). The selection, while "subject to the approval of the court," *id.*, will generally be accepted when the counsel has substantial experience in securities class action lawsuits and the resources to pursue them. *See, e.g.*, *Plymouth*, 566 F.Supp.3d at 721 (approving lead plaintiff's selection of counsel); *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 387 (E.D. Tex. 2002) (same).

## III.  DISCUSSION

The Court now considers all four movants' motions.[3] The first issue to address is consolidation, as the PLRSA dictates that "the court shall not make the determination [as to the most adequate plaintiff] until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u–4(a)(3)(B)(ii). The Court will then appoint a lead plaintiff and conclude by considering the lead plaintiff's selection of counsel.

### A.  CONSOLIDATION

Dave Carlson, a movant in this case, filed the *Carlson* litigation on March 13, 2023. *Carlson v. Southwest Airlines Co., et al.*, Civil Action No. 4:23-CV-00920, In the Southern District of Texas—Houston Division. To date, that litigation is active but very much in its infancy. In considering whether the two cases "involve a common question of law or fact," Fed. R. Civ. P. 42(a), the Court observes that the defendants in the Carlson litigation are identical to those in this case, and the two disputes are based on the same public statements and reports.

As an initial matter, the defendants named in the *Carlson* case are completely identical with those in the case before this Court. Both cases name four defendants: Southwest Airlines Co., Gary Kelly, Tammy Romo, and Robert E. Jordan. Moreover, not only are the putative classes the same, but even the class period is identical—from June 13, 2020 to December 31, 2022. The two complaints have identical causes of action,

---

[3] As multiple movants accurately observe, Local Rule 7.1 and this Court's Court Procedure 15(a) require that opposed motions contain an averment that the movant has conferred with the respondent and cannot reach an agreement. (*See* Dkt. No. 13 at 2 n.1); (Dkt. No. 14 at 2). The Court agrees that this requirement is impracticable here, in light of the unique progression of securities class actions. Accordingly, the Court waives the conferral requirement.

5

discuss overwhelmingly similar conduct, and seek virtually the same relief. *Compare* (Dkt. No. 1) *with Carlson v. Southwest Airlines Co., et al.*, No. 4:23-CV-00920 (S.D. Tex. Mar. 13, 2023). Consolidation is thus "a proverbial no-brainer." *Plymouth*, 566 F.Supp.3d at 716. The *Carlson* case will be consolidated with this action.[4]

### B.   APPOINTMENT OF A LEAD PLAINTIFF

None of the movants or defendants allege that the plaintiff who filed this action did not properly publish a notice in accordance with 15 U.S.C. § 78u–4(a)(3)(A)(i), or that any of the movants have failed to provide a sworn certification under 15 U.S.C. § 78u-4(a)(2)(A). Upon independent review, this Court agrees that the notice requirement has been satisfied.[5] But as for the movants' certifications, while Carlson, Hsu, and Berry have complied, (*see* Dkt. Nos. 15-2, 16-3, 19-2), Muthusamy has not, (*see* Dkt. No. 13-5). Muthusamy's certifications do not meet, in whole or in part, the first, second, third, fifth, or sixth requirements of the sworn certification requirements under the PSLRA.[6] (*Id.*); *see* 15 U.S.C. § 78u-4(a)(2)(A). Moreover, Muthusamy also conceded that after reviewing the other movants' filings, he no longer believes that he satisfies the criteria for appointment.

---

[4]   While not dispositive, the Court also observes that consolidation is unopposed, as no movant or defendant has argued that the cases should not be. In fact, Dave Carlson states that "[a]ll movants support consolidation of the related actions." (Dkt. No. 30 at 2 at n.1).

[5]   It appears that notice was sent out on BusinessWire on January 12, 2023, the same day that this action commenced. (*See* Dkt. Nos. 13-4, 15-1, 16-2, 19-1).

[6]   The relevant sections of the PSLRA require that the sworn certification provide that the plaintiff has reviewed and authorized the complaint, did not purchase the relevant security for the purpose of participating in a private action, is willing to serve as the class representative, identifies any other private securities action in which the plaintiff sought to represent a class, and states that the plaintiff will not receive payment in excess of their pro rata share of any recovery for serving as a class representative. 15 U.S.C. §§ 78u-4(a)(2)(A)(i), (ii), (iii), (v), (vi).

(Dkt. No. 26 at 2). In light of these two independent grounds, Muthusamy will not be considered. On, then, to Hsu, Carlson, and Berry.

### 1. Largest Financial Interest

While the PSLRA presumes that the most adequate plaintiff is the one who "has the largest financial interest," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb), neither the statute nor the Fifth Circuit has specified how this criterion is to be determined. Courts within the Fifth Circuit have applied the "*Lax*" factors, which look to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. No. 1:97-CV-02715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Courts have consistently looked to the fourth factor—losses suffered—as a critical factor, often making the financial-interest determination on this factor alone. *Giovagnoli v. GlobalSCAPE, Inc.*, No. 5:17-CV-00753, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017) (collecting cases). As observed by one court: "It is logical that courts would deem the fourth factor conclusive because this factor is a function of the first three." *Patel v. Reata Pharms., Inc.*, 549 F.Supp.3d 559, 565 n.2 (E.D. Tex. 2021).

In order, Dave Carlson first alleged that he suffered financial harm of $181,039.64. (Dkt. No. 15-3 at 2). Then, Vincent Hsu moved for appointment and asserted that he lost approximately $221,200.00. (Dkt. No. 16-4 at 2). Finally, Michael Berry moved and claimed a loss of $203,192.35. (Dkt. No. 19-3 at 2). Each believes that he holds the largest financial interest. Taking these numbers at face value, the largest financial interest, from greatest to least, would ostensibly be Hsu, Berry, and then Carlson. One of the main

issues of contention is whether Berry's claim of $203,192.35 is accurate, as he and Carlson vigorously dispute whether Berry improperly inflated his losses by including his "in-and-out transactions" that he credited as losses on shares purchased and sold between corrective disclosures. (*See generally* Dkt. Nos. 27, 28, 30, 31, 34, 37).

There are two leading recognized methods of calculating the amount of losses suffered: FIFO and LIFO. Under FIFO ("first-in-first-out"), stocks which were acquired first are considered sold first for purposes of calculating losses. *Strong v. AthroCare Corp.*, No. 1:08-CV-00574, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008). Conversely, under LIFO ("last-in-first-out"), stocks which were acquired most recently are assumed to be sold first. *Id.* (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.6 (S.D.N.Y. 2007) (internal quotation marks omitted)). The Court adopts LIFO, which is the majority view. *Id.* at *6; *accord Hall v. Rent-A-Center, Inc.*, No. 4:16-CV-00978, 2017 WL 1017716, at *2 (E.D. Tex. Mar. 16, 2017) (finding LIFO methodology to be "widely-accepted"). As explained by one district court, the LIFO methodology is superior to FIFO because it "offsets gains accrued to the plaintiffs due to the inflation of stock prices during the class period . . . [and] excludes 'in-and-out' transactions during the class period." *Vladimir v. Bioenvision, Inc.*, No. 1:07-cv-06416, 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007) (citing *Kaplan*, 240 F.R.D. at 94 n.7 (citation omitted)). Unlike FIFO, which "may overstate actual losses suffered by stockholders, LIFO takes into account gains and can disregard losses that are not causally related to the misstatement claims." *Id.* (collecting cases).

Carlson contends that all of Berry's in-and-out transactions must be excluded from Berry's loss calculation. (Dkt. No. 34 at 4). The Court disagrees. "In-and-out transactions

8

occur when a stock is purchased after the alleged fraudulent conduct but sold before the subsequent disclosure of such conduct." *Robison v. Digit. Turbine, Inc.*, No. 1:22-CV-00550, 2022 WL 17881476, at *6 n.6 (W.D. Tex. Dec. 19, 2022). "Since these transactions represent inherent market fluctuations rather than the impact of fraudulent dealings, any such in-and-out transactions are properly excluded from the loss calculation." *Id.* (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–43, 125 S.Ct. 1627, 1631-32, 161 L.Ed.2d 577 (2005)). But this is not necessarily the case for in-and-out transactions that occur after the first disclosure. Courts have interpreted *Dura* to stand for the proposition that parties are prohibited from claiming losses for in-and-out transactions that occur prior to the first corrective disclosure. *See, e.g., id.* at *6 (citing *Eichenholtz v. Verifone Holdings, Inc.*, No. 3:07-CV-06140, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008)). While these cases have generally involved only one corrective disclosure, nothing from them indicates that all losses from in-and-out transactions, including those incurred after the first corrective disclosure in cases with multiple disclosures, should be categorically excluded.

In *Plaut v. Goldman Sachs Grp., Inc.*, the court noted the lack of support for excluding these transactions and rejected that approach. No. 1:18-CV-12084, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019). This only makes sense. As *Dura* illuminates, the exclusion of in-and-out transactions that occur prior to any corrective disclosure is rooted in principles of causation. *See Dura*, 544 U.S. at 342–43, 125 S.Ct. at 1631–32. As the court in *Plaut* observed, there are "various factual issues related to the causation of any losses occurring after the first corrective disclosure[.]" *Plaut*, 2019 WL 4512774, at *4. Because

9

these questions of causation exist, the Court declines to extend *Dura* to all corrective disclosures.

In accordance with the above, the Court will not subtract losses sustained by Berry from the in-and-out transactions which followed the first corrective disclosure. While a slight adjustment in Berry's financial interest is warranted,[7] the order of the financial interests remains the same. Hsu is first ($221,200.00), Berry is second ($204,467.35), and Carlson is last ($181,039.64). But Hsu does not yet enjoy a presumption that he is the most adequate plaintiff.

### 2. Rule 23 Analysis

To be the presumptive lead plaintiff, a movant, in addition to having incurred the greatest financial loss, must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Patel*, 549 F.Supp.3d at 565 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc) (internal quotation marks omitted)). In the context of a lead plaintiff analysis, however, "only the typicality and adequacy prongs of Rule 23 are relevant." *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-00736, 2014 WL 11394911, at *5 (E.D. Tex. Feb. 28, 2014) (citing *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009)). These prongs require that the lead plaintiff's claims or defenses be typical of the class, and that the lead plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A movant's claims or defenses are typical if they have "the same essential characteristics

---

[7] The Court notes that Berry erred by including transactions that occurred prior to the first corrective disclosure in his calculation. (*See* Dkt. No. 19-3). But by excluding those transactions, Berry's losses actually increase by $1,275.00, since Berry made a profit on them. (*See id.*). The Court accordingly adjusts Berry's alleged damages from $203,192.35 to $204,467.35.

10

as those of the other class members . . . such that the incentives of the plaintiffs are aligned with those of the class." *Patel*, 549 F.Supp.3d at 566 (cleaned up) (citations omitted). A movant fairly and adequately protects the interests of the class if the representative's counsel is competent and zealous, and the movant is willing and able to take an active role in and control the litigation and to protect the interests of absentees. *Berger*, 257 F.3d at 479.

The challenge for Hsu's viability as the lead plaintiff is Berry's argument that Hsu is atypical because he "suffered *all* his losses *in connection with sales of Southwest put options*[.]" (Dkt. No. 28 at 11) (emphasis in original). While the Fifth Circuit has not addressed whether a movant who invested primarily or exclusively in options can qualify as a lead plaintiff in representing a class largely consisting of common stockholders, many courts have held that such plaintiffs are atypical. *See Patel*, 549 F.Supp.3d at 566–69 (collecting and discussing cases both ways). The Court agrees that Hsu is atypical. Appointment of Hsu as lead plaintiff may well "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates[.]" *Cook v. Allergn PLC*, No. 1:18-CV-12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (quoting *In re Elan Corp. Sec. Litig.*, No. 1:08-CV-08761, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)).

Having determined that Hsu is atypical and does not fit the bill to be presumed the most adequate plaintiff, the Court next considers whether the movant with the second-largest financial interest, Michael Berry, satisfies Rule 23's typicality and adequacy requirements. Upon review, the Court finds that Berry satisfies both

11

conditions. As to typicality, while Hsu and Carlson challenge Berry's damages calculations, (*see* Dkt. No. 25 at 5); (Dkt. No. 27 at 5–7), those arguments were unpersuasive and did not undermine the essential characteristics of those damages. The Court finds that those characteristics are typical of other class members. As to adequacy, Berry has proved his substantial financial stake in the litigation, averred that his interests do not conflict with his class members or affect his ability to represent absentees, and retained experienced counsel. The Court finds that Berry has therefore satisfied the Rule 23 requirements and should be the presumptive lead plaintiff.

Hsu and Carlson, as the other members of the purported plaintiff class, have not offered evidence that Berry would not fairly and adequately protect the interest of the class, or that Berry is subject to unique defenses that would render him incapable of doing so adequately. In fact, the Court, in its Rule 23 analysis, has found evidence to the contrary. Accordingly, as the movant with the largest financial interest who also satisfies the Rule 23 requirements, Michael Berry is appointed lead plaintiff of the putative class.

### 3.     Choice of Lead Counsel

As the lead plaintiff, Berry is entitled to choose lead counsel, subject to the Court's approval. 15 U.S.C. § 77u-4(a)(3)(B)(v). Berry seeks to appoint Bernstein Liebhard LLP as lead counsel and George Brothers Kincaid & Horton, LLP as liaison counsel. (Dkt. No. 17 at 2). The Court has reviewed the background of each firm and finds that they both have substantial experience in private securities class action lawsuits as well as the resources to adequately represent the putative class. (*See* Dkt. No. 19-4); GEORGE

BROTHERS KINCAID & HORTON LLP, https://gbkh.com (last visited July 13, 2023). The Court will not disturb Berry's choices of counsel, which are reasonable.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions of Kumaran Muthusamy, (Dkt. No. 13), and Dave Carlson, (Dkt. No. 14), to the extent they move to consolidate the cases. The case styled *Carlson v. Southwest Airlines Co., et al.*, No. 4:23-CV-00920 is consolidated for all purposes with this case, and all pleadings are to be filed under this case, Civil Action No. 4:23-CV-00115.

The Court **GRANTS** Michael Berry's Motion for Appointment as Lead Plaintiff and Approval of Counsel, (Dkt. No. 17). Accordingly, Michael Berry is appointed lead plaintiff, and Bernstein Liebhard LLP will serve as lead counsel, with George Brothers Kincaid & Horton, LLP serving as liaison counsel.

The Court **DENIES**, in full, Motion of Vincent Hsu for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel, (Dkt. No. 16).

It is SO ORDERED.

Signed on July 15, 2023.

                                                                                _____
                                                                                 **DREW B. TIPTON**
                                                            **UNITED STATES DISTRICT JUDGE**