**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ARTHUR TEROGANESIAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., GARY KELLY, TAMMY ROMO, and ROBERT E. JORDAN,<br><br>Defendants. | Case 4:23-cv-115<br><br>CLASS ACTION |

**PLAINTIFFS' CORRECTED MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ......................................................................................4

ARGUMENT .........................................................................................................8

I.     LEGAL STANDARD ...................................................................................8

II.    DEFENDANTS MADE MATERIAL MISSTATEMENTS AND OMISSIONS...................................................................................................9

III.   THE SAFE HARBOR AND *OMNICARE* DO NOT APPLY ......................15

IV.   PLAINTIFFS ALLEGE A STRONG INFERENCE OF SCIENTER..........17

    A.     Defendants Knowingly Failed to Disclose the Vulnerability .............17

    B.     Defendants' "Truth-on-the-Market" Argument Fails .........................19

    C.     Jordan and Watterson's Admissions Further Support Their Scienter.20

    D.     Defendants' Lucrative Stock Awards Are Probative of Scienter .......22

    E.     Plaintiffs' Scienter Inference Is At Least As Strong As Defendants'.23

V.    PLAINTIFFS ADEQUATELY PLEAD 20(a) CLAIMS ............................24

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................8

*Asher v. Baxter Int'l Inc.*,
  377 F.3d 727 (7th Cir. 2004) ...............................................................19

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ...........................................................................8, 19

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
  497 F.3d 546 (5th Cir. 2007) ...............................................................22

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch*,
  565 F. Supp. 3d 478 (S.D.N.Y. 2021) ...................................................11

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  620 F. Supp. 3d 603 (S.D. Tex. 2022)...................................................14

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*,
  905 F.3d 892 (5th Cir. 2018) ...............................................................11

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009) ...............................................................18

*Genesee Cnty. Emps' Ret. Sys. v. First Cash Holdings, Inc.*,
  2023 WL 2752846 (N.D. Tex. Mar. 31, 2023) ......................................15

*Hall v. Rent-A-Center, Inc.*,
  2017 WL 6398742 (E.D. Tex. Oct. 19, 2017).......................................12

*Heinze v. Tesco Corp.*,
  971 F. 3d 475 (5th Cir. 2020) .................................................................9

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp. Inc.*,
  537 F.3d 527 (5th Cir. 2008) .............................................................8, 22

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013)................................................................11

*In re Apache Corp. Sec. Litig.*,
2022 WL 4277350 (S.D. Tex. Sept. 15, 2022),
*report and recommendation adopted sub nom.*
*Plymouth Cnty. Ret. Ass'n v. Apache Corp.*,
2022 WL 17324439 (S.D. Tex. Nov. 29, 2022)....................................... 15, 17

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010) ...................................... 19, 20

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013)................................................................20

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012)........................................... 11, 15

*In re BP p.l.c. Securities Litigation*,
843 F. Supp. 2d 712 (S.D. Tex. 2012).................................... 11, 12, 18

*In re Cassava Scis., Inc. Sec. Litig.*,
2023 WL 3442087 (W.D. Tex. May 11, 2023)...................................................12

*In re Concho Res. Inc., Sec. Litig.*,
2023 WL 2297425 (S.D. Tex. Feb. 23, 2023),
*report and recommendation adopted in part, rejected in part by*
2023 WL 4146278 (S.D. Tex. June 23, 2023) ........................................ 8, 16, 17

*In re Extreme Networks, Inc. Secs. Litig.*,
2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) ........................................... 22, 23

*In re KBR, Inc. Sec. Litig.*,
2018 WL 4208681 (S.D. Tex. Aug. 31, 2018)...................................................13

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. May 18, 2023) ...................................................14

*In re Newell Brands, Inc. Sec. Litig.*,
837 F. App'x 869 (3d Cir. Dec. 1, 2020) .........................................................23

*In re QuantumScape Sec. Class Action Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022)..................................................................18

*In re Spear & Jackson Sec. Litig.*,
    399 F. Supp. 2d 1350 (S.D. Fla. 2005)................................................................20

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
    2023 WL 3628244 (E.D.N.Y. May 24, 2023).......................................................11

*In re Venator Materials PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. 2021).................................................................16

*Johnson v. Costco Wholesale Corp.*,
    2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) .................................................12

*Karimi v. Deutsche Bank Aktiengesellschaft*,
    607 F. Supp. 3d 381 (S.D.N.Y. 2022).................................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................8

*Linenweber v. Southwest Airlines*,
    2023 WL 6149106 (S.D. Tex. Sept. 19, 2023)........................................... 2, 9, 10

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ..............................................................................20

*Meadowbriar Home for Child., Inc. v. Gunn*,
    81 F.3d 521 (5th Cir. 1996) ..................................................................................8

*Miller v. Cadence Bancorporation*,
    2020 WL 4581736 (S.D. Tex. Aug. 7, 2020).......................................................22

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*,
    58 F.4th 195 (5th Cir. 2023).................................................................... 8, 11, 22

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom.*
    *Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*,
    771 F. App'x 51 (2d Cir. 2019).........................................................................11

*Omnicare, Inc. v. Laborers Dist. Council Const. Ind. Pension Fund*,
    575 U.S. 175 (2015) ................................................................ 15, 16

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ...........................................................22

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
    777 F. App'x 726 (5th Cir. 2019)...................................................8, 10

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018).............................................17

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ..........................................................18

*Shemian v. Research in Motion Ltd.*,
    2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013)...................................11

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F. 3d 353 (5th Cir. 2004) .........................................................15

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
    325 F. Supp. 3d 728 (N.D. Tex. 2018), *aff'd sub nom.*
    *Mun. Emps' Ret. Sys of Mich. v. Pier I Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) ..........................................................23

*Wieland v. Stone Energy Corp.*,
    2007 WL 2903178 (W.D. La. Aug. 17, 2007) .................................19

*Yoshikawa v. Exxon Mobil Corp.*,
    2023 WL 5489054 (N.D. Tex. Aug. 24, 2023) ................................18

Plaintiffs oppose Defendants' motion to dismiss (the "Motion").[1]

## PRELIMINARY STATEMENT

For years, Southwest's pilot and crew unions (the "Unions") warned Defendants (the "Warnings") that Southwest's scheduling systems (the "Systems") were materially deficient and would crash if Southwest canceled just 200-300 of its 4,000 daily flights on short-notice (the "Vulnerability"). The Unions also gave Defendants data-driven proposals to fix this problem to avoid costly meltdowns. But Defendants ignored the Warnings, and materially misled investors about the Systems and the profound risks they posed.

In December 2022, Winter Storm Elliott hit, and Southwest's Systems singularly and spectacularly crashed. Southwest canceled 16,700 flights (impacting two million passengers) over nine days during the holidays. On February 9, 2023, Southwest admitted to Congress it "messed up", and on March 14, 2023, Southwest disclosed an $800 million charge from the "Epic Meltdown" and a $1.3 billion plan to upgrade the Systems. Southwest has since paid $600 million to passengers and was fined a record $140 million DOT penalty. This action now seeks to recover billions in investor losses due to Defendants' fraud.

---

[1] "¶_" and undefined terms refer to the "Complaint" (ECF No. 51). "Br. _" refers to the Motion. Emphasis added unless noted.

Defendants' Motion should be denied.  Defendants spin a deeply-flawed counternarrative, but fact disputes cannot be resolved now, all well-pleaded facts must be accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor.

Defendants also raise meritless challenges to Plaintiffs' falsity and scienter allegations.  Defendants try but cannot shoehorn this case into *Linenweber v. Southwest Airlines*, 2023 WL 6149106 (S.D. Tex. Sept. 19, 2023) ("*Linenweber*"), where general, aspirational, out-of-context statements were dismissed.  Here*,* Defendants' misstatements were specific, in context, and "inconsistent with [Southwest's] true condition".  *Linenweber,* 2023 WL 6149106, at *6.  They concerned the Systems (not technology generally), mollified investors about Systems-driven meltdowns, and mischaracterized deficient Systems as "wonderful".

Defendants argue, without merit, that four misstatements are protected as forward-looking and opinions.  That is wrong.  Regardless, those misstatements would still be actionable because Defendants did not issue meaningful, company-specific cautionary language, and omitted material known facts from them.

Defendants disingenuously claim they did caution about disruptions and Southwest's need to modernize, but their generic warnings were far from meaningful.  After suffering consecutive meltdowns, Defendants flatly denied that the Systems, which they knew were responsible, caused the meltdowns or raised anything but minor, isolated issues.  Likewise, announcing a multi-year

2

modernization plan and desire for "better tools" neither apprised investors of the material Vulnerability nor the urgency to fix it.

Plaintiffs also plead a strong inference of scienter. Defendants do not dispute they knew of the Vulnerability when publicly speaking about the Systems. Jordan and Watterson also admitted to "mess[ing] up" in not heeding the Warnings, and to internally discussing Southwest's "lack of tools" long before the Epic Meltdown. Each Defendant was also motivated to inflate Southwest's stock price because their bonuses included hefty stock awards. These allegations collectively provide an inference of scienter that is stronger than any competing inference.

Defendants absurdly challenge scienter by claiming everyone knew about the Vulnerability from public meltdowns and criticisms. But this "truth-on-the-market" defense is a fact-intensive matter for trial. Moreover, it is fundamentally wrong. Defendants denied past meltdowns were Systems-driven, and concede the Unions made only "generalized criticisms" publicly (speaking to members, not investors) (Br. 7, 18). Defendants also wildly claim their admissions were not "materially different" from public disclosures. Br. 19. But Jordan internally admitted to a "lack of tools" despite public representations that Southwest had no "lack of technological capability" and "good tools". Tellingly, Defendants did not dare raise this groundless "everybody-knew" defense before Congress. No reasonable investor (or passenger) would have trusted Southwest if the truth was really out.

3

Even if the Court determines that some general news was disclosed to investors, courts find new information "revealed" when, as here, defendants push a counternarrative, rebut criticisms, and subdue market concern.

### STATEMENT OF FACTS

Southwest operates 4,000 flights daily. ¶¶53-54.    Without a "hub", Southwest's pilots, crews, and planes are dispersed, making it critical to have adequate tools for scheduling and recovery.    *Id*.    Unbeknownst to investors, Southwest utilized a patchwork of decades-old Systems with a material Vulnerability that unconscionably exposed the Company to costly meltdowns.    *Id*.

Since 2014, the Unions issued Warnings to Defendants.  ¶¶2, 9, 55-60, 64-71, 87, 124, 182-183, 196-198, 210, 401-417.    But Defendants ignored them, and materially misled investors about the adequacy of the Systems.  ¶¶19, 54, 62-64.

On February 4, 2020, Southwest filed its 2019 10-K, stating it was "invest[ing] significantly in…flight planning and scheduling [and] crew scheduling [Systems]". ¶72.  Southwest reaffirmed its investment in these Systems in its 2020 and 2021 10-Ks.  ¶¶242, 317.  But, unbeknownst to investors, no meaningful Systems-upgrades were made during this time. ¶¶177-179.

In SEC filings, Southwest only issued boilerplate "warnings" about possible disruptions due to routine weather or outages.  ¶¶72-75, 123, 226, 231-235, 245-247, 278, 309, 320-23.  After two multi-day, Systems-driven meltdowns, Defendants still

4

did not disclose the Vulnerability, but actively concealed it from investors.  ¶¶79-81, 87-94, 101-105, 109-115.

On June 14, 2021, a supposedly minor outage caused Southwest to cancel 2,000 flights. ¶¶77-82. Defendants blamed vendors, weather, and human error. ¶¶88-94.  But Nealon assured investors "this was not a failure of technology", and Kelly downplayed Systems-issues as minor, "one off" events.  *Id*.

On October 8, 2021, Southwest had another meltdown and canceled another 2,000 flights. ¶¶98-102.  Southwest shares dropped on this news. ¶434.  Defendants blamed a host of issues but again denied the Systems' central role. ¶¶100, 105, 109. Kelly even boasted that Southwest had "wonderful technology" and no "lack of technological capability". ¶¶110-114.

On October 12, 2021, Jordan reassured investors Southwest's Systems were "already good" but being upgraded. ¶¶113-115, 304.   This repeated trope continuously mollified investors without exposing the truth about the Systems or the Vulnerability.  ¶¶3, 30, 56, 71, 114, 121, 128, 132.  Indeed, analysts were misled to believe Southwest's meltdowns were "unlikely to recur".  ¶¶117-118.

On April 13, 2022, SWAPA sent an open letter to Jordan and Van de Ven critical of management and the Systems, without detailing the Vulnerability. ¶¶124-125.  SWAPA stated it privately warned management of Systems issues for "four years" and "identified and offered solutions to address numerous systemic failures".

5

¶125.   Defendants never publicly responded, but publicly maintained that the Systems did not cause the meltdowns.  ¶¶126-128, 130, 142, 324.

In November 2022, SWAPA President Murray warned on a podcast for members that Southwest was on the verge of "a complete meltdown".  ¶¶134-137.

On December 21, 2022, Elliott hit and Southwest's Systems spectacularly crashed.  ¶144.  While the weather impacted every airline, only Southwest canceled 16,700 flights over nine days, and increasingly after the storm subsided.  ¶¶154-155, 159-160, 179-183, 190.  Southwest shares fell on this news. ¶¶180-184.

Defendants initially denied Southwest was "uniquely effected".  ¶¶352, 364-367, 372-373.  However, on December 27, 2022, a leaked transcript of an internal call with Watterson and Jordan and others revealed that Southwest's Systems crashed, and Southwest was struggling to manually re-assign its complex network of operations (the "Call").  ¶¶177-179, 418-422.  Jordan also admitted on the Call to internally discussing for at least a year how "[w]e can't be our size and scope and have a lack of tools".  ¶¶178, 421.

On January 3, 2023, Southwest's shares fell on news that Southwest's problems were unique, preventable, and that the DOT would fine the Company. ¶¶193-194.  On January 6, 2023, SWAPA published an article on its website detailing the Vulnerability.  ¶196.  Congress later called on Jordan to testify about the Epic Meltdown and why Southwest ignored the Warnings.  ¶¶197-98.

6

On a January 26, 2023 earnings call, Watterson admitted the Systems were never designed to handle the scale of Southwest's operations, while Jordan unveiled a $1.3 billion plan for technology upgrades. ¶¶30, 199-200. On this news, and news of decreased bookings, Southwest shares fell. ¶¶31, 201. On February 3, 2023, Kelly, Jordan, Watterson, and Romo were awarded bonuses of $1 million or more in Southwest stock. ¶¶205-206.

On February 9, 2023, Watterson testified before Congress (Jordan never showed). ¶¶207-214. Watterson could not explain why Defendants ignored the Warnings, but confessed Southwest "messed up" and would pay the price. ¶¶208-211. Watterson did not dare claim under oath that everybody knew about the Vulnerability and appreciated the risk of flying Southwest.

On March 14, 2023, Southwest announced an $800 million charge and costly remedial measures. ¶¶215-19. On this news, Southwest shares fell again. ¶35.

Post-Class Period, on December 11, 2023, the DOT fined Southwest a record $140 million.[2]

---

[2] https://www.transportation.gov/briefing-room/dot-penalizes-southwest-airlines-140-million-2022-holiday-meltdown.

**ARGUMENT**

## I.    LEGAL STANDARD

Plaintiffs must plead enough "facts to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On this Motion, the Court must construe the allegations favorably to Plaintiffs and accept them as true. *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (defendants cannot "present their own version of the facts"). Fact-specific issues are "a matter for trial". *Basic Inc. v. Levinson*, 485 U.S. 224, 249 n.29 (1988) (truth-on-the-market); *In re Concho Res. Inc., Sec. Litig.*, 2023 WL 2297425, at *15 (S.D. Tex. Feb. 23, 2023) (materiality).

Under Section 10(b), any "untrue statement of material fact", or any statement that omits "material fact[s] necessary [to make the statement] not misleading", is actionable. *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 729-30 (5th Cir. 2019). Plaintiffs here allege materially false statements and omissions of material fact that render statements misleading, which give rise to a duty to disclose. *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*, 58 F.4th 195, 217 (5th Cir. 2023); *cf. Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp. Inc*, 537 F.3d 527, 541 (5th Cir. 2008) (pure

omissions dismissed); *Heinze v. Tesco Corp.*, 971 F. 3d 475, 483 (5th Cir. 2020) (same).

Defendants' Motion only challenges Plaintiffs' falsity and scienter allegations. Br. 17. To the extent Defendants also challenge materiality, that is a fact-intensive inquiry for trial. *See infra* at 8. Nevertheless, the statements concern the Systems, which were central to Southwest's operations and its ability to recover from disruptions and adverse news about which caused stock drops; thus, were undeniably material to investors. ¶¶54-61, 196, 199-201, 426-437.

## II. DEFENDANTS MADE MATERIAL MISSTATEMENTS AND OMISSIONS

Relying on *Linenweber*, Defendants argue the misstatements here are inactionable puffery and/or not misleading. This argument is bankrupt and Defendants' reliance on *Linenweber* is misplaced.

*Linenweber* dismissed general aspirational statements made out of "contexts …that add[] specificity", and that were not "so inconsistent with [Southwest's] true condition [that] investors would struggle to reconcile the statements with reality". *Linenweber*, 2023 WL 6149106, at *6. There, the statement that safety was a "top priority" was in the abstract, did not address the safety concerns at issue, and was not remarkably inconsistent with reality. *Id.* Thus, dismissal was warranted.

In stark contrast, Defendants' misstatements here are specific, in context, and distorted reality. *Id.* Defendants made material misrepresentations about

9

"significantly" investing in the specific Systems at issue (¶¶72-74, 123, 224, 226, 242, 318) and the profound risks the Systems posed (¶¶196, 210, 224, 243, 244, 305, 318, 375, 388).   Defendants also spoke in significant contexts, like answering analysts' inquiries about the Systems vis-a-vis meltdowns, and Defendants' responses that Southwest had no "lack of technological capability" and "good tools" are verifiably inconsistent with reality.  ¶¶87, 106, 114, 125, 128, 199, 210, 261, 293.

Defendants likewise cannot rationally compare Kelly's "wonderful technology" misstatement here to Kelly's "impeccable safety record" statement in *Linenweber*.  Br. 14-15.  There, Kelly's statement was "vague and difficult to falsify" and did "not clearly refer to the [safety] deficiencies" at issue.  2023 WL 6149106, at *6.  Here, Kelly appeared on television following consecutive Systems-driven meltdowns, and specifically responded to inquiries about Southwest's ability and tools to recover.  ¶¶18, 111, 293.   His misstatement is also irreconcilable with reality.  *Id*.  Defendants' other misstatements similarly bear no relation to those dismissed in *Linenweber*. Thus, *Linenweber* only underscores why this case is different, and why Defendants' misstatements here are actionable. *See also Six Flags*, 58 F.4th at 220 ("generalized, positive statement[]" actionable because of the context in which it was made).

Defendants' cases standing for the same principle as *Linenweber* are likewise inapposite.  *See Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (contextless

10

and aspirational); *In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 820-21 (S.D. Tex. 2013) (same); *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.* 905 F.3d 892, 897, 901-02 (5th Cir. 2018) (contextless cheerleading); *City of Coral Springs Police Officers' Ret. Plan v. Farfetch*, 565 F. Supp. 3d 478, 494 (S.D.N.Y. 2021) (vague corporate-speak); *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 2023 WL 3628244, at *18 (E.D.N.Y. May 24, 2023) ("too general"); *Shemian v. Research in Motion Ltd.*, 2013 WL 1285779, at *20, 23 (S.D.N.Y. Mar. 29, 2013) (cheerleading); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018) ("expressing enthusiasm" about "competitive advantage" was cheerleading).

Underscoring the fact-intensive nature of the analysis before the Court, Defendants cite to *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 813-14 (S.D. Tex. 2012), where a statement that safety was BP's "highest priority" was dismissed because plaintiffs (a BP subclass) pled no facts to "confirm or deny" progress on improving safety. *Id*. at 815. Defendants omit that in the main BP case (*In re BP p.l.c. Securities Litigation*, 843 F. Supp. 2d 712, 757-759 & n.12 (S.D. Tex. 2012) ("*BP*")), the same court upheld a nearly identical statement ("safe [] operations are our highest priority") where, like here, plaintiffs pled specific facts showing falsity. ¶¶123, 177-179, 212, 224.

*BP* is strikingly similar to this case. There, the court found:

11

there were stark differences between the image BP projected and the reality of BP's operations. Just three years after BP began touting its process safety efforts, the Deepwater Horizon disaster occurred. This was a disaster so similar to prior disasters—the culmination of corner-cutting, overlooked and disregarded warnings, a lack of oversight…and long overdue maintenance—that it raises a genuine question as to whether BP was truly making the progress it claimed. 843 F. Supp. 2d at 755, 758.

Here, Defendants touted the Systems and Southwest's "significant" investment in them for years, while failing to upgrade the Systems despite repeated Warnings and meltdowns underscoring that an "overhaul" was urgently overdue. ¶¶64-74, 77-82, 99-116.  There are also "stark differences" between Southwest's Systems and how Defendants described them.  *See also Hall v. Rent-A-Center, Inc.*, 2017 WL 6398742, at *2 (E.D. Tex. Oct. 19, 2017) (system was "fully operational" actionable where, like here, defendants knew of "problems which had not been remediated"). Defendants' reliance on *Costco* on this issue is misplaced.  *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *17 (W.D. Wash. Nov. 26, 2019) (general statement about "technology investments" inactionable because inconsistent with plaintiffs' own allegations).

Next, Defendants argue, without merit, several alleged misstatements are literally true.  Br. 15.  But even literally true statements are actionable when they omit material facts that render them misleading.  *In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *8 (W.D. Tex. May 11, 2023).  For example, Defendants selectively argue Southwest did invest in and execute on "major technology

12

projects". Br. 16-17. But Southwest specifically claimed it was "significantly" investing in the Systems (¶74), which Defendants ignore (Br. 16), and which was literally false. ¶¶54-71, 196, 209-211. Given the importance of the Systems, this statement is materially misleading. ¶¶30, 64, 195.

Likewise, Defendants' "operational reliability" statements (¶¶263, 337, 350) are materially misleading because even if Defendants did improve their "on-time-performance", "planning", and/or "staffing", it did not matter because no "optimizing" could improve Southwest's reliability until the Vulnerability was fixed. Moreover, Defendants' statements blaming earlier meltdowns on other issues (¶¶89-90, 93, 100) were materially misleading because even if other issues gave occasion for a meltdown, the Vulnerability caused the meltdown. ¶¶272, 101 (Air Traffic Control rebutting Southwest's characterization of meltdown). If "unprecedented" weather (Br. 1) was the culprit, every airline would have had an Epic Meltdown during Elliot, not just Southwest.

Defendants' lone citation to *In re KBR, Inc. Sec. Litig.*, 2018 WL 4208681, at *5 (S.D. Tex. Aug. 31, 2018) is inapposite. Br. 15. *KBR* found plaintiffs could not allege materially actionable omissions from "bare" financial figures unless the basis of the figures were at issue. *Id*. Here, Plaintiffs do not allege bare figures and Defendants repeatedly placed the Systems at issue.

13

Furthermore, Defendants' claim that Southwest never guaranteed it could navigate every issue is a non-starter. Br. 15.   Plaintiffs allege Defendants misrepresented that Southwest's Systems were adequate, despite knowing they could not handle Southwest's operations.

Applying a tortured reading of Southwest's 2020 10-K, Defendants claim, without merit, that no investors thought the Systems were as-yet upgraded under Southwest's multi-year plan. Br. 16.  But Defendants told investors Southwest was investing in the Systems year-after-year, which they now admit was false.  ¶¶177-179, 318.  The 10-K expressly states Southwest "continues to invest significantly" in the Systems. "Continues" refers to past and present investing. ¶224.  Additionally, Defendants' misstatement was misleading in context because it neither disclosed the Vulnerability nor the urgency to fix it. ¶319.  In fact, Southwest never warned about these material concerns, and issued only generic "warnings" which were independently misleading. *See infra* 15.

Finally, Defendants argue there is no liability for three misstatements made by a spokesperson (Br. 21-22 (¶¶256, 259, 283)), but Southwest is liable for these misstatements.  *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *15 (W.D. Pa. May 18, 2023) (company liable for spokesperson's statement).  Defendants' cases on this point are inapposite.  *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 627 (S.D. Tex. 2022) (manager did not "make"

14

statement in unsigned SEC filing); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F. 3d 353, 383 (5th Cir. 2004) (rejecting "group pleading" not alleged here).

## III.   THE SAFE HARBOR AND *OMNICARE* DO NOT APPLY

Defendants argue four misstatements are protected by the PSLRA's "safe harbor" and *Omnicare, Inc. v. Laborers Dist. Council Const. Ind. Pension Fund*, 575 U.S. 175 (2015).  Br. 22 (citing ¶¶132, 263, 273, 326).  *See also Genesee Cnty. Emps' Ret. Sys. v. First Cash Holdings, Inc.*, 2023 WL 2752846, at *13 (applying *Omnicare*). Defendants are wrong.

First, the statements in paragraphs 132 ("we're really set up to perform well over the holidays") and 273 ("the worst part of all that is behind us") relate to past and present facts and are not forward-looking.  *See BP*, 852 F. Supp. 2d at 799-800.

Second, none of Defendants' misstatements, including these four, were accompanied by meaningful "company-specific warnings".  *Southland*, 365 F.3d at 372.  Defendants only "warned" of generic risks faced by all airlines, but omitted the Southwest-specific Vulnerability and the risks it posed. Br. 3; *In re Apache Corp. Sec. Litig.*, 2022 WL 4277350, at *15 (S.D. Tex. Sept. 15, 2022) (rejecting warnings comparable to "there might be a ditch ahead" when the "Grand Canyon is one foot away"). Thus, these "warnings" are independently misleading, and also debunk Defendants' claim that Southwest's risk language provided sufficient context to render their misstatements inactionable.  Br. 16.

15

Defendants also absurdly claim Kelly's 2016 statement about "old technology" (six years before the Epic Meltdown), adequately warned investors of the Vulnerability.   Br. 4. During the Class Period, Defendants repeatedly misrepresented that the Systems were adequate and continuously being upgraded. ¶¶74, 88-93, 96, 100, 105-106, 111, 119-123, 126, 129, 224, 242-244, 314-322. Additionally, "old" does not convey inadequate, dysfunctional, or an urgency to upgrade.

Third, Defendants made these misstatements with actual knowledge they were misleading (*see infra* 17-19), and thus, cannot seek shelter under the safe harbor or bespeaks-caution doctrine.   *See In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 657 (S.D. Tex. 2021).

Finally, if these four misstatements are deemed opinions under *Omnicare*, they would still be actionable because Defendants "omit[ted] material facts" which "conflict[ed] with what a reasonable investor would take from the statement itself'"; namely, that the Vulnerability exposed Southwest to a "heightened risk" of costly meltdowns. *Omnicare*, 575 U.S. at 189, 196; *Concho*, 2023 WL 2297425, at *14. Accordingly, Southwest had not improved "operational performance" and had no basis to claim the worst "was [now] behind" it.  ¶¶130, 132, 263, 273, 326.

16

## IV. PLAINTIFFS ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs adequately plead scienter. Scienter allegations are viewed collectively, and need only be as compelling as an opposing inference, which is easily satisfied here. *Concho*, 2023 WL 2297425, at *6.

Each Defendant indisputably knew of the Vulnerability for years (¶¶401-417). Each Defendant discussed the Systems in response to earlier meltdowns and/or with respect to technology spending and modernization (¶¶263-275, 283-288, 291-294, 295-306, 401-417). Jordan and Watterson admitted they knew about Southwest's "lack of tools" long before the Epic Meltdown and to "mess[ing]" up in not heeding the Warnings (¶¶177-179, 418-421, 423-424). Additionally, each Defendant was motivated to commit fraud by lucrative stock bonuses (¶425).

### A. Defendants Knowingly Failed to Disclose the Vulnerability

Defendants knew about the Vulnerability and urgency to fix it (¶¶64, 66, 182, 401-417), but actively concealed this material concern from investors, which provides a strong scienter inference. *Apache*, 2022 WL 4277350, at *6 ("management disregarded…explicit warnings" from frontline employees and "moved forward on a wing and a prayer"); *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018) (same).

Courts also find a strong inference of scienter where, as here, executives publicly discuss matters because they pay "special attention to [these matters] or, at

the least, [are] reckless in not doing so while continuing to publicly tout" them. *BP*, 843 F. Supp. 2d at 784; *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022) ("individual defendants…reported facts…that are alleged to be completely at odds with reality"); *Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023) (defendants ignored repeated objections to plan viability).

Defendants each made material misstatements obfuscating the Vulnerability in significant contexts that are irreconcilable with reality and what they knew.  ¶66 (Kelly); ¶¶72, 74, 123, 224, 318, 336 (Kelly, Romo); ¶¶88-94 (Nealon, Kelly); ¶¶109-115, 297 (Kelly, Jordan, Watterson); ¶¶91, 293, 360 (Kelly, Nealon, Romo); ¶324 (Jordan, Van de Ven); ¶¶207-214 (Watterson).  The Court should reject Defendants' groundless claim that Plaintiffs do not allege any particular Defendant knew contradictory facts.  Br. 18.

Defendants' cases on individual scienter do not help them.  *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009) (unlike in *TXU*, Plaintiffs plead detailed facts showing individual knowledge); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867-68 (5th Cir. 2003) (hindsight report "fail[ed] to identify…who supplied the information or when they knew [it]"; here, the Unions issued Warnings to Defendants for years, pre-dating the Class Period (¶¶64, 105)).  To the extent Defendants claim Plaintiffs do not allege "any

18

undisclosed facts that contradicted [Defendants'] statements" (Br. 20), this "truth-on-the-market" argument fails.  *See infra* 19-20.

### B.  Defendants' "Truth-on-the-Market" Argument Fails

Defendants admit they knew about the Vulnerability, but baselessly claim the public knew about it too; thus, there could be no scienter.  Br. 20.  That is fundamentally wrong, and Defendants' "truth-on-the-market" defense fails.

First, this defense is notoriously fact-specific and thus a matter for trial. *Wieland v. Stone Energy Corp.*, 2007 WL 2903178, at *11 (W.D. La. Aug. 17, 2007) (determining "degree of intensity and credibility" of corrective information is "[in]appropriate on motion to dismiss"); *Basic*, 485 U.S. at 249 n.29 (whether "a market could remain misinformed…is a matter for trial"); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004); *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 390 (S.D.N.Y. 2022).

Second, Defendants cannot hide behind the truth-on-the-market defense when they continually "mollif[ied] public doubt…by putting an optimistic and reassuring 'spin' on otherwise damaging [reports]".  *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 712 (W.D. Tex. 2010).  Defendants, knowing the facts, debunked the truth at every turn.  ¶¶259-273; 291-305.  Each Defendant repeatedly subdued public questions about the Systems, touted their adequacy, and downplayed any role they played in earlier meltdowns.  ¶¶109-112, 293 (Kelly); ¶297 (Watterson); ¶¶295, 303

(Jordan); ¶¶88-94 (Nealon, Kelly, Romo); ¶¶126, 129 (Van de Ven); ¶¶261, 263, 291 (Kelly, Van de Ven).

Third, it is undisputed that specifics about the Vulnerability and the monumental risk it posed were not public until after the Epic Meltdown. ¶¶196, 210; Br. 7, 18 (public criticisms were "generalized"). To the extent Defendants contradicted any general information that did become public, that only further heightens their scienter. *See ArthroCare*, 726 F. Supp. 2d at 712; *see also id.* (information contradicting defendants' statements and supporting scienter in "financial media"); *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1358-59 (S.D. Fla. 2005) (article containing contradictory information supported scienter).

Defendants' argument that contradictory information must be non-public is also wrong and not the law in this Circuit. Defendants cite three out-of-Circuit and inapposite cases (Br. 20) none of which, like here, involved defendants rebutting information contradictory to their statements. *See, e.g., In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013).

C.    **Jordan and Watterson's Admissions Further Support Their Scienter**

Watterson and Jordan's admissions strongly support their scienter by showing they "actually knew earlier that the course of action would turn out badly." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009).

When multiple Senators chastised Southwest for ignoring the Warnings, Watterson frankly admitted under oath before Congress that Southwest "messed up". ¶¶207-214.   Watterson further admitted to knowing the Systems were never designed to handle the scale of Southwest's operations. *Id*.

During the Call, Watterson also admitted the critical recovery task of scheduling crew, passengers, and aircraft "could not be handled by our technology" (¶178), forcing a "manual" process that was "extraordinarily difficult" ¶419.

Despite public statements by Jordan and others that "Southwest has good tools" (¶¶114, 303), Jordan admitted on the Call that Southwest had a distinct "lack of tools". ¶178.  Jordan further confessed that Defendants had been discussing this for at least a year before the Epic Meltdown. ¶¶23, 421, 432.  Moreover, after the Epic Meltdown, Jordan admitted he knew Southwest's Systems failed by December 24, 2022, yet he kept making statements to the contrary. ¶¶157, 375-77, 386-96.

Defendants outrageously claim the admissions from the Call are "not materially different from Southwest's public disclosures about the weather events overwhelming its scheduling systems." Br. 19.  Defendants do not cite to any public disclosures on this point; nor could they because Defendants' public disclosures are the opposite of what the Call revealed.  Defendants told investors Southwest had "no lack of technological capability", and "good tools" (¶114), but internally confessed Southwest had a "lack of tools". ¶¶177-179.  Further, the market did not learn until

21

the Call that Southwest had to manually reschedule its complex network because the Systems were so deficient. *Id.*

Finally, none of Defendants' citations concerning admissions apply here because they concern fraud-by-hindsight allegations (Br. 18-19), whereas here, Plaintiffs establish Defendants' knowledge throughout the Class Period. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 549-50 (5th Cir. 2007) (restatement not evidence defendants knew earlier statements were false); *Owens v. Jastrow*, 789 F.3d 529 (5th Cir. 2015) (asset write-off did not show defendants knew earlier that assets were worthless); ¶¶106, 116-118, 123-125, 128,132, 137, 143, 157. Defendants' reliance on *Shaw*, is also misplaced because, unlike here, no facts connected defendants to the practices at issue. Defendants also cite *In re Extreme Networks, Inc. Secs. Litig.*, 2018 WL 1411129, at *31 (N.D. Cal. Mar. 21, 2018), which found "admissions…support scienter". *Id.* at *32.

**D.    Defendants' Lucrative Stock Awards Are Probative of Scienter**

Although motive is not required to plead scienter, each Defendant was also motivated to inflate Southwest's stock price because their bonuses depended on it, and these bonuses were up to 1,200% of their salaries. ¶425. "[P]erformance-based compensation" supports an inference of scienter where, like here, the "potential bonus is extremely high". *Six Flags*, 58 F.4th at 215. Defendants' reliance on *Miller v. Cadence Bancorporation*, 2020 WL 4581736, at *4 (S.D. Tex. Aug. 7, 2020), is

22

misplaced as that case concerned general motive allegations, not massive bonuses. *See also* ¶¶187-88 (*New York Times* article addressing that Kelly was "loathe to spend the money" upgrading the Systems because his compensation is "tied up with company stock").

### E. Plaintiffs' Scienter Inference Is At Least As Strong As Defendants'

Plaintiffs plead detailed facts providing a strong inference of scienter that is at least as strong as Defendants' competing inference that the Epic Meltdown (the largest failure in airline history) was just bad business. Every airline was impacted by Elliot, but only Southwest collapsed due to the Vulnerability, which Defendants knew about, actively concealed from investors, and did not fix until it was too late. In the words of Defendants' cited case, this was not merely "poor business"; this was "securities fraud". *Extreme Networks*, 2018 WL 1411129, at *31.

Defendants' "bad business" citations are easily distinguishable and only strengthen Plaintiffs' scienter inference. *In re Newell Brands, Inc. Sec. Litig.,* 837 F. App'x 869, 876 (3d Cir. Dec. 1, 2020) (unlike here, "integration failures" relying on hindsight were "bad business decisions"); *Town of Davie Police Pens. Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 748 (N.D. Tex. 2018) (inference of poor "business judgment" stronger where, unlike here, company "failed to forecast adequately").

## V.     PLAINTIFFS ADEQUATELY PLEAD 20(a) CLAIMS

As the Complaint states a 10(b) claim, Plaintiffs' 20(a) claim stands. Br. 23.

## CONCLUSION

For these reasons, Defendants' Motion should be denied.  If the Court grants the Motion, and it should not, Plaintiffs "freely" should be granted leave to amend. Fed. R. Civ. P. 15(a).

Dated: January 29, 2024                 Respectfully submitted,

/s/ B. Russell Horton

_____

B. Russell Horton
State Bar No. 10014450
**GEORGE  BROTHERS  KINCAID & HORTON, L.L.P.**
1100 Norwood Tower
114 West 7th St
Austin, TX 78701
Telephone: (512) 495-1400
rhorton@gbkh.com

*Liaison Counsel for Lead Plaintiff and the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Lead Plaintiff Michael Berry and the Proposed Class*

25

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ B. Russell Horton
B. Russell Horton

**CERTIFICATE OF WORD COUNT**

I certify that this document complies with this Court's word count requirements because, excluding the case caption, table of contents, table of authorities, signature block and certificates, this document contains 4,994 words.

/s/ B. Russell Horton

_____

B. Russell Horton

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on January 29, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ B. Russell Horton

_____

B. Russell Horton