IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR TEROGANESIAN, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-115 |
| SOUTHWEST AIRLINES CO. *et al.*, | § § § | |
| Defendants. | § § § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

i

## **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

ARGUMENT AND AUTHORITIES.................................................................................1

    I.    PLAINTIFFS' AUTHORITIES ARE EASILY DISTINGUISHED........1

    II.   PLAINTIFFS MISCONSTRUE BOTH THE CHALLENGED DISCLOSURES AND DEFENDANTS' DISMISSAL ARGUMENTS ..................................................................................................4

    CONCLUSION.................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Boston Scientific Corp. Secs. Litig.*,
  646 F. Supp. 3d 249 (D. Mass. 2022) ................................................................. 6

*In re Citigroup Secs. Litig.*,
  2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ..................................................... 5

*Gamboa v. Citizens, Inc.*,
  2018 WL 2107205 (W.D. Tex. May 7, 2018) ..................................................... 9

*In re Garrett Motion Inc. Secs. Litig.*,
  2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023) ..................................................... 6

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ............................................................................... 1

*Ho v. Flotek Indus., Inc.*,
  248 F. Supp. 3d 847 (S.D. Tex. 2017) ................................................................ 8

*Johnson v. Costco Wholesale Corp.*,
  2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) ............................................... 5

*Kakkar v. Bellicum Pharms., Inc.*,
  2020 WL 2845279 (S.D. Tex. May 29, 2020) .................................................... 1

*Mun. Empls. Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
  935 F.3d 424 (5th Cir. 2019) ............................................................................... 3

*Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*,
  2011 WL 4591541 (S.D. Fla. Sept. 30, 2011) ..................................................... 6

*Southland Secs. Corp. v. INSPire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ............................................................................... 3

*Stephens v. Uranium Energy Corp.*,
  2016 WL 3855860 (S.D. Tex. July 15, 2016) ..................................................... 1

## INTRODUCTION

Plaintiffs' Opposition relies on readily distinguishable cases that only further confirm this suit's place on the "dismissal" side of the PSLRA cut line. The Opposition cites no particularized facts showing that Southwest's cautious disclosures were false or that the individual Defendants were apprised of specific nonpublic information contradicting their disclosures. Leave to amend should also be denied when, as here, the first complaint filed after the appointment of lead plaintiffs does not comply with the PSLRA and the plaintiffs offer only a conclusory request to amend at the end of their opposition brief.[1]

## ARGUMENT AND AUTHORITIES

### I. PLAINTIFFS' AUTHORITIES ARE EASILY DISTINGUISHED

The Opposition fails to rebut the preponderance of authority rejecting fraud claims over statements indistinguishable from those at issue here, including *Linenweber* and the other authorities cited in Defendants' opening brief. (*See* ECF #57 ("Mot.") at 2; Mot. at 14-17.)

Plaintiffs' authorities merely exemplify the types of severe and particularized facts necessary to survive dismissal that are absent here. For example, in *In re BP*

---

[1] *See* Opp. at 25; *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *5 (S.D. Tex. May 29, 2020) (denying "nested" request to amend in response brief after initial amended complaint following appointment of lead plaintiffs); *Heinze v. Tesco Corp.*, 971 F.3d 475, 485 (5th Cir. 2020) (affirming denial of leave to amend after first amended complaint dismissed); *Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *24 (S.D. Tex. July 15, 2016) (denying conclusory request to amend).

1

*P.L.C.*, the defendants allegedly misrepresented their specific "progress in process safety ***as measured against the metrics***" contained in specific recommendations made after "prior disasters" that were very similar to the explosion giving rise to the suit. *See* 843 F. Supp. 2d 712, 757-59 (S.D. Tex. 2012) (emphasis added). Plaintiffs identify no analogous "metrics" here, nor are there particularized allegations that the far less severe prior disruptions remotely resembled the December 2022 disruption.

*Hall v. Rent-A-Center, Inc.* involved an express disclosure that the company's system was "fully operational," which was contradicted by multiple specific allegations from company employees that the system was plagued with problems and not even "ready for pilot testing." *See* 2017 WL 6398742, at *8-10. By contrast, Southwest never represented that its systems were "fully" capable of preventing significant disruptions, nor do Plaintiffs identify any specific undisclosed internal communications that contradict Southwest's public disclosures.

Similarly, in *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corp.*, the company claimed its planned amusement park in China was "progressing nicely" when in fact "almost no progress" had been made, with the executives motivated by substantial incentive bonuses to hit a specific earnings target that would otherwise have been missed. 58 F.4th 195, 210, 212-15 (5th Cir. 2023). Plaintiffs point to no similar false disclosure here, nor is there any allegation that the individual Defendants were motivated to hit specific performance

2

targets that would have been missed but for the alleged misstatements. Courts consistently reject incentive compensation allegations as insufficient outside this narrow context. *See Mun. Empls. Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 431 (5th Cir. 2019) (rejecting incentive compensation allegations).

Although Plaintiffs cite *In re Mylan N.V. Securities Litigation* in support of their claims over the "unattributed" statements and tweets (*see* Mot. at 21), that case is readily distinguishable. Unlike the unattributed statements here, the *Mylan* complaint specifically identified the spokesperson who made the alleged misstatements, and the court applied inapposite Third Circuit law allowing "corporate scienter"—a theory the Fifth Circuit has rejected. *See* 2023 WL 3539371, at *15-17 (W.D. Pa. May 18, 2023); *Southland Secs. Corp. v. INSPire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) (rejecting corporate scienter theory).

Plaintiffs' other citations are similarly inapposite. The Opposition fails to cite any disclosures by Southwest analogous to the alleged misstatement in *In re Cassava Sciences* that a doctor operated an "outside lab" when the lab was funded by the company and plagued by irregularities. *See* 2023 WL 3442087, at *7-8. In *In re Apache Corp.*, the defendants made "highly specific and authoritative" estimates while allegedly concealing that the company's geologists and internal data did not support the public estimates. *See* 2022 WL 4277350, at *6. In *In re Venator Materials PLC Securities Litigation*, the defendants made specific statements that a

3

site was operating at 20% capacity despite allegations from confidential witnesses that "little or no reconstruction actually occurred" at the facility. *See* 547 F. Supp. 3d at 663. In *Ramirez v. Exxon Mobil Corp.*, there were specific allegations that the named defendants received "regular, detailed information" that made their public statements misleading. *See* 334 F. Supp. 3d 832, 852-53 (N.D. Tex. 2018). The defendants in *Yoshikawa v. Exxon Mobil Corp.* allegedly "ignored repeated objections to plan viability." *See* 2023 WL 5489054, at *9. No one has alleged that Southwest's systems were nonviable. In *Lormand v. US Unwired, Inc.*, the defendants admitted they "privately knew, at the time of the representations, that [their policies] would be disastrous" but continued touting them anyway. *See* 565 F.3d 228, 254 (5th Cir. 2009). Plaintiffs' authorities thus involve far more particularized allegations that specific executives knew of specific internal facts contradicting specific statements—facts not alleged here.

II.  **PLAINTIFFS MISCONSTRUE BOTH THE CHALLENGED DISCLOSURES AND DEFENDANTS' DISMISSAL ARGUMENTS**

Unable to muster any case authority denying dismissal based on allegations comparable to those here, Plaintiffs instead resort to stretching Southwest's disclosures beyond what they actually say and contorting Defendants' dismissal arguments into something they are not. For example, Plaintiffs allege that Southwest's statement that it "continues to invest significantly in technology resources" relating to "flight planning and scheduling," "crew scheduling," and

4

"technology infrastructure" was misleading because Southwest allegedly had not completed a full "overhaul" of these systems. (*See* Opp. at 12.) But Southwest never told investors that it had already fully overhauled these systems, nor do Plaintiffs plead particularized facts showing that Southwest did nothing to upgrade these systems or did not in fact invest "significant" funds in technology during the class period. Companies routinely invest "significant" funds in technologies without replacing entire systems. Further, Southwest repeatedly disclosed that the upgrades to "flight planning" and "scheduling" were part of a ***multi-year*** plan that had not yet been fully concluded, while making numerous other disclosures about the need for more "tools" for rescheduling flight crews. (*See* Mot. at 5-6, 16.)

Plaintiffs unsurprisingly fail to cite a single case in any jurisdiction where simply representing that a company made significant investments in technology was held actionable without any particularized allegations that such funds were not invested. Courts instead consistently reject such claims. *See In re Citigroup Secs. Litig.*, 2023 WL 2632258, at *7, 14 (S.D.N.Y. Mar. 24, 2023) (dismissing claim over statement about "substantial investments to enhance" controls); *Barnes v. Edison Int'l*, 2021 WL 2325060, at *9-10 (C.D. Cal. Apr. 27, 2021) (dismissing claim over statement about "significant and ongoing infrastructure investment program"); *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *17 (W.D. Wash. Nov. 26, 2019) (dismissing claim over statement that Costco was "currently making and

5

will continue to make significant technology investments"); *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*, 2011 WL 4591541, at *4, 14 (S.D. Fla. Sept. 30, 2011) (dismissing claim over statement that company "has made significant investments in technology").

Plaintiffs also mischaracterize Defendants' falsity, materiality, and scienter arguments as a "truth-on-the-market" defense rather than as an attack on Plaintiffs' failure to plead the elements of their claims. (*See* Opp. at 19.) Courts routinely reject this tactic. *See In re Garrett Motion Inc. Secs. Litig.*, 2023 WL 2744029, at *15 n. 10 (S.D.N.Y. Mar. 31, 2023) (rejecting effort to recast scienter argument as truth-on-the-market defense); *In re Boston Scientific Corp. Secs. Litig.*, 646 F. Supp. 3d 249, 280 n. 32 (D. Mass. 2022) (same). The fact that Southwest made copious cautionary disclosures, coupled with the admittedly public nature of the unions' statements, undermines any inference of falsity or scienter. (*See* Mot. at 5-7.)

Plaintiffs likewise do not explain how the *Pfizer*, *GeoPharma*, and *AIG* decisions conflict with Fifth Circuit law. (*See* Mot. at 18-19; Opp. at 20.) Consistent with those cases, the public nature of the unions' assertions severely weakens any conceivable inference of scienter from those purported criticisms. (*See id.*) While Plaintiffs say those cases are distinguishable because they did not involve "defendants rebutting information contradictory to their statements" (Opp. at 20), Plaintiffs identify no instance where Southwest made a public disclosure directly

6

addressing the unions' statements, let alone fraudulently "rebutting" them. Southwest also repeatedly disclosed its desire for "better tools to recover" from disruptions (*see* Mot. at 5-7), again undermining any inference that Defendants recklessly overstated Southwest's capabilities. Further, Plaintiffs have not overcome the protections for opinions and forward-looking statements. (*See* Mot. at 22.)

The Opposition also mischaracterizes the purported "admissions" by Watterson and Jordan. (*See* Opp. at 20-21.) Watterson did not admit "to knowing the Systems were never designed to handle the scale of Southwest's operations" (Opp. at 21), but instead merely conceded that the ***specific unprecedented weather event*** in December 2022 overwhelmed Southwest's scheduling capabilities. (*See* Compl. ¶ 211.) Likewise, Jordan's statement on December 27, 2022 about a "lack of tools" was not a reference to hidden "internal" discussions (as insinuated on page 12 of the Opposition), but a reference to Southwest's numerous ***public*** disclosures over the past year about "the need to modernize the operation and invest." (*See* Compl. ¶ 178; Mot. at 5-6.) Plaintiffs also ignore that Jordan's October 21, 2021 statement about having "good tools" was immediately followed by a specific disclosure that Southwest must "continue to invest heavily in the operation and particularly heavily in the operational tools that we provide to our employees." (Compl. ¶ 114.) Further, while Plaintiffs errantly contend that Southwest never disclosed its systems were overwhelmed by Winter Storm Elliott, Southwest disclosed on December 26 and 27,

7

2022, that the operational conditions created by the storm "forced daily changes of an unprecedented volume and magnitude to our flight schedule and the tools our teams use to recover the airline remain at capacity." (Compl. ¶¶ 370, 372.)

Lastly, Plaintiffs' assertion that "Defendants admit they knew about the 'Vulnerability'" is false. Again, the unions' criticisms of Southwest's purportedly "brittle" systems are not specific internal facts that Southwest fraudulently concealed, but generalized ***public*** statements of opinion. Alleged awareness of nonspecific public criticisms is not the same as specific knowledge that specific conditions were likely to occur that would cause the magnitude of disruption that occurred in December 2022 (indeed, no disruption of this scale had ***ever*** occurred before at Southwest). Simply capitalizing the word "Vulnerability" and claiming that Defendants had advance knowledge does not satisfy the PSLRA's particularity requirements. And, as noted previously, Southwest's subsequent public statements and Congressional testimony regarding the December 2022 disruption do not show that Defendants misled investors or knew of specific facts contradicting their prior disclosures. (*See* Mot. at 19-20.)

## **CONCLUSION**

The Opposition fails to cite any Rule 10b-5 case as weak as this one that has survived dismissal. Plaintiffs cannot avoid dismissal by showing that a disclosure is arguably misleading, but must instead provide particularized facts showing the

disclosures are blatantly and undebatably false. *See Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) (even if disclosures could have been "clearer," they were "not so blatantly misleading as to be severely reckless."); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (no scienter where disclosures' adequacy is "debatable"). Southwest's candid disclosures about the need to "modernize," plus the absence of any promise that Southwest's systems could always prevent severe disruptions cases, cut heavily against scienter. That Southwest experienced a handful of far less severe prior disruptions (as have other airlines) does not show Defendants knew a disruption on the scale of December 2022 was likely or that any disclosures were fraudulent. The Court should grant dismissal and deny leave to amend.[2]

---

[2] *See supra* footnote 1.

9

Dated: February 23, 2024　　　Respectfully submitted,

　　　　　　　　　　　　　　　NORTON ROSE FULBRIGHT US LLP


　　　　　　　　　　　　　　　/s/ *Michael A. Swartzendruber*
　　　　　　　　　　　　　　　Michael A. Swartzendruber (Lead Counsel)
　　　　　　　　　　　　　　　State Bar No. 19557702
　　　　　　　　　　　　　　　2200 Ross Ave., Suite 3600
　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　Telephone:  (214) 855-8000
　　　　　　　　　　　　　　　Facsimile:  (214) 855-8200
　　　　　　　　　　　　　　　michael.swartzendruber@nortonrosefulbright.com

　　　　　　　　　　　　　　　Peter A. Stokes
　　　　　　　　　　　　　　　State Bar No. 24028017
　　　　　　　　　　　　　　　98 San Jacinto Boulevard, Suite 1100
　　　　　　　　　　　　　　　Austin, Texas 78701-4255
　　　　　　　　　　　　　　　Telephone:  (512) 474-5201
　　　　　　　　　　　　　　　Facsimile:  (512) 536-4598
　　　　　　　　　　　　　　　peter.stokes@nortonrosefulbright.com

　　　　　　　　　　　　　　　Kelly A. Potter
　　　　　　　　　　　　　　　State Bar No. 24119284
　　　　　　　　　　　　　　　1301 McKinney, Suite 5100
　　　　　　　　　　　　　　　Houston, Texas 77010-3095
　　　　　　　　　　　　　　　Telephone: (713) 651-5151
　　　　　　　　　　　　　　　Facsimile:  (713) 652-5246
　　　　　　　　　　　　　　　kelly.potter@nortonrosefulbright.com

　　　　　　　　　　　　　　　*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

I certify that this document complies with this Court's word count requirements because, excluding the case caption, table of contents, table of authorities, signature block and certificates, this document contains 1,998 words.

/s/ *Michael A. Swartzendruber*
Michael A. Swartzendruber

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 23, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ *Michael A. Swartzendruber*
Michael A. Swartzendruber
