# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR TEROGANESIAN, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-115 |
| SOUTHWEST AIRLINES CO. *et al.*, | § § § | |
| Defendants. | § § § | |

## DEFENDANTS' MOTION FOR RECONSIDERATION, MOTION TO PERMIT INTERLOCUTORY APPEAL, AND REQUEST FOR HEARING

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT AND AUTHORITIES....................................................................5

    I.      CONGRESS IMPOSED DEMANDING PLEADING-STAGE
           REQUIREMENTS THAT CANNOT BE DEFERRED UNTIL
           SUMMARY JUDGMENT........................................................................5

    II.     THE APPROACH TAKEN IN THE RULING IS
           INCONSISTENT WITH THE APPROACH TAKEN BY THE
           FIFTH CIRCUIT AND SOUTHERN DISTRICT OF TEXAS IN
           PRIOR SECURITIES CASES. ..............................................................11

    III.    THE ALLEGATIONS HERE FALL FAR BELOW WHAT IS
           REQUIRED TO SURVIVE A MOTION TO DISMISS.......................17

    IV.    AT MINIMUM, THE COURT SHOULD MODIFY THE
           RULING TO CERTIFY IT FOR INTERLOCUTORY APPEAL. ........21

    V.     THE COURT SHOULD ALLOW ORAL ARGUMENT .....................25

CONCLUSION ....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affco Invests., LLC v. KPMG, LLP*,
   No. H-07-3379, 2009 WL 3248052 (S.D. Tex. Sep. 28, 2009)
   (Miller, J.) ...................................................................................................16

*Alaska Elec. Pension Fund v. Asar*,
   768 F. App'x 175, 2019 WL 1567766 (5th Cir. Apr. 10, 2019) .................12, 13

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
   915 F.3d 975 (5th Cir. 2019) .........................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................23

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)..........................................................................................8

*Borderplex Investment Partners v. Borderplex Realty Trust*,
   2017 WL 1738080 (W.D. Tex. Apr. 5, 2017) ....................................................7

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ......................................................................22

*Burback v. Brock*,
   2023 WL 4532803 (5th Cir. July 13, 2023) ....................................................13

*Callinan v. Lexicon Pharms., Inc.*,
   479 F. Supp. 3d 379 (S.D. Tex. 2020) (Lake, J.)..............................................11

*Callinan v. Lexicon Pharms., Inc.*,
   858 F. App'x 162 (5th Cir. Sept. 10, 2021)......................................................11

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
   497 F.3d 546 (5th Cir. 2007) .........................................................................14

*Coggins v. Camber Energy Inc.*,
   693 F. Supp. 3d 7S36,751 (S.D. Tex. 2023) (Eskridge, J.) ..............................15

ii.

*In re Cyberonics Inc. Secs. Litig.*,
    523 F. Supp. 2d 547 (S.D. Tex. 2007) (Miller, J.).............................................16

*Dawes v. Imperial Sugar Co.*,
    975 F. Supp. 2d 666 (S.D. Tex. 2013) (Rosenthal, J.) .......................................15

*Delaware County Empls. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    620 F. Supp. 3d 603 (S.D. Tex. 2023) (Rosenthal, J.) .......................................16

*Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.*,
    570 F.3d 219 (5th Cir. 2009) ...............................................................................23

*In re Dot Hill Sys. Corp. Sec. Litig.*,
    594 F. Supp. 2d 1150 (S.D. Cal. 2008) ...............................................................19

*Edwards v. McDermott Int'l, Inc.*,
    2022 WL 3927828 (S.D. Tex. Aug. 302, 2022) (Edison, J.)...............................15

*Empls. Ret. Sys. v. Whole Foods Market, Inc.*,
    905 F.3d 892 (5th Cir. 2018) ...............................................................................18

*In re Enron Corp. Secs. Litig.*,
    535 F.3d 325 (5th Cir. 2008) .................................................................................7

*In re Express Scripts Holdings Co. Sec. Litig.*,
    773 F. App'x 9 (2d Cir. 2019)..............................................................................18

*Fener v. Operating Engineers Constr. Indus. And Misc. Pens. Fund
    (Local 66)*,
    579 F.3d 401 (5th Cir. 2009), *overruled on other grounds,* 131 S.
    Ct. 2179 (2011) ......................................................................................................8

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ...............................................................................14

*In re Franklin Bank Corp. Sec. Litig.*,
    782 F. Supp. 2d 364 (S.D. Tex. 2011) (Ellison, J.) ............................................15

*Gamboa v. Citizens, Inc.*,
    A-17-CV-241-RP, 2018 WL 2107205 (W.D. Tex. May 7, 2018) .....................20

*Hartz v. Administrators of Tulane Educ. Fund*,
    275 F. App'x 281 (5th Cir. 2008).........................................................................23

*Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council*
*Philadelphia & Vicinity v. Anadarko Petroleum Corp.*,
788 F. App'x 268 (5th Cir. 2019) ...................................................................13

*Izadjoo v. Helix Energy Solutions Group, Inc.*,
237 F. Supp. 3d 492 (S.D. Tex. 2017) (Rosenthal, J.) ....................................3, 12

*Jag Media Holdings v. AG Edwards & Sons*,
387 F. Supp. 2d 691 (S.D. Tex. 2004). (Gilmore, J.) .........................................16

*Kakkar v. Bellicum Pharms., Inc.*,
2020 WL 2845279 (S.D. Tex. May 29, 2020) (Bennett, J.) ..............................15

*In re Key Energy Servs., Inc. Secs. Litig.*,
2016 WL 1305922 (S.D. Tex. Mar. 31, 2016) (Harmon, J.) .............................15

*La. Indep. Pharms. Assoc. v. Express Scripts, Inc.*,
41 F. 4th 473 (5th Cir. 2022) .............................................................................23

*Lain v. Evans*,
123 F. Supp. 2d 344 (N.D. Tex. 2000) ................................................................7

*Lefebure v. D'Aquilla*,
15 F. 4th 650 (5th Cir. 2021) .............................................................................23

*Linenweber v. Southwest Airlines Co.*,
2023 WL 6149106 (N.D. Tex. Sept. 19, 2023) (Kinkeade, J.).......................5, 21

*Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*,
No. 4:13-cv-2393, 2015 WL 1143081 (S.D. Tex. Mar. 13, 2015)
(Hoyt, J.) ...........................................................................................................15

*Mandujano v. City of Pharr, Tex.*,
2018 WL 11469689 (S.D. Tex. May 14, 2018) (Alvarez, J.)............................24

*Material Yard Workers Local 1175 Ben. Funds v. Men's Wearhouse,*
*Inc.*,
No. H–09–3265, 2011 WL 3059229 (S.D. Tex. July 22, 2011)
(Hughes, J.) ........................................................................................................16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006)................................................................................................6

*Miller v. Cadence Bancorporation*,
   2020 WL 4581736 (S.D. Tex. Aug. 7, 2020) (Hughes, J.)................................15

*Morales v. OK Trans, Inc.*,
   2024 WL 3223676 (S.D. Tex. June 18, 2024)....................................................21

*Mun. Epls. Ret. Sys. Of Mich. v. Pier 1 Imports, Inc.*,
   935 F.3d 424 (5th Cir. 2019) ........................................................................13, 19

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ...............................................................................6

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ........................................................................17, 20

*Oklahoma Firefighters Pens. and Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018) ................................................................19

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) .................................................................12, 14, 17

*Parker v. Hyperdynamics Corp.*,
   126 F. Supp. 3d 830 (S.D. Tex. 2015) (Harmon, J.) ..........................................15

*Rains v. Zale Corp.*,
   2011 WL 3331213 (N.D. Tex. Aug. 1, 2011) .....................................................20

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ..............................................................................22

*Regents of Univ. of Calif. v. Credit Suisse First Boston (USA), Inc.*,
   482 F.3d 372 (5th Cir. 2007) ...............................................................................8

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .........................................................................3, 11

*Simmons v. Peavy-Welsh Lumber Co.*,
   113 F.2d 812 (5th Cir. 1940).............................................................................23

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019) .................................................................................18

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .............................................................22

*Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*,
    552 U.S. 148, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008)........................8

*Talarico v. Johnson*,
    2023 WL 2618255 (S.D. Tex. Feb. 7, 2023) (Sheldon, J.)................11

*Tanaskovic v. Realogy Holdings Corp.*,
    2021 WL 211049 (D.N.J. Jan. 21, 2021) ...........................................7

*Teamsters Local 445 Freight Div. Pens. Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ............................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2008)................................................................3, 16, 18

*Utah Ret. Sys. v. McCollum*,
    2023 WL 8649878 (5th Cir. Dec. 14, 2023).....................................13

*Whitley v. BP, P.L.C.*,
    838 F.3d 523 (5th Cir. 2016) ...........................................................23

*Williams v. WMX Technologies, Inc.*,
    112 F.3d 175 (5th Cir. 1997) ......................................................22, 24

*Yang v. Nobilis Health Corp.*,
    2021 WL 3619863 (5th Cir. Aug. 13, 2021) ....................................13

*Yoshikawa v. Exxon Mobil Corp.*,
    2022 WL 4677621 (N.D. Tex. Sept. 29, 2022) ................................18

**Rules and Statutes**

15 U.S.C. § 78u-4(b)(2)(A)........................................................................12

15 U.S.C. § 78u-4(b)(3)(A)......................................................................2, 6

15 U.S.C. § 78u-4(b)(3)(B)......................................................................2, 7

28 U.S.C. § 1292(b) ...........................................................................1, 21, 23

Private Securities Litigation Reform Act.........................................*passim*

## Other Authorities

H.R. Conf. Rep. No. 104–369, pp. 31-32 (1995) ...................................................6

Richard A. Nagareda, "Class Certification in the Age of Aggregate
    Proof," 84 N.Y.U. L. Rᴇᴠ. 97, 99 (2009) ............................................9

Robert A. Rosenblatt and Gebe Martinez, "Senate Completes First
    Override of Clinton Veto," *Los Angeles Times*, December 23, 1995...................5

Janet Cooper Alexander, "Do the Merits Matter? A Study of
    Settlements in Securities Class Actions," 43 Sᴛᴀɴ. L. Rᴇᴠ. 497,
    523 (1991)..........................................................................10

This securities fraud class action was filed against Southwest Airlines Co. ("Southwest") and certain of its individual executives after an unprecedented winter storm disrupted airline operations across the country in December 2022. Plaintiffs allege that Southwest and the individual Defendants made fraudulent statements to investors about Southwest's disruption-mitigation capabilities and related issues. Defendants moved to dismiss under the mandatory pleading requirements imposed by the Private Securities Litigation Reform Act (the "PSLRA"). The Court denied the motion in a December 5, 2024 order (the "Ruling") (ECF #62).

Southwest and the individual Defendants now respectfully move for reconsideration of the Ruling or, alternatively, for modification of the Ruling to certify it for interlocutory review pursuant to 28 U.S.C. § 1292(b). Defendants also respectfully request a hearing on this motion and believe oral argument may be of significant benefit in resolving the issues presented herein.

## SUMMARY OF ARGUMENT

Defendants respectfully submit that the Ruling does not adhere to the mandatory pleading-stage dismissal regime Congress established for securities fraud complaints that lack particularized facts showing material misstatements made with a "strong inference" of fraudulent intent or severe recklessness. Under the Private Securities Litigation Reform Act (the "PSLRA"), a district court "***shall***, on the motion of any defendant, dismiss the complaint" if the PSLRA's particularity and

1

"strong inference" requirements are not met. 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added). The PSLRA also bars discovery while a motion to dismiss is pending absent exceptional circumstances. *See id.* § 78u-4(b)(3)(B).

Congress thus made dismissal mandatory—and discovery impermissible—unless and until a securities complaint clears the high bar of pleading particularized facts showing material misstatements made with a strong inference of fraudulent intent or recklessness. This was a deliberate policy mandate by Congress to protect public companies and their directors and officers from being coerced into exorbitant class-wide settlements through discovery costs and the "*in terrorem*" power of class action litigation, in which the sheer magnitude of class-wide damages can force companies to settle unmeritorious cases. Recognizing that traditional mechanisms for pretrial dismissal are insufficient, Congress overrode a presidential veto to enact the PSLRA and make the pleading stage—rather than summary judgment—the critical threshold hurdle for securities cases.

Accordingly, denying dismissal on a finding that "the issues are better suited for a summary judgment motion after the Parties have had the opportunity to engage in discovery"[1]—without determining whether Plaintiffs have pled particularized facts showing actionable misstatements made with the requisite strong inference of fraudulent intent—contradicts the PSLRA's plain terms, intent, and purpose. The

---

[1] *See* Ruling, ECF #62.

Ruling's treatment of the pleading-stage requirements is inconsistent with the PSLRA, as well as with the historical approach taken to these cases by the Fifth Circuit and the Southern District of Texas, which have consistently addressed PSLRA dismissal motions through detailed opinions analyzing whether a claim is adequately pled with respect to each alleged misstatement and as to each Defendant.

Further, while determining state-of-mind issues on the pleadings may be unusual in other types of cases, it is required in PSLRA cases. As the Supreme Court has emphasized, "to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [the PSLRA's scienter requirement] ***must*** engage in a comparative evaluation; it ***must*** consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the fact alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2008) (emphasis added). The Fifth Circuit has likewise required that "district court[s] ***must*** engage in some weighing of the allegations" in securities cases "to determine whether the inferences toward scienter are strong or weak." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867-68 (5th Cir. 2003) (emphasis added) (rejecting assertion that "the district court improperly weighed the facts" at the motion to dismiss stage). Likewise, "[t]he court ***must*** analyze the allegations as to ***each defendant*** to determine whether the complaint sufficiently pleads scienter as to that defendant." *Izadjoo v. Helix Energy Solutions Group, Inc.*, 237 F. Supp. 3d

492, 514 (S.D. Tex. 2017) (Rosenthal, J.) (emphasis added). This intensive, comparative analysis of Plaintiffs' allegations is mandatory at the pleading stage and is required before discovery may proceed. This is precisely what Congress intended to require by enacting the PSLRA.

The allegations here fall far short of demonstrating actionable misstatements or supporting the "strong inference" of scienter required to survive dismissal. Again, there is no allegation Southwest had ever before experienced any prior disruptions remotely on the scale of the December 2022 disruptions, or that Southwest guaranteed to investors that its systems could withstand the type of extreme weather event that occurred in December 2022, or that significant upgrades were unnecessary. Southwest instead repeatedly warned investors during the months and years before Winter Storm Elliott that it had experienced previous operational delays; that "we live with some old technology;" that once Southwest's rescheduling technology gets behind, "it's just difficult to get back together;" that Southwest had "too few options to get our customers and our crews to where they needed to be if our operating tempo was disrupted;" and that Southwest was undertaking a multi-year "Modernize the Operation" program with the intent "to lessen the impact of irregular events and reduce the cause of disruption," with "Network design & recovery" and "Mobility/digital tools" not included for delivery until after 2023. (*See* Motion to Dismiss ("Mot."), ECF #57 at 3-7.) Denial of dismissal on these facts

4

contradicts numerous Fifth Circuit and District Court opinions granting dismissal despite factual allegations far more particularized and severe than those made here.

Defendants thus move for reconsideration of the Ruling or, alternatively, for certification of the order to permit an interlocutory appeal. Defendants also respectfully request a hearing on these issues. As previously noted, Judge Kinkeade dismissed a strikingly similar securities class action against Southwest on the pleadings last year that involved similarly generalized affirmative statements about Southwest's maintenance and safety practices. *See Linenweber v. Southwest Airlines Co*., 2023 WL 6149106, at *5-15 (N.D. Tex. Sept. 19, 2023) (Kinkeade, J.) (granting dismissal in full with prejudice). Respectfully, the Court should not defer dismissal of the securities claims until summary judgment and thereby expose Southwest and its directors and officers to the litigation costs and settlement pressure inherent in securities class action litigation in a case that simply does not satisfy the PSLRA.

## ARGUMENT AND AUTHORITIES

I.    **CONGRESS IMPOSED DEMANDING PLEADING-STAGE REQUIREMENTS THAT CANNOT BE DEFERRED UNTIL SUMMARY JUDGMENT**

The PSLRA was a significant, hard-fought piece of the federal legislative agenda following the 1994 midterm elections.[2] Congress enacted the PSLRA over

---

[2] *See, e.g.,* Robert A. Rosenblatt and Gebe Martinez, "Senate Completes First Override of Clinton Veto," *Los Angeles Times*, December 23, 1995 (available at https://www.latimes.com/archives/la-xpm-1995-12-23-mn-17039-story.html).

President Clinton's veto in recognition that prior procedural devices were insufficient to prevent unwarranted and exorbitant settlements that damage the U.S. economy. *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001) ("Unsatisfied with the disagreements among the Circuits (as to the scienter requirement), as well as the perceived inability of Rule 9(b) to prevent abusive, frivolous strike suits, Congress in 1995 passed the PSLRA over the President's veto"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (noting that Congress "had identified ways in which the class-action device was being used to injure 'the entire U.S. economy" before enactment of the PSLRA, including by "targeting of deep-pocket defendants" and producing "extortionate settlements") (citing H.R. Conf. Rep. No. 104–369, pp. 31-32 (1995)).

Consistent with this clear Congressional intent, the PSLRA's plain language requires that a securities plaintiff satisfy the particularity and "strong inference of fraud" requirements ***before*** they are entitled to discovery and makes clear that district courts are without discretion to wait until summary judgment before dismissing inadequately-pled securities claims. The PSLRA uses the nondiscretionary word "shall" to compel dismissal of complaints that fall short of these requirements and to eliminate judicial discretion to allow noncompliant securities fraud claims to survive beyond the pleading stage. *See* 15 U.S.C. § 78u-4(b)(3)(A) (requiring that the district court "***shall***, on the motion of any defendant,

dismiss the complaint" if the PSLRA's particularity and "strong inference" requirements are not met) (emphasis added). The PSLRA also imposes a mandatory discovery stay while motions to dismiss are pending. *See* 15 U.S.C. § 78u-4(b)(3)(B); *In re Enron Corp. Secs. Litig.*, 535 F.3d 325, 337 (5th Cir. 2008) (describing discovery stay as "mandatory").

Dismissal is thus "mandatory," and discovery is forbidden, unless and until a complaint pleads particularized facts showing actionable misstatements and supporting a strong inference of fraudulent intent or severe recklessness. *See Lain v. Evans*, 123 F. Supp. 2d 344, 347 (N.D. Tex. 2000) ("When a complaint fails to plead scienter in conformity with the PSLRA, dismissal is mandatory"); *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *3 (D.N.J. Jan. 21, 2021) ("These requirements set by the PSLRA are not merely discretionary. Rather, the PSLRA mandates that 'the court shall, on the motion of any defendant, dismiss the complaint if [these] requirements are not met.'") (internal citation omitted); *Borderplex Investment Partners v. Borderplex Realty Trust*, 2017 WL 1738080, at *11 (W.D. Tex. Apr. 5, 2017) ("Should the complaint fail to plead scienter as required by the PSLRA, then the claim ***must*** be dismissed.") (emphasis added).

Deferring dismissal of noncompliant securities complaints until summary judgment violates the PSLRA's plain language and imposes severe pressure on defendants to settle before reaching summary judgment or trial—which is exactly

what Congress intended to prevent in enacting this statute. Courts and academic commentators have long expressed concerns that securities class actions impose substantial "*in terrorem*" settlement pressure when a securities case proceeds beyond the pleading stage and is certified as a class action.[3] *See, e.g., Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 163, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) ("[E]xtensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies."); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975) (discussing how access to discovery can represent "an *in terrorem* increment of the settlement value"); *Fener v. Operating Engineers Constr. Indus. And Misc. Pens. Fund (Local 66)*, 579 F.3d 401, 406 (5th Cir. 2009) (explaining that "the risk of facing an all-or-nothing verdict" is "particularly high in securities-fraud class actions, in which the current 'class-based compensatory damages regime in theory imposes remedies that are so catastrophically large that defendants are unwilling to go to trial even if they believe the chance of being found liable is small") (internal citation omitted), *overruled on other grounds,* 131 S. Ct. 2179 (2011); *Regents of Univ. of Calif. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 379 (5th Cir.

---

[3] Although Defendants believe they have strong defenses to class certification, the class certification stage often does not afford Defendants an opportunity to litigate merits-based defenses beyond those that intersect with the class certification analysis (e.g., whether the alleged misstatements had price impact).

2007) ("[C]lass certification may be the backbreaking decision that places 'insurmountable pressure' on a defendant to settle, even where the defendant has a good chance of succeeding on the merits") (internal citation omitted); Richard A. Nagareda, "Class Certification in the Age of Aggregate Proof," 84 N.Y.U. L. REV. 97, 99 (2009) ("With vanishingly rare exception, class certification sets the litigation on a path toward resolution by way of settlement, not full-fledged testing of the plaintiffs' case by trial.") (addressing securities and other class action cases).

Recent statistics confirm that deferring resolution of securities cases to summary judgment creates a dynamic that coerces economically rational companies into exorbitant settlements. Between 2019 and 2023, over 90% of securities class actions settled prior to the filing of a motion for summary judgment. (*See* Cornerstone Research, "Securities Class Action Settlements: 2023 Review and Analysis, at 15.[4]) The median settlement during this time was $62.6 million for securities class actions settled after filing of a summary judgment motion but before a ruling, $27.6 million for cases settled between the class certification ruling and the filing of a summary judgment motion, and $8.3 million for cases settled after a Rule 12(b)(6) ruling but before filing of a class certification motion. (*See id.*)

---

[4]    The Cornerstone report is available at https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

These statistics bear out what Congress understood when it enacted the PSLRA: that summary judgment is an ineffective check against unmeritorious securities class actions. Faced with mounting litigation costs and the large class-wide damages awards sought in these cases, the vast majority of securities class actions settle before a summary judgment ruling. The merits moreover frequently take a backseat to concerns over the sheer magnitude of a potential damages award in reaching settlement values. *See* Janet Cooper Alexander, "Do the Merits Matter? A Study of Settlements in Securities Class Actions," 43 Stan. L. Rev. 497, 523 (1991) ("All in all, the most likely explanation for the similarity of outcomes [in securities class action settlements] is that ***the merits did not affect the settlement amounts***") (emphasis added). The small number of reported securities class action summary judgment opinions in this circuit—as compared to the vast number of pleading-stage dismissal opinions—further confirms that summary judgment has failed as a meaningful curb on settlement pressure in securities class actions.

Defendants thus respectfully submit that the Court erred in concluding that this suit must await summary judgment before assessing whether Plaintiffs have sufficiently alleged material misstatements made with a strong inference of scienter. While assessing the strength of state-of-mind allegations on the pleadings may be unusual in other types of cases, "the district court ***must*** engage in some weighing of the allegations" in securities cases "to determine whether the inferences toward

10

scienter are strong or weak." *Rosenzweig*, 332 F.3d at 867-68. That "weighing" must be done at the pleading stage and cannot be deferred to summary judgment.

## II.    THE APPROACH TAKEN IN THE RULING IS INCONSISTENT WITH THE APPROACH TAKEN BY THE FIFTH CIRCUIT AND SOUTHERN DISTRICT OF TEXAS IN PRIOR SECURITIES CASES.

The Ruling—which makes no findings as to whether any specific statements are actionably false or made with a strong inference of scienter, or with respect to the alleged scienter of any specific Defendant—likewise conflicts with the historical practices of the Fifth Circuit and the Southern District of Texas in evaluating pleading-stage securities fraud allegations. Consistent with the mandatory nature of the PSLRA's particularity and "strong inference" requirements and the severe economic implications that flow from the denial of dismissal, the Fifth Circuit and Southern District of Texas have consistently issued thorough written opinions assessing the strength of each allegation with respect to each statement by each defendant to determine whether any statements are actionably misleading and made with the requisite "strong inference" of fraudulent intent or severe recklessness. *See, e.g., Callinan v. Lexicon Pharms., Inc.*, 858 F. App'x 162, 163-64 (5th Cir. Sept. 10, 2021) (affirming dismissal on scienter grounds and noting the "careful and thorough opinion spanning 114 pages" from district court) (citing *Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 415-442 (S.D. Tex. 2020) (Lake, J.)); *Talarico v. Johnson*, 2023 WL 2618255, at *7 (S.D. Tex. Feb. 7, 2023) (Sheldon, J.) ("[T]he

11

Court will proceed defendant by defendant, addressing allegations unique to the defendant, to comprehensively determine if Plaintiff has alleged facts that give rise to a strong inference of scienter as to any defendant"), *report and recommendation adopted*, 2023 WL 2616104 (Hanen, J.), aff'd, 2024 WL 939738 (5th Cir. Mar. 5, 2024); *Alaska Elec. Pens. Fund v. Asar*, 768 F. App'x 175, 185 (5th Cir. Apr. 10, 2019) (plaintiff "must plead the requisite scienter 'with respect to each act or omission'") (quoting 15 U.S.C. § 78u-4(b)(2)(A)); *Owens v. Jastrow*, 789 F.3d 529, 538, 541 (5th Cir. 2015) (observing that "[t]he district court methodically analyzed the allegations, determining whether each did or did not contribute to a strong inference of scienter. Then, for each defendant, the district court concluded that the various allegations taken together, did not raise a strong inference of scienter that was at least as compelling as the opposing inference that the defendant did not know of the fraud or was merely negligent"); *Izadjoo*, 237 F. Supp. 3d at 514 (Rosenthal, J.) ("The court must analyze the allegations as to each defendant to determine whether the complaint sufficiently pleads scienter as to that defendant").

The Fifth Circuit has a long history of rigorously analyzing Rule 10b-5 complaints to assess whether there are sufficient allegations of actionable misstatements or a strong inference of scienter with respect to each statement and each defendant—and has affirmed dismissals in complex cases involving multiple alleged misstatements, accounting violations, billion-dollar write-downs of

mortgage-backed securities to zero, fatal explosions, environmental violations, and other severe circumstances. *See, e.g.*, *Utah Ret. Sys. v. McCollum*, 2023 WL 8649878, at *1-4 (5th Cir. Dec. 14, 2023) (affirming dismissal on scienter grounds despite 86% stock drop following Weatherford bankruptcy announcement); *Burback v. Brock*, 2023 WL 4532803, at *6-7 (5th Cir. July 13, 2023) (affirming dismissal in part on scienter grounds); *Yang v. Nobilis Health Corp.*, 2021 WL 3619863, at *1-3 (5th Cir. Aug. 13, 2021) (affirming dismissal on scienter grounds despite alleged GAAP violations and failure to write off uncollectible receivables); *Mun. Epls. Ret. Sys. Of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429-30 (5th Cir. 2019) (affirming dismissal after weighing scienter allegations where defendant allegedly failed to disclose significant markdown risk); *Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 270 (5th Cir. 2019) (affirming dismissal despite $9 billion in environmental fines prior to fatal explosion, and despite evidence that "could have led [individual defendants] to conclude that Anadarko's Colorado operations weren't in compliance with Commission rules," where allegations did not support strong inference that "Walker and McBride were aware that Anadarko was, as a matter of law, in violation of Commission rules"); *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 2019 WL 1567766, *2–9 (5th Cir. Apr. 10, 2019) (affirming dismissal despite conclusion by company's Audit Committee that former CFO

13

engaged in inappropriate accounting practices and set inappropriate tone at top); *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 980 (5th Cir. 2019) (affirming dismissal despite overstatement of well data by 40–50%); *Owens*, 789 F.3d at 538, 541 (affirming dismissal of Rule 10b-5 suit even though bank had to write down entire $1.62 billion portfolio of mortgage-backed securities); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 210 (5th Cir. 2009) (affirming dismissal of Rule 10b-5 suit despite "suspect" timing of major dividend increase); *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 552 (5th Cir. 2007) (affirming dismissal of 10b-5 claims despite allegations that a confidential former employee "overheard comments at headquarters about the company's accounting practices indicating that [it] lacked the internal controls it repeatedly lauded and embraced a culture of financial manipulation that favored hitting financial numbers rather than accurate accounting" and the CEO told a confidential former executive that "he did not want to know the details of a revenue issue so that he would not be liable").

Consistent with the express language of the PSLRA, as well as the Supreme Court's and Fifth Circuit's requirements that district courts must undertake a "comparative analysis" and weigh the scienter allegations as to each defendant (*see supra* at 3), the Southern District of Texas likewise has addressed motions to dismiss in securities cases through comprehensive opinions addressing actionability and

scienter as to each statement by each defendant. *See, e.g., Coggins v. Camber Energy Inc.*, 693 F. Supp. 3d 736,751 (S.D. Tex. 2023) (Eskridge, J.) (dismissing securities claim based on absence of duty to disclose); *Edwards v. McDermott Int'l, Inc.*, 2022 WL 3927828, at *6-7 (S.D. Tex. Aug. 302, 2022) (Edison, J.), *report and recommendations adopted*, 2022 WL 4454391 (S.D. Tex. Sept. 23, 2022) (Hanks, J.) (dismissing claims based on absence of duty to disclose); *Miller v. Cadence Bancorporation*, 2020 WL 4581736, at *1-5 (S.D. Tex. Aug. 7, 2020) (Hughes, J.) (granting dismissal and rejecting allegations regarding increased loan charge-offs, insider trades, and confidential witnesses); *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *2-4 (S.D. Tex. May 29, 2020) (Bennett, J.) (granting motion to dismiss despite allegations from confidential witnesses); *In re Key Energy Servs., Inc. Secs. Litig.*, 2016 WL 1305922, at *38-39 (S.D. Tex. Mar. 31, 2016) (Harmon, J.) (granting motion to dismiss); *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 853-54 (S.D. Tex. 2015) (Harmon, J.) (dismissing Rule 10b-5 securities fraud complaint for failure to demonstrate falsity or scienter); *Local 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, No. 4:13-cv-2393, 2015 WL 1143081, at *9 (S.D. Tex. Mar. 13, 2015) (Hoyt, J.) (granting motion to dismiss with prejudice and denying plaintiffs leave to amend); *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 687 (S.D. Tex. 2013) (Rosenthal, J.) (granting motion to dismiss); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 394-95 (S.D. Tex. 2011)

(Ellison, J.) (same); *Stockman*, 2010 WL 3785586, at \*25-30 (Lake, J.) (same); *Material Yard Workers Local 1175 Ben. Funds v. Men's Wearhouse, Inc.*, No. H–09–3265, 2011 WL 3059229, at \*6-7 (S.D. Tex. July 22, 2011) (Hughes, J.) (dismissing Rule 10b-5 complaint); *Affco Invests., LLC v. KPMG, LLP*, No. H-07-3379, 2009 WL 3248052, at \*5 (S.D. Tex. Sep. 28, 2009) (Miller, J.) (same); *In re Cyberonics Inc. Secs. Litig.*, 523 F. Supp. 2d 547, 553–55 (S.D. Tex. 2007) (Miller, J.) (granting dismissal despite allegations of options backdating, accounting violations, false certifications, and insider trades); *Jag Media Holdings v. AG Edwards & Sons*, 387 F. Supp. 2d 691 (S.D. Tex. 2004) (Gilmore, J.) (dismissing securities complaint despite allegations against dozens of brokerage firms).

Defendants thus respectfully submit that the Ruling conflicts with the PSLRA and the approach taken in the vast majority of securities class actions addressed by the Fifth Circuit and the Southern District of Texas. The approach taken in those cases is faithful to the Supreme Court's directive that district courts must "engage in a comparative evaluation" of the allegations at the pleading stage and weigh "competing inferences rationally drawn from the fact alleged." *Tellabs*, 551 U.S. at 314. Even where dismissal is denied, courts typically issue opinions assessing each statement and defendant. *See, e.g., Delaware County Empls. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 628-32 (S.D. Tex. 2023) (Rosenthal, J.) (differentiating between allegations that could and could not support scienter

inference). Defendants respectfully submit that the PSLRA's text, governing precedent, and Fifth Circuit practice require the type of statement-by-statement and defendant-by-defendant analysis performed in the above-cited cases.

## III.    THE ALLEGATIONS HERE FALL FAR BELOW WHAT IS REQUIRED TO SURVIVE A MOTION TO DISMISS.

As set forth in Defendants' prior briefing, when compared against the continuum of fact patterns alleged in other securities cases addressed by the Fifth Circuit, this Court, and other courts, the allegations here fall objectively and squarely on the "dismissal" side of the cut line. Southwest never represented its technology and disruption-recovery systems were infallible, nor did Southwest ever state that it was immune to disruptions on the scale of what happened after Winter Storm Elliott if it faced a severe weather event. To the contrary, Southwest cautioned throughout the class period that disruptions had occurred and could occur in the future, and that Southwest needed to invest more in improving its ability to recover from disruptive events. (*See supra* at 4.) These disclosures belie any allegation that Defendants intentionally or recklessly misrepresented its disruption-mitigation capabilities and instead support a powerful, competing nonculpable inference that Defendants did not deliberately or recklessly misstate anything regarding Southwest's capabilities. *See Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017) ("[T]he fact that ATP continuously disclosed its worsening cash position belies a claim of scienter"); *Owens*, 789 F.3d at 541 (holding that company's disclosure regarding uncertainty of

asset valuation undercut scienter inference despite full write-down of assets). Again, a complaint may survive dismissal only where the inference of fraudulent intent or severe recklessness is "cogent and compelling" and at least as strong as the inference that Defendants acted reasonably or with a mental state less culpable than severe recklessness. *See Tellabs*, 551 U.S. at 324-25.

Further, many of the challenged statements—including the earnings-call statement that Southwest had "great technology"—are immaterial as a matter of law and are thus inactionable "even if false" (which, in any event, they are not). *See Empls. Ret. Sys. v. Whole Foods Market, Inc.*, 905 F.3d 892, 897, 902 (5th Cir. 2018) (statements that Whole Foods Market "continu[ed] to raise the bar even higher on [its] standards of transparency," "has the highest standards in the supermarket industry of any company," and "always strive[s] for transparency and accuracy" were immaterial and inactionable "even if false"); *Yoshikawa v. Exxon Mobil Corp.*, 2022 WL 4677621, at *15 (N.D. Tex. Sept. 29, 2022) (statements that company's wells were of "very, very high quality" and "the best wells" were inactionable puffery); *In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 13 (2d Cir. 2019) (stating that contractual relationship was "great" or "very, very solid" is inactionable puffery); *Singh v. Cigna Corp.*, 918 F.3d 57, 59-60 (2d Cir. 2019) (affirming dismissal and decrying efforts by plaintiffs to alchemize "vague corporate statements affirming the importance of regulatory compliance" into securities claims

despite "significant regulatory violations"); *Oklahoma Firefighters Pens. and Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018) (statement that "I think we win [contracts] because we have great technology" held inactionable); *In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1158 (S.D. Cal. 2008) (finding that statement that integration of technology was "on schedule and continuing smoothly" was corporate puffery).

There are likewise no allegations showing (let alone supporting a strong inference) that any of Southwest's statements about the cause of smaller prior disruptions were untrue or knowingly false when made. (*See* ECF #57, Mot. at 17.) The fact that Southwest later experienced a much larger disruption in December 2022 does not make the prior statements untrue or fraudulent. *See Pier 1 Imports*, 935 F.3d at 433 (fraud cannot be proved by hindsight). Again, the allegations support a far more compelling inference that Defendants believed Southwest's capabilities were sufficient to withstand the vast majority of conceivable weather situations, and that Defendants made reasonable disclosures with appropriate cautionary statements that Southwest's systems were not infallible and that significant upgrades would need to be undertaken over a multi-year time frame.

Further, Plaintiffs' failure to satisfy the attribution requirement for the October 9, 2021 tweet, June 14-16, 2021 articles, and December 21-27, 2022 press

19

releases is likewise a pleading defect that must be resolved against Plaintiffs at the Rule 12(b)(6) stage. *See* ECF #57, Mot. at 21.

In sum, Plaintiffs' allegations do not show actionable misstatements, nor do they come close to supporting the required "strong," "cogent," and "compelling" inference that any of Southwest's statements—which were hedged with warnings about risks of disruptions and limitations in Southwest's recovery systems—were made with such blatant and undebatable falsity as to be fraudulent or severely reckless. (*See* ECF #57, Mot. at 18-19; *Gamboa v. Citizens, Inc.*, A-17-CV-241-RP, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (explaining plaintiff "must show more than that it is debatable whether the disclosures were adequate" to survive dismissal).) Having failed to allege suspicious insider trades or other concrete financial motives, "the strength of the circumstantial evidence of scienter must be correspondingly greater" to survive dismissal. *Neiman*, 854 F.3d at 748. Even if Plaintiffs had alleged facts showing that Defendants grossly mismanaged Southwest's disruption-recovery functions or were grossly negligent in their disclosures—neither of which Plaintiffs have done—that would still be insufficient to survive a pleading-stage dismissal. *See Goldstein*, 340 F.3d at 253–54 ("gross mismanagement" insufficient to show scienter); *Rains v. Zale Corp.*, 2011 WL 3331213, at *5 (N.D. Tex. Aug. 1, 2011) ("[o]rdinary negligence or even gross negligence are not enough to establish scienter"). The inference that Southwest

20

knowingly or recklessly lied about its capabilities is far less compelling than the inference that Defendants made reasonable disclosures. And, having failed to plead a primary violation, the control person claim also fails. (ECF #57, Mot. at 23.)

The Court should thus grant reconsideration and dismiss this suit in its entirety. Plaintiffs have failed to explain how this suit meaningfully differs from Judge Kinkeade's ruling in analogous statements about Southwest's safety and maintenance practices. *See Linenweber*, 2023 WL 6149106, at *5-15. The allegations fall far short of what is required to plead securities fraud in this circuit.

## IV.   AT MINIMUM, THE COURT SHOULD MODIFY THE RULING TO CERTIFY IT FOR INTERLOCUTORY APPEAL.

In the event the Court does not grant the motion in full and dismiss the action, Defendants respectfully request that the Court modify the Ruling to certify it for interlocutory appeal to address the controlling legal questions of whether Plaintiffs have adequately alleged actionable misstatements and pled particularized facts supporting a strong inference of scienter as mandated by the PSLRA. *See* 28 U.S.C. § 1292(b) (permitting district courts to certify orders for interlocutory appeal if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"); *Morales v. OK Trans, Inc.*, 2024 WL 3223676, at *2-4 (S.D. Tex. June 18, 2024) (granting leave for appeal).

As the Fifth Circuit previously observed, interlocutory appeal is permissible in a securities case when the threshold issue of "whether the pleading of fraud met the particularity requirement presented a close question. . . ." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (accepting interlocutory appeal from Southern District of Texas and reversing denial of dismissal). Courts within and outside the Fifth Circuit have granted interlocutory appeals in Rule 10b-5 litigation to assess whether a securities complaint meets the threshold material misstatement and scienter requirements, which is a controlling question of law that may materially advance the ultimate termination of the litigation. *See id.*; *see also Indiana Elec.*, 537 F.3d at 531 (holding on interlocutory appeal that securities complaint did not establish strong inference of scienter); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687, 694 (9th Cir. 2011) (accepting interlocutory appeal and holding that complaint did not allege material misstatement); *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (accepting interlocutory appeal and holding that complaint did not sufficiently allege scienter); *Teamsters Local 445 Freight Div. Pens. Fund v. Dynex Capital Inc.*, 531 F.3d 190, 192 (2d Cir. 2008) (accepting interlocutory appeal and holding that scienter was inadequately pled); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1275 (11th Cir. 1999) (accepting interlocutory review and agreeing that some scienter allegations were insufficient).

The Fifth Circuit has also allowed interlocutory appeals under Section 1292(b) from denials of motions to dismiss in other contexts. *See La. Indep. Pharms. Assoc. v. Express Scripts, Inc.*, 41 F. 4th 473, 477-78 (5th Cir. 2022) (accepting Section 1292(b) certification of interlocutory appeal from denial of motion to dismiss for lack of jurisdiction); *Lefebure v. D'Aquilla*, 15 F. 4th 650, 653 (5th Cir. 2021) (accepting interlocutory review of order denying motion to dismiss); *Whitley v. BP, P.L.C.*, 838 F.3d 523, 528-29 (5th Cir. 2016) (accepting interlocutory appeal to address pleading standards for ERISA claim); *Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd.*, 570 F.3d 219, 224 (5th Cir. 2009) (accepting interlocutory appeal from partial summary judgment and denial of motion to dismiss in dispute over oil and gas lease); *Hartz v. Administrators of Tulane Educ. Fund*, 275 F. App'x 281, 286 (5th Cir. 2008) (accepting interlocutory appeal from denial of motion to dismiss in dispute over denial of tenure).

As set forth in Section III above and in Defendants' prior briefing, there is a more than an ample basis to disagree with any conclusion that Plaintiffs have alleged an actionable misstatement or omission, or particularized facts supporting a strong inference of scienter as to even one, let alone each Defendant. Compliance with applicable pleading requirements is a question of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009) ("Evaluating the sufficiency of a complaint is not a 'fact-based' question of law. . . ."); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 812 5th

Cir. 1940) ("The court below sustained a motion to dismiss, which raises an issue of law as to the sufficiency of the well-pleaded allegations of the complaint"); *Mandujano v. City of Pharr, Tex.*, 2018 WL 11469689, at \*3 (S.D. Tex. May 14, 2018) ("[T]he sufficiency of a pleading is a question of law. . . ."). Interlocutory review should be allowed when there is strong reason to doubt that "the pleading of fraud met the particularity requirement," as there is a high likelihood that the case will be brought to conclusion on appeal without the substantial cost and settlement pressure inherent in securities class actions. *See Williams*, 112 F.3d at 177.

Further, as also set forth in Defendants' prior briefing, whether Plaintiffs have sufficiently alleged a securities fraud claim involves multiple sub-issues of law that are worthy of review, including: (i) whether Defendants had any duty to disclose additional facts with respect to their recovery capabilities in light of the generalized nature of the disclosures and inclusion of cautionary statements discussed above (*see* ECF #57, Mot. at 14-17); (ii) whether the purported omission of additional adverse information about Southwest's systems as alleged by Plaintiffs is sufficiently egregious to support a strong inference of fraud or severe recklessness (*see id.* at 18-21); (iii) whether generalized, admittedly-public complaints from pilots' unions give rise to any further duty of disclosure by Defendants or support a strong inference of scienter (*see id.* at 18-19); (iv) whether Plaintiffs sufficiently pled that one of the individual Defendants "made" the statements in the October 9, 2021 tweet, June 14-

24

16, 2021 articles, and December 21-27, 2022 press releases (*see id.* at 21-22); (v) whether Plaintiffs have met the legal requirements for pleading fraud as to forward-looking statements or statements of opinion (*see id.* at 21-22); and (vi) whether Plaintiffs have adequately alleged control person liability (*see id.* at 23). The Court should thus modify the Ruling to certify it for interlocutory appeal in the event the Court does not grant reconsideration and dismiss the suit in full.

## V.    THE COURT SHOULD ALLOW ORAL ARGUMENT

Defendants respectfully request a hearing on this motion, as Defendants believe oral argument may be helpful in resolving the issues presented.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant reconsideration, withdraw the Ruling, and dismiss Plaintiffs' claims. In the event the Court declines to do so, it should at minimum modify the Ruling to certify it for interlocutory appeal. Defendants respectfully request a hearing on this motion and all other relief to which they are justly entitled.

Dated:        December 21, 2023        Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

/s/ *Michael A. Swartzendruber*

Michael A. Swartzendruber (Lead Counsel)
State Bar No. 19557702
2200 Ross Ave., Suite 3600
Dallas, Texas 75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
michael.swartzendruber@nortonrosefulbright.com

Peter A. Stokes
State Bar No. 24028017
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
peter.stokes@nortonrosefulbright.com

Kelly A. Potter
State Bar No. 24119284
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 652-5246
kelly.potter@nortonrosefulbright.com

*Counsel for Defendants*

26

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for Plaintiffs on December 16, 2024, regarding Defendants' motion for reconsideration and leave for interlocutory appeal, explaining that Defendants believed the Court's Ruling made no findings with respect to sufficiency of Plaintiffs' false-statement and scienter allegations and that no sufficient allegations had been pled. Plaintiffs' counsel advised that Plaintiffs plan to oppose the motion.

/s/ *Peter A. Stokes*
Peter A. Stokes

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on December 21, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ *Michael A. Swartzendruber*
Michael A. Swartzendruber